**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VOLTAGE PICTURES LLC<br>        Plaintiff,<br>v.<br>DOES 1-5,000<br>        Defendants. | )  Case No.: 1:10-cv-00873-RMU<br>)<br>)<br>)  Omnibus Motion and Memorandum to Quash<br>)  Subpoena Pursuant to Fed. R. Civ. P. 45(c)(3)<br>)  and Motion to Dismiss Pursuant to Fed. R.<br>)  Civ. P. 12(b)(2)<br>)<br>)<br>)  ORAL ARGUMENT REQUESTED<br>) |

**OMNIBUS MOTION & MEMORANDUM TO QUASH SUBPOENA PURSUANT TO FED. R.**
**CIV. P. 45(C)(3) AND MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2)**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................................1

TABLE OF AUTHORITIES..........................................................................................................2

I. INTRODUCTION AND SUMMARY OF ARGUMENT..........................................................5

II. PROCEDURAL HISTORY......................................................................................................7

III. TECHNICAL AND LEGAL BACKGROUND.....................................................................8

   A. Internet Protocol Addresses.................................................................................................8

      1. Definition........................................................................................................................8

      2. Purpose............................................................................................................................9

   B. Personal Jurisdiction Under D.C. St. §13-423.................................................................11

IV. ARGUMENT.........................................................................................................................12

A. This Court Lacks Personal Jurisdiction over Mr. Richards and the other Moving Defendants, Venue is Improper under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a), and Dismissal is Appropriate Under Fed. R. Civ. P. 12(b)(2)...........................................................................................................12

1. Venue In This Court Is Improper Under 28 U.S.C. § 1391(b)....................................15

2. Venue Is Improper in this Court Pursuant to 28 U.S.C. § 1400(a)..............................17

B. Because The Court Lacks Personal Jurisdiction over Mr. Richards and the Moving Defendants, the Subpoena for Mr. Richards' Records with Earthlink and those of the other ISPs used by the Moving Defendants Should be Quashed.......................................................................................................21

1. Plaintiff Should Have Filed a Petition for Pre-Litigation Discovery Under Fed. R. Civ. P. 27...22

2. Plaintiff Avoided the Proper Avenues Created Under the Rules in Order to Create     Leverage for Exacting Settlements from the Alleged Defendants ..................................................23

C. Plaintiff Has Improperly Sought to Join the Mr. Richards and the Other Moving Defendants In a Single Action Without First Demonstrating that Joinder is Proper Under Fed. R. Civ. P. 20..............24

D. Plaintiff Is Improperly Seeking the Benefits of MDL Litigation Without First Complying With the MDL Requirements......................................................................................................................27

V. CONCLUSION..............................................................................................................28

CERTIFICATE OF LR 7(m) COMPLIANCE.......................................................................29

## TABLE OF AUTHORITIES

**Cases**

ALS Scan Inc. v. Digital Service Consultants Inc., 293 F.3d 707 (4th Cir. 2002)....................................13

State of Arizona v. State of California 292 U.S. 341, 54 S. Ct. 735 (1934)..........................................  22

* Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).........................................................................14, 18, 20, 21

* Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998)..........................................................passim

Brayton Purcell LLP v. Recordon & Recordon, 606 F3rd 1124, 1126 (9th Cir. 2010)...........................17

Caribbean Broadcasting System, Ltd., v. Cable & Wireless, PLC,  148 F.3d 1080, 1089 (D.C. 1998);. 19

* GTE New Media Services Inc. v. BellSouth Corp., 199 F.3d 1343 (D.C.Cir. 2000)...............13, 19, 20

Hanson v. Denckla, 357 U.S. 235, 251 (1958)...................................................................19, 20

In re Library Editions of Children's Books, 299 F. Supp. 1139 (Jud.Pan.Mult.Lit. 1969).....................27

* International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945)..........................6, 12, 13, 21

King v. Russell, 963 F.2nd 1301 (9th Cir. 1992)...................................................................15

Lewy v. Southern Poverty Law Center, Inc. ____ F.Supp.2d. ____ , 2010 WL 2747441, *1 (D.D.C. July 13, 2010)..............................................................................................................20

LVRC Holdings v. Brekka, 581 F.3rd 1127, 1130 (9th Cir. 2009)......................................................8

* Sinclair v. TubeSockTedD, 596 F. Supp. 2d 128, 133 (D.D.C. 2009)....................................13, 16, 20

Tele-Media Co. of Western Connecticut v. Antidormi, 179 F.R.D. 75 (D.Conn. 1998).........................25

Trager v. Wallace Berrie & Co., Inc., 593 F.Supp 223, 225 (D.D.C. 1984)..............................18, 20, 21

U.S. v. Heckenkamp, 482 F.3rd 1142, 1144 (9th Cir. 2007)............................................................8

United States v. Phillip Morris, Inc., 116 F.Supp.2d 116, 120 n. 4 (D.C.D.C.2000)..............................20

World-Wide Volkswagen Corp v. Woodson, 444 U.S. 286, 297 (1980)....................................12, 13, 20

**Statutes**

28 U.S.C. § 1391(b)..........................................................................................................12, 15

28 U.S.C. § 1400(a)......................................................................................................12,15, 17

28 U.S.C. §1406(a)...............................................................................................................17

28 U.S.C. §1406(b)...............................................................................................................17

28 U.S.C. § 1407..............................................................................................................27, 28

28 U.S.C. § 1407(a)................................................................................................................27

DC St. 13-423...................................................................................................................6, 11

DC St. 13-423(a)(3)..........................................................................................................12, 14

DC St. 13-423(a)(4)..........................................................................................................12, 14

**Rules**

Fed. R. Civ. P. 12(b)(2)................................................................................................5, 6, 12

Fed R. Civ. P.  12(b)(6)........................................................................................................20

Fed. R. Civ. P. 20.................................................................................................................24

Fed. R. Civ. P. 21.................................................................................................................26

Fed. R. Civ. P. 27.................................................................................................................22

Fed.R. Civ. P. 45.................................................................................................................22

Fed. R. Civ. P. 45(c)(3).........................................................................................................5

Fed. R. Civ. P. 45(c)(3)(A)(iv)...........................................................................................6, 21

**Treatises**

13B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters §

3602, at 372 (2d ed. 1984)....................................................................................................16

COMES NOW Mark Richards and those other defendants who elect to file a formal joinder

with this motion, by and through their attorneys of record and respectfully submit this Motion to Quash

the subpoena issued by the Plaintiff on or about April 9, 2010 pursuant to Fed. R. Civ. P. 45(c)(3) and

to dismiss the Moving Defendant(s) from the action  pursuant to Fed. R. Civ. P. 12(b)(2). Said Motion

shall consist of this preamble, the attached Points and Authorities, and oral argument if permitted by

this Honorable Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This Omnibus Motion is brought by Mark Richards, and three other Moving Defendants[1] some

of the 5,000  "Doe" defendants sued by Plaintiff in the instant action.  Mr. Richards, and other Moving

Defendants who opt to join in this motion through their attorneys of record, contest this motion, as they

are not residents of the District of Columbia, and lack any continuing contacts with this forum, let

---

[1] Due to the complicated nature of earlier agreements made between the Plaintiffs and the individual ISPs in this matter (and other similar matters now currently before this court and the Hon. Rosemary Collyer), the Plaintiff's subpoena requests have been spread out over a number of months. In order to spare the Court from having to re-read scores, if not hundreds, of identical motions, the attorneys for the Defendants filing this motion extends an invitation to other defendants, by and through their respective counsels of record, to join this motion if they wish. We also respectfully ask that this Honorable Court treat all references made to Mr. Richards  as applying to *any* prospective Defendant(s) that seek to join this motion.

Mr. Richards, Mr. Salil Kadam, and Mr. Blake Leverett, as well as John Doe 97.120.111.248 have executed Declarations [Exhibit A] that identify their IP address, city, state and ISP, as referenced by Plaintiff's subpoena.

alone "regular" and "persistent" contact required to confer jurisdiction under DC St. 13-423. Indeed, each of the defendants even lack the "minimum contacts" with this forum that are necessary to confer personal jurisdiction, as articulated by the U.S. Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945) and its progeny.

Over a decade ago, this Court determined that the **_only_** way a Plaintiff could establish personal jurisdiction in this Court over nonresident defendants was to comply with the provisions of the District's "long arm" statute, as set forth in DC St. 13-423. *See* Blumenthal v. Drudge, 992 F. Supp. 44, 53 (D.D.C. 1998). Furthermore, "**Plaintif[f]** ha[s] the burden of establishing that this Court has personal jurisdiction over defendant[s]…and alleging specific facts upon which personal jurisdiction may be based." Blumenthal, Id., at 53. (Emphasis added). For the reasons set forth in greater detail in the following sections, Plaintiff neither has met nor can meet the tests for *in personam* jurisdiction set forth by DC St. 13-423 as explained by this Court's holding in Blumenthal. Accordingly, dismissal of Mr. Richards and the other Moving Defendants from this action pursuant to Fed. R. Civ. P. 12(b)(2) is necessary and appropriate.

Because this Court lacks personal jurisdiction over Mr. Richards and the Moving Defendants and the only purpose of the subpoena issued by Plaintiff to the respective Internet Service Providers is to disclose the defendants true names and identifying information in order to serve them with a summons and complaint in this action, enforcing the subpoena would violate the Court's duty to avoid imposing an undue burden on the Moving Defendants. Accordingly, completely quashing the subpoena and dismissing this action pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iv) is the most reasonable course of action this court should take.

Finally, Plaintiff knew, or could have easily discovered through the use of free, public domain internet tools the general geographic location of Mr. Richards or any of the defendants it wished to sue. The fact is that neither Mr. Richards' computer, nor his ISP were located within the boundaries of this District at the time of the alleged infringement. Nor did he take any actions within the District that would expose him to liability in the District of Columbia. Despite this knowledge Plaintiff nonetheless pursued an action in this Court, and thus an award of reasonable attorneys' fees and costs against Plaintiff and in favor of Mr. Richards and the other Moving Defendants are both appropriate and just.

## II. PROCEDURAL HISTORY

On or about May 24, 2010, Plaintiff filed a complaint [Dkt. 1] alleging, in pertinent part, that 5,000 persons, named as "Does", downloaded a movie—"The Hurt Locker"—to which it claimed to own the exclusive copyright.  [Dkt. 1 at 3, ¶6].  Plaintiff asserted that it did not know the true names or identities of the persons who allegedly downloaded its movie via the BitTorrent peer-to-peer protocol ("P2P") and so it made a motion for discovery to allow it to issue subpoenas to various Internet Service Providers ("ISPs") seeking "the true name, address, telephone number, e-mail address, and MAC address of each Doe Defendant that Plaintiff has identified to date, and those it identifies in the future during the course of this litigation." (Dkt 4, 22 at III).

Without prior notice to the Doe Defendants, the Court granted Plaintiff's request on June 25, 2010. (Dkt. No. Not Available; Minute Order).  Thereafter, several ISPs sent letters to their customers, advising them that the ISP would comply with the Plaintiff's subpoena unless the customer filed a motion to quash the subpoena within thirty (30) days.

On or about September 10, 2010, Earthlink, an ISP based in Atlanta, Georgia, set one such no-tice to Mr. Richards.[2]  In pertinent part, the notice stated "If the Plaintiff receives your information from your Internet Service Provider, **you will likely be added as a named defendant to the lawsuit**." (Em-phasis added).  Earthlink also provided Mr. Richards with his IP address (216.175.86.12) on  June 12, 2010, which was listed in Plaintiff's subpoena to Earthlink.

Mr. Richards justifiably relied upon the plain language of the notice, which was and is substant-ively identical to a similar notice issued with Court approval in ACHTE/NEUNTE BOLL KINO BETEILIGUNGS GMBH v. DOES 1-4,577 , Case number 1:10-cv-00453-RMC and consulted an at-torney.  This Motion to Quash and Dismiss follows

## III. TECHNICAL AND LEGAL BACKGROUND

**A.    Internet Protocol Addresses**

1. Definition

Any customer of an ISP who connects their computer to the internet via the ISP is assigned an Internet Protocol (IP) address.  *See also* U.S. v. Heckenkamp, 482 F.3rd 1142, 1144 (9th Cir. 2007) ("An IP address is comprised of four integers less than 256 separated by periods").  In addition to the customer's IP address, the ISP's network is also assigned its own IP address. *See generally* LVRC Holdings v. Brekka, 581 F.3rd 1127, 1130 (9th Cir. 2009).

A customer's IP address can either be "static" or "dynamic."  A "static" IP address, as its name would indicate, remains the same over time whether or not the computer and router are turned on or not. If the computer and/or router are turned off, when they are turned back on the ISP will reassign the

---

[2]Similar notices were sent to the other Moving Defendants by their ISPs.

8

same address to all computers on its network which have been designated as "static" IPs.[3]  By contrast, a "dynamic" IP address is reassigned by the ISP to the customer periodically within certain parameters set by the ISP's network.

2. Purpose

The purpose of an IP address is to route traffic efficiently through the network. "IP addresses specify the locations of the source and destination nodes in the topology of the routing system. For this purpose, some of the bits in an IP address are used to designate a subnetwork."[4]

As a result, IP addresses serve as a useful tool to determine the *general* geographic location of both the ISP and the user.  A number of public domain tools are available on the internet, such as ARIN Whois, available at https://ws.arin.net/whois/, to determine the city, state and country where an IP address is located.  Other free tools, such as http://whatismyipaddress.com/ are available to further narrow down the general location of a user.

Inputting Mr. Richards's IP address of  216.175.86.12 as set forth in the subpoena, renders the following result:

## General IP Information

|  |  |
|---|---|
| Hostname: | user-vcaulgc.dsl.mindspring.com |
| ISP: | EarthLink |
| Organization: | EarthLink |
| Proxy: | None detected |
| Type: | Broadband |

---

[3] "IP Address: IP Address Assignment: Methods" http://en.wikipedia.org/wiki/IP_address#cite_note-rfc791-1 (last visited August 26, 2010).
[4] "IP Address" http://en.wikipedia.org/wiki/IP_address#cite_note-rfc791-1  (last visited August 26, 2010).

Assignment:        [Dynamic IP](Dynamic IP)
Blacklist:

## Geolocation Information

Country: **United States** 🇺🇸
State/Region:        California
City:        Pasadena
Latitude:        34.1563
Longitude:        -118.1362
Area Code:        626
Postal Code:

Thus, without any of the information sought in the subpoena, the Plaintiff already **knows** (or can easily discover, given that Earthlink does not conceal the location of its corporate headquarters) that the customer's ISP is located in Atlanta, Georgia, and that Mr. Richards is located in Southern California.

In other cases, the Plaintiffs' law firm has complained that geolocation tools are not 100% accurate with regard to the exact city within a state.  While this might be relevant if Mr. Richards resided (or Earthlink was based) in a suburb of the District of Columbia, neither is true in this case, since even when the location returned by the geolocation tool is incorrect, it simply places the user in a "border" city or county, not in a locale several thousand miles away.[5]  Accordingly, there is no serious dispute that Mr. Richards was not present within the jurisdiction of this Court on the date and time of the alleged infringement.

---

[5] "How accurate is GeoLocation?", available at http://whatismyipaddress.com/geolocation-accuracy (Last visited September 27, 2010).

In fact, there is at least one service, MaxMind GeoIP, which for $370 a month, easily could provide the Plaintiff with a more precise city and state location information for Mr. Richards, with an 83 percent (or higher) accuracy rating,[6] down to 25 miles of his general location. Accordingly, there is no serious dispute that Mr. Richards was improperly added to a lawsuit pending in the District of Columbia based on this Court's lack of personal jurisdiction over him, and that Plaintiff had the resources and the ability to properly serve Mr. Richards (or any of the Doe Defendants in this action), had they opted to comply with simple and available tools, rather than wasting the time and resources of this court and the various ISPs.

**B.      Personal Jurisdiction Under D.C. St. §13-423**

As set forth in his Declaration and that of the other joining defendants, Mr. Richards is not a resident of the District of Columbia, does not own or have any interest in any real property located in the District of Columbia, has not contracted with Plaintiff or anyone else to supply services in the District of Columbia, does not own, operate or maintain a business in the District of Columbia, has not agreed to insure or act as surety for any person or entity in the District of Columbia and is not in a parent or child relationship with the Plaintiff.  Furthermore, Mr. Richards was not present within the District of Columbia on or about June 12, 2010 at 2:52 a.m. when the alleged infringement purportedly took place.

---

[6] Maxmind FAQ, "How accurate are your GeoIP Databases?" at
http://www.maxmind.com/app/faq#accurate.  Maxmind further guarantees a 90% accuracy rating down to the individual state level.

Accordingly, the only potential grounds for jurisdiction under the District's long-arm statute as set forth in DC St. 13-423(a)(3), is "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia" and DC St. 13-423(a)(4) "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if [Mr. Richards] **regularly** does or solicits business, engages in any persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." (DC St. 13-423(a)(4), (emphasis added).

## IV. ARGUMENT

**A.   This Court Lacks Personal Jurisdiction over Mr. Richards and the other Moving Defendants, Venue is Improper under 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a), and Dismissal is Appropriate Under Fed. R. Civ. P. 12(b)(2)**

The constitutional standards and requirements of DC's long arm statute are burdens of the *plaintiff*, as a matter of fairness, based on the understanding that defendants should not be forced to have their interests decided by a jurisdiction with which they have had no contact. These requirements "give[ ] a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp v. Woodson, 444 U.S. 286, 297 (1980). In International Shoe, the high court noted that the minimum contacts assessment "cannot simply be mechanical or quantitative" in nature, and instead must depend on the "*quality and nature of the activity* in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." International Shoe Id. at 319.

Nearly 10 years ago, the D.C. Circuit court, in <u>GTE New Media Services Inc. v. BellSouth Corp.</u>, 199 F.3d 1343 (D.C.Cir. 2000), applied the standards set forth in <u>World-Wide Volkswagen</u> and <u>International Shoe</u> to the concept of the internet, to reject a theory strikingly similar to the plaintiff's current position. In <u>GTE</u>, the plaintiffs asserted personal jurisdiction based on a claim that the defendants acted in concert to redirect users in the District away from the plaintiff's directory and website, to that of the defendants. <u>Id</u>. at 1346. In rejecting the plaintiff's theory, the court explained that it was not enough for plaintiffs to demonstrate personal jurisdiction "based solely on the ability of District residents to access defendants' websites," particularly where there was no evidence of financial harm to the plaintiff in the District of Columbia. <u>Id</u>. 1349. The court added:

> **Indeed, under this view, personal jurisdiction in internet-related cases would almost always be found in any forum in the country. We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction.** … In the context of the Internet, GTE's expansive theory of personal jurisdiction would shred these constitutional assurances out of practical existence. Our sister circuits have not accepted such an approach, and neither shall we. <u>Id</u>. at 1350.   (Emphasis added).

More recently, this court in <u>Sinclair v. TubeSockTedD,</u> 596 F. Supp. 2d 128, 133 (D.D.C. 2009) concluded that in the context of a defamation action, that the mere fact that defendant posted statements on the internet that could be downloaded and viewed in the District of Columbia was insufficient to establish personal jurisdiction. Similarly, in the context of infringement, the Fourth Circuit concluded that the mere act of hosting infringing copyrighted material by an out-of-state ISP was insufficient to justify exercise of personal jurisdiction over the ISP in a Maryland court. <u>ALS Scan Inc. v. Digital Service Consultants Inc.</u>, 293 F.3d 707 (4th Cir. 2002).

Even if Plaintiff's allegations are assumed to be true for the purpose of evaluating a Motion to Dismiss, Plaintiff has identified no specific facts in either their initial or their amended complaint which would support a conclusion by this Court that the Moving Defendants "caus[ed] tortious injury in the District of Columbia by an act or omission in the District of Columbia", as DC St. 13-423(a)(3) requires. Similarly, Plaintiff has not identified any facts that would support a conclusion that Mr. Richards, or the other Moving Defendants engaged in the "regular" and "persistent" contacts with the District of Columbia or that they derived "substantial revenue" from "goods used or consumed or services rendered" in the District, which would be necessary to support jurisdiction over them pursuant to DC St. 13-423(a)(4). It has been settled law for a dozen years in this District that the burden is on the ***Plaintiff*** to establish that the Court possesses sufficient jurisdiction over a non-resident Defendant. Blumenthal, Id., at 53.

This principle was reinforced by the U.S. Supreme Court's holding last term in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). In Iqbal, the Court held that "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that **because they are no more than conclusions**, are not entitled to the assumption of truth. " Iqbal, id,. at 1950. (Emphasis added).

The Iqbal Court recognized that a motion to dismiss usually, if not always, comes before the Court prior to discovery. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, Id., at 1950. However, in the instant action such "well-pleaded factual allegations", with

regard to the Court's personal jurisdiction over Mr. Richards or any of the Moving Defendants are conspicuous by their absence from Plaintiff's Complaint.

Plaintiff asserts "Although the true identity of each Defendant is unknown to Plaintiff at this time, on information and belief, each Defendant may be found in this District and/or a substantial part of the acts of infringement complained of herein occurred in this District." [Dkt. 1 at 2, ¶5].  However, Plaintiff fails to identify any facts in support of this bare legal conclusion.

Furthermore, Plaintiff further alleges that venue is proper "under 28 U.S.C. § 1391(b) and/or 28 U.S.C §1400(a)" [Dkt 1, at 2, ¶5] without having apparently *read* either statute.

1.  Venue In This Court Is Improper Under 28 U.S.C. § 1391(b)

28 U.S.C. § 1391(b) provides "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought **only** in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."

Taken in turn, the Plaintiff's complaint fails each prong of the test. With regard to the first element, Plaintiff has not identified a single defendant—even by IP address—who resides within the District.  Even if Plaintiff had managed to find a single D.C. resident who supposedly downloaded its film, this would only allow it to maintain an action against *other* D.C. residents before this Court, as 28 U.S.C. § 1391(b)(1) provides.  *See generally* King v. Russell, 963 F.2nd 1301 (9th Cir. 1992).  Nor does

it hold that this court <u>could</u>  maintain this action against Mr. Richards or the Moving Defendants based on the mere hope "of later discovering that the requisite diversity of citizenship actually exists," a conclusion this very court rejected in <u>Sinclair</u>, 596 F.Supp.2d at 132.[7]  *See also* 13B Wright, Miller & Cooper, <u>Federal Practice and Procedure: Jurisdiction and Related Matters</u> § 3602*, at 372 (2d ed. 1984) ("the essential elements of diversity jurisdiction must be alleged in the pleadings").

With regard to the second element, Plaintiff has proffered no facts to support the proposition that a "substantial part of the events or omissions giving rise" to its infringement action occurred within this judicial District.  Neither has it explained how a rational trier of fact could find that a "substantial" part of its intellectual property (or for that matter, the servers used to allegedly download that material) are "situated" within this judicial district. By its own admission, Plaintiff is a foreign corporation without any claims to citizenship within this District.

With regard to the third element, as stated above Plaintiff has not identified a single alleged infringer—even with the availability of free, and low-cost IP geolocation tools—that is located within this District, much less all of the 5,000 defendants in this action, or the 16,472 defendants that have

---

[7]*See generally:* <u>Meng v. Schwartz</u>, 305 F.Supp.2d 49, 55-56 (D.D.C.2004); <u>Menzies v. Doe</u>, 194 F.3d 174 (D.C.Cir.1999) (unpublished table decision); <u>Howell by Goerdt v. Tribune Entertainment Co.</u>, 106 F.3d 215, 218 (7th Cir.1997).

been cumulatively sued across all **nine** of the Plaintiff's nearly identical actions within the District of Columbia,[8] —or, roughly the population of Hyattsville, MD.[9]

As it is Plaintiff's burden to establish that venue is proper—a burden it has completely failed to meet—the Court must turn to 28 U.S.C. § 1406(a), which provides "[t]he district court of a district in which is filed a case laying venue in the wrong division or district **shall dismiss**, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."(emphasis added)

Accordingly,  since Mr. Richards (and other timely Moving Defendants) have made a sufficient objection to venue as 28 U.S.C. §1406(b) requires, the Court should dismiss them from the action.

2.  Venue Is Improper in this Court Pursuant to 28 U.S.C. § 1400(a)

28 U.S.C. §1400(a) provides that "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights … may be instituted in the district in which the defendant or his agent resides or may be found."  As the plain language of the statute intimates, venue is improper unless the Plaintiff can establish that "the defendant would be subject to personal jurisdiction" in that judicial district. Brayton Purcell LLP v. Recordon & Recordon, 606 F3rd 1124, 1126 (9th Cir. 2010).

---

[8]   In addition to the current action, and the three named actions discussed *supra*, the Plaintiff's remaining actions brought against unnamed Does include: G2 Productions, LLC v. Does 1-83, 1:10-cv-00041-CKK (filed 01/08/2010); Worldwide Film Entertainment, LLC v. Does 1-749, 1:10-cv-00038-HHK-DAR (filed 01/08/2010); Maverick Entertainment Group, Inc. v. Does 1-1,000, 1:10-cv-00569-RJL (filed 04/08/2010); Cornered, Inc. v. Does 1-2,177, 1:10-cv-01476-CKK (filed 08.30/2010); and most recently, Donkeyball Movie, LLC v. Does 1-171, 1:10-cv-01520-EGS (filed 09/08/2010). Of those, all but the Worldwide Film case remain pending in the D.C. District court.

[9]   The population of Hyattsville, MD, was 15,604 as of 2009.

Here the Plaintiff has not demonstrated, even with a simple review of the IP information that any of the Defendants or their agents "reside[] or may be found" in the District. Conclusory claims by the Plaintiff that illegal downloading occurred "in every jurisdiction in the United States" (Dkt.1, at 2, ¶5) simply will not pass muster under either Iqbal or Blumenthal, and do not meet the standards of the venue statute.

Indeed, Plaintiff even fails to comply with the test previously set forth in Blumenthal. "In order to establish personal jurisdiction under this provision a plaintiff must make a *prima facie* showing that (1) plaintiff suffered a tortious injury in the District of Columbia; (2) the injury was caused by the defendant's act or omission outside of the District of Columbia; and (3) defendants had one of three enumerated contacts with the District of Columbia." Blumenthal, Id., at 53.

The "three enumerated contacts" referred to in Blumenthal were previously defined in Trager v. Wallace Berrie & Co., Inc., 593 F.Supp 223, 225 (D.D.C. 1984) **as "regularly doing or soliciting business** within the District of Columbia; **engaging in any other persistent course of conduct** within the District of Columbia; or **deriving substantial revenue from goods used or consumed, or services rendered**, in the District of Columbia." Trager, Id., at 225. (Emphasis added).

Plaintiff identifies **no** facts which would support a finding that Mr. Richards, or any of the Moving Defendants, "regularly" did or solicited business within the District, nor any facts which would support a claim that Mr. Richards or any other Moving Defendant engaged in any "persistent course of conduct" inside the District or derived **any** revenue, let alone "substantial" revenue, from the District of Columbia.

18

Plaintiff's assertions—again, absent any supporting facts—that certain ISPs are "present" within this judicial district is equally unhelpful to their cause. The ISPs are not defendants in this action and even if they were, the Court would still need to evaluate whether or not it possessed personal jurisdiction over each individual Defendant.[10]

In truth, what they are asserting is little more than an argument for generalized "Internet Jurisdiction," something the D.C. Circuit rejected in <u>GTE</u>. 199 F.3d at 1350.

Were the mere act of downloading over the internet sufficient to create personal jurisdiction, this court would effectively be stating that any act made on the internet—criminal, tortious, infringing, innocent or otherwise—would always create the necessary minimum contacts to permit suit in *any* jurisdiction in the country. Despite the rapidity of technological change, the courts have refused to let such change "herald[] the eventual demise of all restrictions on the personal jurisdiction of state courts" or the erosion of these principles. <u>Hanson v. Denckla</u>, 357 U.S. 235, 251 (1958).  In truth, Plaintiff "has alleged absolutely nothing, … to indicate that a court in the District of Columbia might constitutionally assert jurisdiction" over the Moving Defendants, beyond the barest of inferences that the alleged act of infringement may have occurred in "every jurisdiction in the United States," or that the ISPs maintain offices in the District. *See* <u>Caribbean Broadcasting System, Ltd., v. Cable & Wireless, PLC</u>,  148 F.3d 1080, 1089 (D.C. 1998); [Dkt. 1 at 3].  Such forms of isolated, speculative and altogether unsupported forms of contact are rarely even sufficient to support jurisdictional discovery, let alone a finding for

_____

[10]Even if the Court were to assume for the purposes of this Motion that the alleged infringement actually occurred as described by Plaintiff, the proper venue for a lawsuit such as the instant action would either be where the Defendant allegedly downloaded the material (as determined by their IP address) or the venue where their ISP's server was based.

personal jurisdiction.  Caribbean Broad. Sys. Id. at 1090.  Particularly, where it is just as easy for the

Plaintiff to sue in a more proper venue (e.g., the headquarters of the individual ISPs, where the record

requests are being made, or the state where the individual defendants IP addresses appear to reside).

Since Plaintiff has utterly failed to meet its burden of establishing that this Court, pursuant to

the standards set forth in Trager, Blumenthal,  Iqbal, GTE, World-Wide Volkswagen, Sinclair or

Hanson,  possesses personal jurisdiction over most, if not all of the defendants generally, and by the

proof of their declarations, Mr. Richards in particular,  the Court should dismiss the actions against the

Mr. Richards and the Moving Defendants, and quash the subpoenas requesting their personal

information. The court should also award Mr. Richards and the Moving Defendants reimbursement of

their  reasonable attorneys' fees and costs.

Finally, in contrast to a motion to dismiss this case under Federal Rule of Civil Procedure 12(b)

(6), "the Court **need not** treat all of a plaintiffs' allegations as true" for purposes of determining

whether personal jurisdiction exists over any of the defendants. See: Lewy v. Southern Poverty Law

Center, Inc.  ____ F.Supp.2d. ____ , 2010 WL 2747441, *1 (D.D.C. July 13, 2010).

Instead, the Court "may receive and weigh affidavits and any other relevant matter to assist it in

determining the jurisdictional facts." United States v. Phillip Morris, Inc., 116 F.Supp.2d 116, 120 n. 4

(D.C.D.C.2000).

As shown above, it is a trivial matter to identify each individual defendant's "general

geographic area" and location based on their IP Address with a startlingly high degree of accuracy.  As

explained in this brief, and by past declarations of the *Amici*, numerous free and low-cost tools exist

that could assist the Plaintiff in this matter. Suing in the District of Columbia and exhausting the court's

and respective ISPs limited time and resources should not be the preferred or condoned means of doing so.

**B.     Because The Court Lacks Personal Jurisdiction over Mr. Richards and the Moving Defendants, the Subpoena for Mr. Richards' Records with Earthlink and those of the other ISPs used by the Moving Defendants Should be Quashed**

Pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iv), this Court must quash a subpoena when it appears that the subpoena would subject "a person" to undue burden. For the reasons set forth above, this Court lacks personal jurisdiction over the Moving Defendants pursuant to Int'l Shoe, Blumenthal, Trager, and Iqbal.  Plaintiff has alleged **no** facts which would indicate that they believe Mr. Richards or the other Moving Defendants possess information which would be relevant to this case if any individual defendant were a non-party.

Accordingly, if  Mr. Richards and/or any Moving Defendant cannot be added to this action as an individual Defendant in this Court, elemental fairness and due process requires the subpoena against them to be quashed.  Having failed to do their homework and establish the proper venue for which to maintain their action, the Plaintiff should not be rewarded with a free peek into Mr. Richards' sensitive customer information.  Similarly, the Plaintiff should not be permitted to construct a Sword of Damocles over Mr. Richards' head and keep him (and other Moving Defendants) in suspense as to whether, when and where they will be named as defendants in the action.  While the Plaintiff (in at least two of its nearly-identical actions) has made much in its opposition of the fact that the Court should not dismiss any Doe Defendants in this action piecemeal based on the Doe Defendants' "assumptions of what Plaintiff will do," [Achte-Neunte, Dkt. 109, at 9]  the truth of the matter is, there are only a

handful of options Plaintiff may have. Holding out until every last ISP has disclosed every last IP address of every potential Doe Defendant could in truth stretch for months, if not years. [*See* Achte-Neunte, Dkt. No. 33, at 1 (court ordered that one ISP, TWC be required to turn over 28 IP Addresses a month)].  This is made even more evident when the Court considers that the Plaintiff alone has created the very "piecemeal" and ad-hoc confusion it now supposedly wishes the court to protect it against through its abuse of the Fed.R. Civ. P. 45 subpoena power, rather than filing properly under Fed. R. Civ. P. 27.

    1. Plaintiff Should Have Filed a Petition for Pre-Litigation Discovery Under Fed. R. Civ. P. 27

    If  Plaintiff had simply filed a petition for pre-litigation discovery under Fed. R. Civ. P.27 before it charged into court on this action, it is no exaggeration to say there would be no Doe defendants at all. Over seventy years ago, the U.S. Supreme Court held  in State of Arizona v. State of California, 292 U.S. 341, 54 S. Ct. 735 (1934)  that this type of pre-litigation discovery is appropriate when:

> [it] appear[s] that the facts which the plaintiff expects to prove by the testimony of the witnesses sought to be examined will be material in the determination of the matter in controversy; that the testimony will be competent evidence; that depositions of the witnesses cannot be taken and perpetuated in the ordinary methods prescribed by law, because the then condition of the suit (if one is pending) renders it impossible, or (if no suit is then pending) because the plaintiff is not in a position to start one in which the issue may be determined; and that taking of the testimony on bill in equity is made necessary by the danger that it may be lost by delay. Id at 348.

    Under Fed. R. Civ. P. 27, Plaintiff c*ould* have filed a petition seeking to take the deposition of the custodian of records for each of the ISPs seeking the disclosure of the customer records which are the subject of its extant subpoenas.  Plaintiff *could* have easily qualified for a Fed. R. Civ. P. 27 deposition subpoena given that it was "not in a position to start" a lawsuit given its admitted ignorance of the identities of the alleged defendants, as Arizona v. California, requires.  Moreover, the Plaintiff

might have in fact been in a better position to argue that the data logs held by the ISPs were in danger of being destroyed, which (assuming the truth of this claim for the present purposes of this motion only) would have offered further compelling support for a Rule 27 petition.  However, Plaintiff elected **not** to do this, and instead sought to file a single motion before this Court.

   2.  <u>Plaintiff Avoided the Proper Avenues Created Under the Rules in Order to Create
Leverage for Exacting Settlements from the Alleged Defendants</u>

In truth, the Plaintiff is embracing the ambiguity and legal confusion created in this action to exact costly settlement demands against the Doe defendants.

This is evinced by the fact that both letters issued from the ISPs and the Plaintiff's own website at http://dglegal.force.com/SiteLogindglegal, emphasize the high cost of defending a copyright infringement claim, and the high statutory damages costs relative to the lower settlement amount.

The Plaintiff also provides a number of means to settle with otherwise "unknown" Defendants, based on little more information than an IP address or Defendant Record ID and a credit card. While the Plaintiff through its counsel seems happy to accept monetary payment from otherwise unknown and unnamed Defendants (regardless of their culpability concerning the infringement), they somehow want the court to turn a blind eye to the fact that the same information sufficient for settlement demands (Defendant's name, IP address and location information) is no less than the same information provided to the court by Mr. Richards and the other Moving Defendants in this Motion.

By entertaining the Plaintiff's efforts, the court is implicitly encouraging copyright owners (and their profit-seeking attorneys)[11] to use the courts to obtain abusive and extortionate rents against

---

[11]   In fact, since the Plaintiff's initial filings, nearly half a dozen similar suits have been filed by so-called copyright claimants across the country.  See: David Kravets, "Newspaper Chain's New Business

individuals across the country, and effectively creating legal liability for little more than operating a home wireless network.[12]  While we agree that copyright holders can and should be compensated for acts of infringement against them, it does not follow that the best (or only) approach is by opening the courts up as a venue to conduct dragnet-style fishing expeditions.

**C.     Plaintiff Has Improperly Sought to Join the Mr. Richards and the Other Moving Defendants In a Single Action Without First Demonstrating that Joinder is Proper Under Fed. R. Civ. P. 20**

While Fed. R. Civ. P. 20 allows for joinder of individual claims against multiple defendants, it requires that all claims arise from a single transaction or a series of closely-related transactions. Specifically:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20.

---

Plan: Copyright Suits" (July 22, 2010), WIRED.COM at: http://www.wired.com/threatlevel/2010/07/copyright-trolling-for-dollars/ (detailing the various suits against bloggers, including in some cases over five-sentence news excerpts); Press Release, "Copyright Enforcement Group Catalog Surpasses 10,000 Titles" (Aug. 9, 2010), RushPr.com at: http://rushprnews.com/2010/08/09/copyright-enforcement-group-catalog-surpasses-10000-titles; Jacqui Cheng, "Porn Studios Borrowing from RIAA Playbook" (Sept. 27, 2010), ARS TECHNICA at http://arstechnica.com/tech-policy/news/2010/09/porn-studios-borrowing-from-riaa-playbook-with-p2p-lawsuits.ars.

[12]  While the ease of logging into open wireless networks is well-known, it's also worth pointing out that obtaining access to most "secure" or encrypted wireless networks is almost equally as trivial.  See: George Gardner, *I Hacked My Secure Wireless Network: Here's How Its Done*, Tech.Blorge (Feb. 6, 2007) at: http://tech.blorge.com/Structure:%20 2007/02/06/i-hacked-my-wireless-network/.

Thus, in order for the *en masse* joinder proposed by Plaintiff to be proper, three conditions must be met:  first, the right to relief must be "asserted against them jointly, severally or in the alternative"; second, the claim must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences"; and finally**,**  there must be a common question of fact or law common to all the defendants. Id.

Here, the plaintiff has not asserted any claim that Mr. Richards acted in concert with, is a co-conspirator with, or otherwise committed the "same transaction, occurrence or series of transactions or occurrences" with *any* of the Moving Defendants, or any of the listed defendants, for that matter. Rather, each defendant is alleged to have copied portions of the copyrighted work individually, separately, on different times and dates, and across different locations.

As this Court is aware, joinder based on *separate* but similar acts of copyright infringement over the internet has been repeatedly rejected by courts across the country.[13] Courts have similarly rejected joinder based on use of the same technology. *See:* Tele-Media Co. of Western Connecticut v. Antidormi, 179 F.R.D. 75 (D.Conn. 1998) (denying joinder of 104 defendants who each used similar

---

[13] LaFace Records, LLC v. Does 1-38, No. 5:07-CV-298-BR, 2008 WL 544992, at *2 (E.D.N.C. Feb. 27, 2008) ("[M]erely committing the same type of violation in the same way does not link defendants together for purposes of joinder."); BMG Music v. Does 1-4, No. 3:06-cv-01579-MHP, 2006 U.S. Dist. LEXIS 53237, at *5-6 (N.D. Cal. July 31, 2006) (court severed multiple defendants in action where the only connection was use of the same ISP to allegedly commit infringement); In re Cases Filed by Recording Companies, filed in Fonovisa, Inc. et al. v. Does 1-41 (No. A-04-CA-550 LY); Atlantic Recording Corporation, et al. v. Does 1-151 (No. A-04-CA-636 SS), Elektra Entertainment Group, Inc. et al. v. Does 1-11 (No. A-04-CA-703 LY); and UMG Recordings, Inc., et al. v. Does 1-51 (No. A-04-CA-704 LY) (W.D. Tex. Nov. 17, 2004), RJN Ex. A, (dismissing without prejudice all but first defendant in each of four lawsuits against a total of 254 defendants accused of unauthorized music file-sharing).

technology to infringe plaintiff's pay-per-view programming, because defendants did not act in concert).

Here, the only possible connection between the 5,000+ other Does, Mr. Richards and and any of the other Moving Defendants joining in this Motion is the Plaintiff's conclusory assertion that each is connected to the others via the internet and use of the BitTorrent program to infringe on the Plaintiff's copyrighted work. There is no demonstrable proof showing that Mr. Richards or any joining defendant either seeded or downloaded the copyrighted work from other individual Doe defendants.

Moreover, Mr. Richards may have different defenses available compared to the other Does, or even other Moving Defendants. Unlike other infringement cases where joinder has been maintained,[14] against a similar, localized and "finite community" of alleged infringers, here we literally have five thousand defendants located across the United States, with differing potential defenses available. While it may be convenient for Plaintiff's attorneys (and their business model) to sue in accordance with a few actions in the District, Plaintiff counsel's convenience is not, and should not be *the* basis for joinder.

Fed. R. Civ. P. 21 authorizes the Court to cure the improper joinder of parties by acting "on its own . . . at any time," to "drop a party." Accordingly, attorneys for Mr. Richards and other Moving Defendants respectfully request that the Court cure Plaintiff's improper joinder of the five thousand defendants named in this case by severing all but Defendant Doe 1 and dropping the remaining defendants from this action.

---

[14] Arista Records LLC v. Does 1-16, 2009 WL 414060 at *8 (N.D.N.Y. 2009); Elektra Entm't Group, Inc. v. Does 1-9, 2004 WL 2095581, at *8 (S.D.N.Y. 2004) (not cited).

**D.    Plaintiff Is Improperly Seeking the Benefits of MDL Litigation Without First Complying With the MDL Requirements**

In pertinent part, 28 U.S.C. § 1407(a)  provides "When **civil actions** involving one or more common questions of fact are pending in **different districts**, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multi-district litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." (Emphasis added).

Since 1968, the United States Panel for Multidistrict Litigation ("Panel"), which is the panel charged by Congress with executing the provisions of 28 U.S.C. § 1407, has considered over 2,000 motions for centralization covering more than 300,000 individual cases (and millions of individual claims)[15] covering everything from product liability to "mass tort" cases like airplane crashes. Assuming a case meets the statutory requirements for consolidation (i.e. at least two cases pending in two different judicial districts), the Panel must decide if consolidation is appropriate. *See generally* In re Library Editions of Children's Books, 299 F. Supp. 1139 (Jud.Pan.Mult.Lit. 1969).

If the Plaintiff—which is, after all, a foreign corporation headquartered out of California— truly had a good-faith belief that *some* legitimate reason existed (other than the convenience of Plaintiff's counsel) to consolidate this action in this Court notwithstanding the lack of personal jurisdiction over the Moving Defendants, the MDL statute offers them a clear remedy.  What Congress *intended* for plaintiffs in this type of situation to do was to individually sue Defendants in the Courts that *do* possess

---

[15] "An Overview of the United States Judicial Panel on Multidistrict Litigation: Historical Summary" http://www.jpml.uscourts.gov/General_Info/Overview/overview.html (last visited September 4, 2010).

personal jurisdiction over them and *then* file a motion to consolidate the cases for pretrial purposes as 28 U.S.C. § 1407 contemplates.

What Plaintiff manifestly may ***not*** do is acquire the benefits of an MDL by arbitrary forum shopping rather than by strict compliance with the Panel's rules. In addition to the burden Plaintiff's disregard of its obligations has placed upon the Court's scarce judicial resources and the disrespect shown to the Panel by Plaintiff's usurpation of its functions, Plaintiff's behavior has forced Mr. Richards and the Moving Defendants to incur additional legal fees and costs which would ordinarily not have to have been expended. For these reasons, dismissal of all Moving Defendants from this action and an award of attorneys' fees and costs in their favor is appropriate.

## V. CONCLUSION

For the reasons set forth above, the Court should DISMISS Mr. Richards and the other Moving Defendants from this action, QUASH the subpoena issued for Moving Defendants' records addressed to Cox and any other ISP used by the joining defendants; AWARD Moving Defendants reimbursement of reasonable attorneys' fees and costs associated with this Motion and GRANT all such and other relief as it deems just and proper.

Respectfully submitted this 12th day of October 2010.

_____

CAREY N. LENING, ESQ.
LAW  OFFICE OF CAREY N. LENING
DC Bar No. 449284
1325 G. St. NW Ste. 500
Washington, DC 20005
(202) 709-4529
carey.lening@careylening.com
Attorney for the Moving Defendants


/S/*Christina A. DiEdoardo*
CHRISTINA  A. DiEDOARDO ESQ.
LAW OFFICES OF CHRISTINA DiEDOARDO
*Pro Hac Vice Admission Applied For*
201 Spear Street #1100
San Francisco CA 94105
(415) 839-5098
Christina@diedoardolaw.com
(Applied for) *pro hac vice*  Attorney for Mr. Richards


_____

STEVE GLISTA
*Pro Hac Vice Admission Applied For*
3409 SW Moss St. Upper
Portland, OR 97219
(503)406-8651
(Applied for) *pro hac vice*  Attorney for John Doe
97.120.111.248


## CERTIFICATE OF LR 7(m) COMPLIANCE

On October 1, 2010, Carey Lening, Esq., spoke by telephone with Nicholas Kurtz, of Dunlap, Grubb & Weaver, counsel for the Plaintiff. The parties were unable to resolve the issues presented by this motion.

_____

CAREY N. LENING, ESQ.

**CERTIFICATE OF SERVICE**

I am the attorney for the Moving Defendants.  On October 12, 2010, I sent a true and complete

copy of the foregoing MOTION TO QUASH/DISMISS to the following parties and/or their attorneys

of record via United States Mail or facsimile, where listed:

Mr. Nicholas A. Kurtz, Esq.,
Dunlap, Grubb & Weaver PLLC
199 Liberty Street S.W.
Leesburg, VA 20175

Ms. Fay Slaveikis
Risk Management and Litigation Manager
EarthLink
1375 Peachtree St Level A
Atlanta, Georgia 30309

Mr. Craig Carter
Sr. Security Specialist
Qwest Communications
1801 California St., 11th Fl.
Denver, CO 80202

I declare under penalty of perjury under the laws of the United States that the foregoing is true
and correct.

_____
CAREY N. LENING, ESQ.
LAW  OFFICE OF CAREY N. LENING
DC Bar No. 449284
1325 G. St. NW Ste. 500
Washington, DC 20005
(202) 709-4529
carey.lening@careylening.com