# UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

WEST BAY ONE, INC.,                    )
                                       )
      Plaintiff,                       )
                                       )
v.                                     )   CA. 1:10-cv-00481-RMC
                                       )
DOES 1 – 2,000                         )
                                       )
      Defendants.                      )
_____)


## PLAINTIFF'S STATEMENT OF GOOD CAUSE
## AS TO WHY DEFENDANTS 2 THROUGH 2,000
## SHOULD NOT BE DISMISSED FOR MISJOINDER
## UNDER RULE 20 OF THE FEDERAL RULES OF CIVIL PROCEDURE

## TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................................................1

II. BRIEF PROCEDURAL OVERVIEW ...................................................................................2

III. APPLICABLE LEGAL STANDARDS ARGUMENT ...........................................................3

IV. ARGUMENT ........................................................................................................................5

    A. THE NATURE OF THE TORRENT ACTIVITY ALLEGED ......................................5

    B. PLAINTIFF HAS APPROPRIATELY JOINED THE DOE DEFENDANTS AT THIS

    STAGE OF THE CASE.....................................................................................................9

        1. Plaintiff's right to relief arises out of the same transaction, occurrence, or series of

        transactions or occurrences .............................................................................................9

        2. A question of law or fact common to all Doe Defendants will arise in the action ..12

    C. SIMILAR CASES HAVE FOUND THAT ALLEGATIONS SIMILAR TO

    PLAINTIFF'S DO NOT VIOLATE RULE 20 ................................................................13

    D. THE PRIOR CASES DEALING WITH SIMILAR ALLEGATIONS CITED BY

    AMICI ARE SIGNIFICANTLY DISTINGUISHABLE ...................................................16

    E. ANY ACTION TAKEN PURSUANT TO RULES 20 OR 21 WOULD BE

    PREMATURE ..................................................................................................................21

IV. CONCLUSION....................................................................................................................24

## TABLE OF AUTHORITIES

**Cases**

Androphy v. Smith & Nephew, Inc., 31 F. Supp. 2d 620 (N.D. Ill. 1998).....................................23

Arista Records, LLC v. Does 1-11, No. 1:07-CV-2828, 2008 WL 4823160

    (N.D. Ohio Nov. 3, 2008) .............................................................................16, 20

Arista Records LLC v. Does 1-16, Civ. No. 1:08-CV-765 (GTS/RFT), 2009 WL 414060

    (N.D.N.Y. Feb. 18, 2009) ............................................................................14, 15

Arista Records LLC v. Does 1-19, 551 F. Supp. 2d 1 (D.D.C. 2008)............................... 15, 22-23

Arista Records, LLC v. Does 1-27, 584 F. Supp. 2d 240 (D. Me. 2008) .................... 13-16, 20, 24

BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888 (E.D. Pa. Apr. 2, 2004).. 16-17

Brereton v. Commc'ns Satellite Corp., 116 F.R.D. 162 (D.D.C. 1987)..........................................5

Desert Empire Bank v. Insurance Co. of N. Am., 623 F.2d 1371 (9th Cir. 1980) .........................3

DIRECTV, Inc. v. Barrett, 220 F.R.D. 630 (D. Kan. 2004)........................................ 11-13, 20, 24

DIRECTV. Inc. v. Essex, No. C02-5503RJB, 2002 U.S. Dist. LEXIS 26923

    (W.D. Wash. Nov. 13, 2002) ..................................................................... 19-20

DIRECTV, Inc. v. Hosey, 289 F. Supp. 2d 1259 (D. Kan. 2003) .................................................19

DIRECTV, Inc. v. Russomanno, No. 03-2475, 2003 U.S. Dist. LEXIS 23403

    (D.N.J. Nov. 12, 2003).............................................................................................19

Disparte v. Corporate Executive Bd., 223 F.R.D. 7 (D.D.C. 2004) ...............................................4

Fonovisa, Inc. v. Does 1-9, Civil Action No. 07-1515, 2008 WL 919701

    (W.D. Pa. Apr. 3, 2008) .........................................................................................16

Mosley v. General Motors Corp., 497 F.2d 1330 (8th Cir. 1974) ..................................................4

MyMail, Ltd. v. America Online, Inc., 223 F.R.D. 455 (D.C.Tex. 2004) ......................................11

Sony Music Entm't Inc. v. Does 1-40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004)...................2, 15, 23

Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc., 233 F.R.D. 615 (D. Kan. 2006)....................11

Stanley Works v. Haeger Potteries, Inc., 35 F.R.D. 551 (N.D. Ill. 1964) ................................4, 10

United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130 (1966) ...........................................4

**Statutes**

17 US.C. § 101 *et seq.*............................................................................................... passim

17 U.S.C. §106.........................................................................................................................XX

Fed. R. Civ. P. Rule 20 .......................................................................................................3, 17

Fed. R. Civ. P. Rule 21 ...........................................................................................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

I. INTRODUCTION

To briefly summarize Plaintiff's allegations, Plaintiff has identified certain Defendants who have unlawfully copied and distributed Plaintiff's motion picture, *"The Steam Experiment"* (a/k/a *"The Chaos Experiment"*) (the "Movie"), over the Internet. At this point, Plaintiff has only been able to identify the Doe Defendants by their Internet Protocol ("IP") address and the date and time of alleged infringement. The only way that Plaintiff can determine Defendants' actual identities is from the various non-party Internet Service Providers ("ISPs") to which Defendants subscribe and from which Defendants obtain Internet access. However, Plaintiff cannot obtain this discovery without first filing a lawsuit against the anonymous Doe Defendants.

Various organizations have argued, through an *amicus curiae* brief, that Plaintiff's filing of one lawsuit against all of the Doe Defendants constitutes improper joinder in violation of Rule 20 of the Federal Rules of Civil Procedure. In raising this issue with the court, the Amici rely on previous, purportedly similar cases instituted against illegal downloaders of copyrighted material. However, notwithstanding the fact that some courts have ruled, in prior seemingly similar cases, that joining numerous Internet downloader copyright infringement defendants may constitute improper joinder at this stage of the proceedings, the technological differences between the file sharing services in this case compared to those prior cases are significantly different.

As Plaintiff will demonstrate herein, because of the unique and true peer-to-peer nature of the "torrent" file sharing alleged by Plaintiff in this case, all Doe Defendants have jointly engaged in the same series of transactions to infringe on Plaintiff's copyright. Further, because

1

Plaintiff has not yet learned the identities of all Doe Defendants in this case, any severance under Rule 20 is premature at this time. Overall, justice requires that Plaintiff be permitted to proceed with its case as plead.

## II. BRIEF PROCEDURAL OVERVIEW

Plaintiff filed its complaint against 2,000 Doe Defendants on March 23, 2010. [Doc. No. 1] Plaintiff then filed a Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference, which was granted by this Court on April 13, 2010. [See Doc. Nos. 3, 4][1] Pursuant to that order, Plaintiff served the various ISPs with subpoenas to identify the Doe Defendants.

In response to the subpoena served on it, Time Warner filed a motion to quash, primarily arguing that the number of IP requests was unduly burdensome in the time requested and that Plaintiff should have to pay Time Warner's costs for responding to the subpoena. [See Doc. No. 5] During the parties' briefing on Time Warner's motion to quash, various organizations filed a motion for leave to file an *amicus curiae* brief, purportedly in support of Time Warner's motion to quash. [See Doc. No. 13][2]

Seemingly in response to the *amicus curiae* brief, on June 7, 2010, this Court issued a minute order requiring Plaintiff to show cause in writing no later than June 21, 2010 why Doe

---

[1] The motion was granted and ordered entered by Judge John D. Bates, prior to the case being reassigned. [See Doc. No. 4]

[2] It should be noted that the issues raised, arguments presented, and declarations submitted by Amici are exactly the same as those filed in Sony Music Entertainment Inc. v. Does 1-40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004). There, Amici similarly submitted their papers in the context of a motion to quash a subpoena, and the court firmly rejected all of Amici's arguments. See id. at 568.

Defendants 2 through 2,000 should not be dismissed for misjoinder under Federal Rule of Civil

Procedure 20.  [June 7, 2010 Minute Order][3]


III. APPLICABLE LEGAL STANDARDS

The Federal Rules of Civil Procedure, specifically Rule 20, provide for the permissive

joinder of parties.  As relevant to this case, Rule 20 states that "[p]ersons…may be joined in one

action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the

alternative with respect to or arising out of the same transaction, occurrence, or series of

transactions or occurrences; and (B) any question of law or fact common to all defendants will

arise in the action."  Fed. R. Civ. P. Rule 20(a)(2).[4]

Rule 21 states that "[m]isjoinder of parties is not a ground for dismissing an action.  On

motion or on its own, the court may at any time, on just terms, add or drop a party.  The court

may also sever any claim against a party."  Fed. R. Civ. P. 21.

---

[3] The *amicus curiae* brief also raised the issues of personal jurisdiction and the right to anonymous speech, but the court's minute order did not reference these issues.  Accordingly, Plaintiff has focused this statement on the issue of joinder as stated in the court's order to show cause minute order.  To the extent the Court is evaluating the merits of these other issues, Plaintiff respectfully requests an opportunity to submit additional responsive briefing.

[4] Amici incorrectly state that three conditions must be met under Rule 20(a)(2) to join multiple defendants, improperly separating subsection (a)(2)(A) into two separate requirements.  [See Doc. No. 13, at p. 22]  However, the plain language of the statute states that these requirements are disjunctive – "any right to relief is asserted against them jointly, severally, *or in the alternative* with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences."  Rule 20(a)(2)(A) (emphasis added); see also Desert Empire Bank v. Insurance Co. of N. Am., 623 F.2d 1371, 1375 (9th Cir. 1980) ("On a threshold level, Rule 20(a) imposes two specific requirements for the permissive joinder of parties:  (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence or series of transactions or occurrences; and (2) some question of law or fact common to all parties must arise in the action.").

"Rules 20 and 21 are intended to promote trial convenience, to expedite the determination of litigation, and *to avoid multiplicity of suits*." Stanley Works v. Haeger Potteries, Inc., 35 F.R.D. 551, 554 (N.D. Ill. 1964) (emphasis added). These rules should be construed liberally, as "[j]oinder of claims, parties and remedies is strongly encouraged." United Mine Workers v. Gibbs, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138 (1966). Ultimately, a determination on the question of joinder rests within the discretion of the trial court. See Mosley v. General Motors Corp., 497 F.2d 1330, 1332 (8th Cir. 1974).

In satisfying the first prong of Rule 20(a), "a case by case approach is generally pursued." Id., 497 F.2d at 1333. In analyzing the first prong, Mosley found that "[n]o hard and fast rules have been established under the rule." Id. In looking at Rule 13(a) dealing with counterclaims as guidance, that court adopted the same construction of the terms "transaction or occurrence":

> "[t]ransaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. Accordingly, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding.

Id.; see Disparte v. Corporate Executive Bd., 223 F.R.D. 7, 10 (D.D.C. 2004) (stating that the "logical relationship test is flexible").[5]

As to the second prong of Rules 20(a), "[t]he rule does not require that all questions of law and fact raised by the dispute be common….common questions have been found to exist in a wide range of context." Mosley, 497 F.2d at 1334.

---

[5] In Mosley v. General Motors Corp., supra, the court found the plaintiffs had asserted a right to relief arising out of the same transactions or occurrences where each of the ten plaintiffs alleged that he had been injured by the same *general policy* of discrimination on the part of the defendants, regardless of the fact that the different plaintiffs asserted claims for discrimination occurring at different times for each plaintiff. 497 F.2d at 1333-1334.

Lastly, the court should consider whether an order under Rule 21 would prejudice any party or would result in undue delay. See Brereton v. Commc'ns Satellite Corp., 116 F.R.D. 162, 163 (D.D.C. 1987) (stating that Rule 21 must be read in conjunction with Rule 42(b), which allows the court to sever claims in order to avoid prejudice to any party).

## IV. ARGUMENT

### A. THE NATURE OF THE TORRENT ACTIVITY ALLEGED.

Plaintiff has alleged, and Plaintiff has shown in its motion for expedited discovery, that each and every Doe Defendant, without the permission or consent of the Plaintiff, has used an online media distribution system to copy and distribute to the public, including by making available for distribution to others, Plaintiff's copyrighted Movie. [Doc. No. 1 (Complaint) at ¶ 12] In doing so, each Defendant has violated Plaintiff's exclusive rights of reproduction and distribution, constituting infringement of Plaintiff's exclusive rights protected under the Copyright Act of 1976 (17 US.C. § 101 et seq.). Id.

As alleged, the manner of the illegal transfer of Plaintiff's Movie by Doe Defendants has been through a "BitTorrent protocol" (or "torrent") peer-to-peer (P2P) network, which is significantly different in its architecture than the older P2P protocols used by such networks as Napster, Grokster, Kazaa, Limewire, and Gnutella. [Doc. No. 1 (Complaint) at ¶ 3; see also Declaration of Patrick Achache filed concurrently herewith ("Achache Decl. 06/21/10"), ¶ 2] The BitTorrent protocol used by the Doe Defendants to copy and distribute Plaintiff's Movie allow computers with low bandwidth capabilities to participate in large data transfers across a network, which was more problematic with the older P2P protocols. [Doc. No. 1 (Complaint) at ¶ 3] Under the BitTorrent protocol, the initial file-provider intentionally elects to share or upload

a file via a BitTorrent network.  Id.  This is called "seeding."  Id.  Other users ("peers") on the

network connect to the seeder to download.  Id.  As additional peers request the same file, each

additional user becomes a part of the network (or "swarm") from where the file can be

downloaded, which means that such additional user's computer is connected not only to the

seeder/uploader but also to other peer/downloaders.  Id.  Unlike the older P2P protocols, each

new file downloader is receiving a different piece of the data from each user who has already

downloaded that piece of data, all of which pieces together comprise the whole.  Id.  This means

that every "node" or peer user who has a copy of the infringing copyrighted material on such a

network—or even a portion of a copy—can also be a source of download for that infringing file,

potentially both copying and distributing the infringing work simultaneously.  Id.

     This distributed nature leads to a rapid viral spreading of a file through peer users, all of

whom are both uploading and downloading portions of the file simultaneously.  [Doc. No. 1

(Complaint) at ¶ 4]  As more peers join the swarm, the likelihood of a successful download

increases.  Id.  Because of the nature of the BitTorrent protocols, any peer that has downloaded a

file prior to the time a subsequent peer downloads the same file is automatically a possible, and

even likely, source of the file for the subsequent peer.  Id.  Essentially, because of the nature of

the swarm downloads as described above, every infringer is simultaneously stealing copyrighted

material through collaboration from many other infringers, through a number of ISPs, in

numerous jurisdictions around the country.  See id.

     One difference between this BitTorrent protocol and the older P2P network protocols

used by such networks as Napster, Grokster, Kazaa, Limewire, and Gnutella is how they locate

and trade bits of the files.  Achache Decl. 06/21/10, ¶ 3.  Napster, Grokster, Kazaa, Limewire,

Gnutella, etc. are file sharing networks.  Id.  Through a series of nodes, infringers are

interconnected to a variety of people sharing a variety of files. Id. Most of the time they send out a search request along the network and people who have files that meet the search criteria answer back that they have it. Id. Then an individual will pick one of the search results and start getting bits of the file from that particular person who has some available bandwidth for transferring of the file. Id.

BitTorrent, on the other hand is file-focused. Achache Decl. 06/21/10, ¶ 4. Someone who has a copy of the file creates a tracker and makes it available. Id. Rather than finding that tracker by sending out search requests along a file sharing network, infringers find it on web sites, via recommendations in chat rooms, in links posted to mailing lists, etc. Id. Then everyone interested in sharing that specific file (either providing a copy they already downloaded or getting a copy) can use the tracker to essentially create a network dedicated to sharing just that specific file. Id.

The primary characteristic of BitTorrent is the notion of torrent, which defines a session of transferring a single file to a set of peers. Achache Decl. 06/21/10, ¶ 5. Peers involved in a torrent cooperate to replicate the file among each other using swarming techniques. Id. A user joins an existing torrent by downloading a ".torrent" file and adding it to its client. Id. This file contains meta-information on the file to be downloaded, e.g., the number of pieces, the SHA-1 hash values of each piece, and the IP address of the so-called tracker of the torrent. Id. The tracker is the only centralized component of BitTorrent, but it is not involved in the actual distribution of the file. Id. It only keeps track of the peers currently involved in the torrent and collects statistics on the torrent. Id. When joining a torrent, a new peer asks the tracker for a list of IP addresses of peers to connect to and cooperate with, typically 50 peers chosen at random in the list of peers currently involved in the torrent. Id. This set of peers forms the peer set of the

7

new peer.  Id.  The group of peers will share the file among each other.  Id.  Each peer knows what pieces each other peer in its peer set has, and each peer helps the other to fulfill the completion of the file.  Id.

If a file is observed directly after its release, the network size increases from a few users to the maximum amount in which all users are potential uploaders for the respective file. Achache Decl. 06/21/10, ¶ 6.  Within a small network, and depending on the upload bandwith of each user and the size of the file shared, the plausibility that each user downloaded a part from each other is very high.  Id.  Within Mr. Achache's declaration, he illustrates an example where Guardaley found several IP addresses sharing the same file with the same hash, same name, same file size, and operating over the same ISP with not more than five hours between them on two consecutive days.  Id.  All those infringers only had one specific file in connection, a file of Plaintiff's Movie.  Id.  Seeing the whole structure of the infringers from other ISPs sharing the same file with the same hash value, it indicates that all of those individuals must have searched for this file on a website like isohunt, mininova, the pirate bay, etc., and they all chose the same file.  Id.

Overall, there are a limited number of files of Plaintiff's movie available on BitTorrent protocols.  Achache Decl. 06/21/10, ¶ 7.  Accordingly, because of the nature of these protocols, it is highly likely that all of the infringers of Plaintiff's movie have been involved with the same infringing file from the time of its initial seeding up to and including the present day.  Id.[6]

---

[6] The data already obtained by Guardaley could be completely analyzed by an external expert, but such analysis would take at least 10 to 14 business days.  Achache Decl. 06/21/10, ¶ 7.

B.     PLAINTIFF HAS APPROPRIATELY JOINED THE DOE DEFENDANTS AT
THIS STAGE OF THE CASE.

    1.     <u>Plaintiff's right to relief arises out of the same transaction, occurrence, or
series of transactions or occurrences.</u>

As shown above, the nature of the infringement alleged in this case tends to show that all
Doe Defendants engaged in the same series of transactions and occurrences.  Each Doe
Defendant is alleged to have participated in a swarm with other Doe Defendants, all of which
was targeted at one thing – illegally downloading/uploading Plaintiff's copyrighted Movie.  Even
though all of the Doe Defendants may not have participated on the very same day and time, all of
the events involving all of the Doe Defendants are logically related to the sharing of the seed file
(Plaintiff's copyrighted Movie in digital form).

Again, this is significantly different from the prior cases involving copyright
infringement via P2P systems.  In those earlier cases, the doe defendants utilized platforms such
as Napster, Grokster, Kazaa, and Limewire.  Using those platforms, the infringer basically
copied a work from one other user.  Each particular act of infringement involved a specific one-
on-one connection between two users for that specific file.  Once the sharing of that file was
over, so presumably was the relationship between the infringers.

Further, because those cases dealt with multiple rights holders asserting claims for
multiple copyrighted works, the infringements tended to be more independent and unrelated acts
amongst the various doe defendants.  For example, in the prior cases each doe defendant was
typically alleged to have downloaded a number of different songs—protected by a number of
different copyrights and owned by a number of different plaintiff copyright holders—from
various third-party infringers.

Here, the use of a torrent P2P platform for the infringement of one copyrighted work is an ongoing and continuous series of infringements. In order for each and every Doe Defendant to obtain a download of Plaintiff's Movie, each and every Doe Defendant must link to a seed file of Plaintiff's Movie. Because a seed file can only exist from another Doe Defendant, each Doe Defendant is necessarily intertwined.

Overall, because of the swarm nature of the torrent file sharing, Plaintiff's alleged facts tend to show that the Doe Defendants acted in concert in an ongoing effort to infringe Plaintiff's work. Whether each Doe Defendant actually illegally downloaded, uploaded, and/or made Plaintiff's work available for others to infringe, all Doe Defendants acted together in the various swarms.[7]

Amici summarily dismiss the distinction of the torrent protocol. [See Doc. No. 13 (Motion to File *Amici Curiae* Brief) at p. 24] Therein, Amici acknowledge that this protocol "works by taking small fragments of a work from multiple people in order to assemble a copy" but dismiss this distinction by claiming that the "individual Defendants still have no knowledge of each other, nor do they control how the protocol works…." Id. However, it is unclear how Amici can definitively say that the "individual Defendants still have no knowledge of each other" [Doc. No. 13 (Motion to File *Amici Curiae* Brief) at p. 24] when each BitTorrent user can see that portions of the file are being downloaded from (and uploaded to) tens, hundreds, or

---

[7] In Stanley Works v. Haeger Potteries, Inc., 35 F.R.D. 551 (N.D. Ill. 1964), the court found that the allegations made against the prospective defendants arose out of the same factual situation and stated that "[i]t would seem that where the party to be added allegedly made possible that infringement, induced it and contributed thereto, judicial economy would require that party's presence in the original infringement suit, as well." Id. at 554. Here, while all Doe Defendants acted in concert and contributed to distributing Plaintiff's copyrighted Movie, each Doe Defendant's own acts of downloading and/or distributing Plaintiff's Movie also constitutes an infringement of Plaintiff's exclusive rights of reproduction and distribution under the Copyright Act of 1976. See generally 17 US.C. § 106.

perhaps thousands of other users.  Apparently, Amici are arguing that multiple defendants must

personally know each other before they can be joined in a lawsuit.  That is not the requirement.

Notwithstanding Amici's understanding of the nature of a torrent protocol, because of the

nature of the alleged protocols used to infringe on Plaintiff's Movie, the Doe Defendants do have

knowledge that they are illegally downloading and/or distributing Plaintiff's Movie to others.

While the Doe Defendants may not know the real identity of the other Doe Defendants, they may

know them by their anonymous user names or IP addresses.

Additionally, the fact that Plaintiff is alleging infringement of only one work tends to

show a relationship among all Doe Defendants.  In <u>MyMail, Ltd. v. America Online, Inc.</u>, 223

F.R.D. 455 (D.C.Tex. 2004), the court specifically held that joinder of unrelated defendants who

allegedly infringed the same patent was proper.  The court stated:

> A logical relationship exists if there is some nucleus of operative facts or
> law….MyMail alleges that all defendants have infringed the '290 patent….The
> UOL Defendants urge the Court to adopt the rule that infringement by different
> defendants does not satisfy Rule 20's same transaction requirement, but the Court
> finds that this interpretation of Rule 20 is a hypertechnical one that perhaps fails
> to recognize the realities of complex, and particularly patent, litigation. In
> essence, the UOL Defendants advocate a rule that requires separate proceedings
> simply because unrelated defendants are alleged to have infringed the same
> patent. The Court disagrees with such a per se rule that elevates form over
> substance. Such an interpretation does not further the goals of Rule 20, especially
> for discovery and motion purposes.

<u>Id.</u> at 456-457 (internal citations omitted); <u>see</u> <u>Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.</u>,

233 F.R.D. 615 (D. Kan. 2006) ("The first requirement is met because Sprint's claims against all

the defendants arise out of the same transaction or occurrence. Most notably, Sprint alleges that

each of the defendants has infringed the same seven patents.").

Also, in <u>DIRECTV, Inc. v. Barrett</u>, 220 F.R.D. 630 (D. Kan. 2004), the court held that

the satellite broadcaster's action against alleged owners of pirate access devices arose out of

same "transaction" for purposes of the joinder rule.  There, the broadcaster alleged that each defendant purchased one or more devices, identical or nearly identical, designed to illegally intercept satellite signals or facilitate illegal interception, and records and other information that served as the basis of broadcaster's claims arose from the same investigations and raids.  Id. at 632.

Similarly, in this case, Plaintiff alleges that all Doe Defendants utilized an identical or nearly identical torrent P2P protocol to illegally infringe Plaintiff's one copyrighted work. Additionally, the evidence that will serve as the basis of Plaintiff's claims against all Doe Defendants arose from the same investigation by the third-party technology company utilized by Plaintiff.  Therefore, Plaintiff has shown that the liability for all Doe Defendants arises out of the same transaction or series of transactions, meeting the first requirement of Rule 20(a).

2.  <u>A question of law or fact common to all Doe Defendants will arise in the action.</u>

Plaintiff has alleged identical claims against all Doe Defendants for each and every Doe Defendant's alleged use of an online media distribution system to distribute Plaintiff's Movie. [<u>See</u> Doc. No. 1 (Complaint) at ¶ 12]  Therein, Plaintiff has alleged similar questions of fact, including without limitation whether each and every Doe Defendant did use a torrent protocol to download and/or distribute Plaintiff's Movie.  Further, Plaintiff has alleged the exact same legal claim against each and every Doe Defendant – "Infringement of Registered Copyright."  [<u>See</u> Doc. No. 1 (Complaint) at p. 4]

Therefore, Plaintiff has satisfied the second prong of Rule 20(a)(2), as Plaintiff's common cause of action will raise similar questions of law, including without limitation the

application of the Copyright Act of 1976 (17 U.S.C. § 101 *et seq.*), particularly in the context of file-sharing across the BitTorrent protocol.  See DIRECTV, Inc. v. Barrett, 220 F.R.D. at 632 ("The court also concludes that the claims against the defendants involve at least one common question of law or fact. DIRECTV seeks redress under identical legal theories against each of the defendants in each case. The claims in each complaint and the law under which they are brought are the same. Based on DIRECTV's allegations, the claims in each case involve at least one common question of law.").

### C.     SIMILAR CASES HAVE FOUND THAT ALLEGATIONS SIMILAR TO PLAINTIFF'S DO NOT VIOLATE RULE 20.

Other courts dealing with cases for copyright infringement against unknown doe defendants have specifically found that joinder of the defendants was proper under Rule 20, especially at the early outset of these types of cases.  Most notably, the District Court of Maine issued a well reasoned and analyzed opinion in Arista Records, LLC v. Does 1-27, 584 F. Supp. 2d 240 (D. Me. 2008), noting the legal requirements and the practical aspects of joinder in such cases.[8]

There, a group of copyright owners and licensees brought a copyright infringement action against 27 unidentified students of the University of Maine.  See 584 F. Supp. 2d at 241.  In relation to a number of motions to dismiss filed by various doe defendants, the magistrate judge suggested that the court enter an order to show cause why the plaintiffs should not be sanctioned pursuant to Rule 11, recommending that the plaintiffs demonstrate that they have adequate

---

[8] As shown below, the prior similar cases cited by Amici are opinions or orders (some of which are unpublished) that provide very little analysis and generally rely on conclusory assertions in concluding that those cases suffered from misjoinder.

evidentiary support for their factual contentions regarding joinder.  Id. at 250-251.  The court did

not act on the recommendation, and did not issue the show cause order, but did address the

joinder issue in the context of the motions to dismiss.  See id. at 251.

The court stated that it was not troubled with the joinder of the multiple doe defendants in

one lawsuit.  Id.  The court also based its conclusion upon consideration of the plaintiffs'

allegations regarding whether they had asserted that their right to relief related to or arose out of

the same transaction or occurrence.  The court noted that:

> the Complaint alleges the Doe Defendants (1) engaged in copyright infringement
> on the internet; (2) uploaded and downloaded copyrighted sound recordings using
> peer-to-peer networks; and (3) accessed the peer-to-peer network though a
> common ISP--the same University. The Plaintiffs further assert that twenty-five
> of the twenty-seven Doe Defendants used the same peer-to-peer network and
> many infringed the same copyrighted sound recording or different copyrighted
> sound recordings from the same artist. Finally, they allege that the Doe
> Defendants have been "active participants in what can only be described as an on-
> line music swap meet, unlawfully copying copyrighted works from other users
> and distributing such works to other users."

Id. (internal citations omitted).

The court then state that "[a]t the very least, it seems premature to make a final

determination that joinder is not permissible under Rule 20."  Id.[9]  As a practical matter, the

court noted that because the court cannot dismiss a case for misjoinder pursuant to Rule 21, the

"remedy, then, would be to break up this one lawsuit into individual causes of action, an

---

[9] In Arista Records LLC v. Does 1-16, Civ. No. 1:08-CV-765 (GTS/RFT), 2009 WL 414060
(N.D.N.Y. Feb. 18, 2009), the district court echoed the timing considerations, though with
decidedly fewer defendants (four).  The court stated that "[t]o keep this finite community of
defendants within this lawsuit will not, at this juncture of the litigation, generate any prejudice or
harm to their respective defenses. Moreover, a joint defense may be more advantageous than
previously considered. And should any prejudice or conflict arise, the Court can address the
matter at that time. As the facts and circumstances become ripe and suggest or warrant
severance, all can avail themselves of such a request then. Therefore, at this stage of the
litigation, the Court finds that a request to sever the Doe Defendants as premature." Id. at *8.

alternative that does not exactly resonate with practicality." Id. at 251. Further, the court went on to state:

> Regarding the magistrate judge's concern about the possibility of abuse of the litigation process by the Plaintiffs, the Court is again more sanguine. It is true, as the magistrate judge observes, that the Plaintiffs have not identified and served the Doe Defendants and that they seek their names through this lawsuit. It is also possible that once identified and served, the Doe Defendants will determine that it is in their best interests to resolve the case. But, the Court begins with the premise that the Plaintiffs have a statutorily protected interest in their copyrighted material and that the Doe Defendants, at least by allegation, have deliberately infringed that interest without consent or payment. Under the law, the Plaintiffs are entitled to protect their copyrighted material and it is difficult to discern how else in this unique circumstance the Plaintiffs could act. Not to act would be to allow those who would take what is not theirs to remain hidden behind their ISPs and to diminish and even destroy the intrinsic value of the Plaintiffs' legal interests.

Id. at 252.

Overall, the District Court of Maine addressed not only Rule 20 but also the same practical arguments presented by Amici. As with this case, where there is some relationship between unidentified defendants for infringing identical copyrights, it is too premature to definitively state that they have been improperly joined in one lawsuit. To hold otherwise would practically prevent copyright holder plaintiffs from being able to protect their material or would unnecessarily burden the courts with additional cases.

Additionally, numerous other courts in similar cases, including this Court, have declined to find misjoinder. Such other cases include, without limitation, Arista Records LLC v. Does 1-19, 551 F. Supp. 2d 1 (D.D.C. 2008) (Kollar-Kotelly, C.), Arista Records LLC v. Does 1-16, Civ. No. 1:08-CV-765 (GTS/RFT), 2009 WL 414060 (N.D.N.Y. Feb. 18, 2009), Sony Music Entm't Inc. v. Does 1-40, 326 F. Supp. 2d 556 (S.D.N.Y. 2004), and the DIRECTV, Inc. cases cited herein, all of which held that joinder was proper. In fact, in many of the similar music download cases, the plaintiffs submitted a list of over three hundred court orders that have

15

apparently approved joinder in similar cases.  See, e.g., Arista Records, LLC v. Does 1-27, 584

F. Supp. 2d at 251.[10]  Overall, vast prior rulings comport with Plaintiff's position.


      D.      THE PRIOR CASES DEALING WITH SIMILAR ALLEGATIONS CITED BY
             AMICI ARE SIGNIFICANTLY DISTINGUISHABLE.

The distinction between the technology used by the Doe Defendants in this case and the

technology used by defendants in the prior anonymous copyright infringement cases is

significant.  In the prior cases, the defendants utilized an online media distribution system that

allowed them to share an entire file with one other user at a time.  Accordingly, in those cases,

the defendants had downloaded and/or distributed a number of different files on separate and

distinct occasions.  Here, as shown above, the torrent nature of the file sharing alleged in this

case involves a number of people acting in concert to download and/or distribute one particular

copyrighted work, Plaintiff's Movie.  Therefore, prior court orders finding misjoinder in those

cases are not persuasive, as the technology has significantly altered the way the Doe Defendants

are infringing Plaintiff's Movie.

For example, Amici's reliance on BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004

WL 953888 (E.D. Pa. Apr. 2, 2004) is unpersuasive.  First, the analysis in that case was quite

sparse and unclear.  The predominate reasoning for the court's conclusion of improper joinder

seemed to be its finding that "[e]ach claim involves different property, facts, and

defenses.…[g]iven this panoply of facts, law, and defenses…[j]oinder is improper."  The court

seemed to conclude that the allegations did not satisfy the second prong of Rule 20(a)(2) and

---

[10]  Plaintiff acknowledges that the use of this list has been criticized by at least two courts.  See
Arista Records, LLC v. Does 1-11, No. 1:07-CV-2828, 2008 WL 4823160, at *6 fn. 7 (N.D.
Ohio Nov. 3, 2008); Fonovisa, Inc. v. Does 1-9, Civil Action No. 07-1515, 2008 WL 919701, at
*5 fn. 10 (W.D. Pa. Apr. 3, 2008).

lacked the requirement of "*any* question of law or fact common to all defendants will arise in the action." Rule 20(a)(2)(B) (emphasis added).[11] However, the court never considered the initial common question of law of whether all defendants infringed the plaintiffs' copyrights or the initial common question of fact of whether all defendants used a file sharing service over the internet. Either of these questions was common to all defendants and would seem to satisfy the requirement of *any* common question of law or fact.

Further, Amici have conveniently failed to include the part of that court's analysis that provides a clear factual distinction to this case. There, the court found that each claim of copyright infringement involved separate and distinct copyrights held by multiple plaintiffs:

> John Doe 104, for example, is alleged to have infringed nine works held by five Plaintiffs. John Doe 113 is alleged to have infringed ten works owned by a different (sometimes overlapping) group of Plaintiffs, with only one copyright identical to John Doe 104 ("Guilty Conscience," by the popular rap lyricist Eminem). John Doe 199, meanwhile, is alleged to have infringed seven works, none of them the same as John Doe 58. Plaintiffs' Complaint, Exh. A. In other words, in addition to the individual acts of infringement encompassing separate transactions and occurrences, the actual property at issue is different for each Defendant.

BMG Music v. Does 1-203, No. Civ.A. 04-650, 2004 WL 953888 at *1.

Here, the allegations relate to the infringement of only one copyright held by only one plaintiff. Accordingly, a question of law and fact is common to all Doe Defendants – whether each Doe Defendant did unlawfully copy and/or distribute Plaintiff's Movie. Amici summarily dismiss the distinction that the allegations in this case involve the infringement of a single movie. [See Doc. No. 13 (Motion to File *Amici Curiae* Brief) at p. 24] However, Amici's argument again fails to address the actual requirements under Rule 20(a)(2).

---

[11] Amici's paraphrasing of Rule 20 again misleads as to the actual requirements of the rule. Rule 20(a)(2)(B) on requires "*any* question of law or fact common to all defendants will arise in the action," not that "there must be a common question of fact or law common to all the defendants." Compare Rule 20(a)(2)(B) with Memorandum of *Amici Curiae* (Doc. No. 13 at p. 22).

The fact that this case involves only one copyrighted work tends to show that the actions of all Doe Defendants arise from the same series of transactions or occurrences. Further, the fact that this case involves only one copyrighted work, by definition, means that a question of fact or law will be common as to all Doe Defendants. Again, to satisfy the requirement that a question of law or fact common to all defendants will arise in the action, Plaintiff need to only allege that *any* question of law or fact is common to all Doe Defendants. Plaintiff has done that by alleging the same legal cause of action against each Doe Defendant and that each Doe Defendant has used an online media distribution system to infringe the exact same work – Plaintiff's copyrighted Movie. [See Doc. No. 1 (Complaint) at ¶ 12]

Amici attempt to emphasize the language in BMG Music v. Does 1-203 that focused on the different defenses possible among the doe defendants in that case. However, just because certain Doe Defendants might present different defenses, and just because *some* facts related to the Doe Defendants might be different, does not defeat Plaintiff's initial showing under this second prong of Rule 20(a)(2). If a plaintiff had to show that every single fact and legal argument was the same for every defendant in a case, joinder of defendants could never exist. There will always be some level of different facts or legal theories amongst co-defendants, even where their liabilities arise out of the same transaction or series of transactions. That is precisely why the second prong of Rule 20(a)(2) only requires that *any* question of law or fact be common to all Doe Defendants.

Overall, Amici are attempting to mislead the Court by combining the two distinct requirements under Rule 20(a)(2). Because the court's basis for concluding that there was misjoinder in BMG Music v. Does 1-203 was the "panoply" of facts that significantly differ from this case, this Court should not be persuaded by the two paragraph analysis of that decision.

Amici's reliance on the other rulings and orders cited, many of which are unpublished or not reported in the federal register, are similarly unpersuasive. Those rulings and orders do not address the specific requirements under Rule 20(a) and do not state the factual and procedural circumstances factoring into each court's decision.

Lastly, while Amici have gone to great lengths to cite and include opinions and orders favorable to their arguments, they mislead the court into thinking that this is universally "how courts around the nation have handled issues of jurisdiction, joinder and free speech rights in analogous cases." [See Doc. No. 13-1 (Request for Judicial Notice) at p. 3] However, even in some of the examples provided by Amici, various courts have declined to sever similar cases or find misjoinder. For example, even within Amici's own offered order, in the In the Matter of DIRECTV, INC. cases, the court recognized that other districts around the country actually came to the exact opposite conclusion in nearly identical cases – declining to order severance. [See Doc. No. 13-1 (Request for Judicial Notice) at Ex. B]

That court cited DIRECTV, Inc. v. Russomanno, No. 03-2475, 2003 U.S. Dist. LEXIS 23403, at *14 (D.N.J. Nov. 12, 2003) (finding it difficult at an early stage in the litigation to conduct an analysis to determine whether the claims against defendants involve the same factual issues or arise out of the same transactions or series of transactions: "without some discovery and the development of a substantive factual record, defendants cannot yet demonstrate the propriety of severing the claims and instituting separate actions against each of them."); DIRECTV, Inc. v. Hosey, 289 F. Supp. 2d 1259, 1262 (D. Kan. 2003) (declining to sever the claims because it was "not prepared to hold that the claims in this case did not arise out of the same transaction, occurrence, or series of transactions or occurrences."); DIRECTV. Inc. v. Essex, No. C02-5503RJB, 2002 U.S. Dist. LEXIS 26923, at *4 (W.D. Wash. Nov. 13, 2002)

(declining to sever claims because defendants "purchased and used Pirate Access Devices ... from the same distribution center in Santa Ana, California" and the alleged purchases fell "within a twelve-month time frame, from June 2000 through May 2001.").  Further, as relied on by Plaintiff above, DIRECTV, Inc. v. Barrett, 220 F.R.D. 630 (D. Kan. 2004) specifically cited the various other decisions in the DIRECTV cases, both ordering and declining severance, and ultimately decided against severance.[12]

Overall, the opinions and orders in prior, similar cases provided by Amici are by no means controlling and simply are not even persuasive, as most of them provided no analysis or reasoning for the various courts' decisions.[13]  At best, the various rulings are in conflict and highlight the fact that a determination must be made with each court's discretion on a case-by-case basis.  Accordingly, because of the conflicting prior opinions and orders, and given the significantly different nature of the alleged infringement in this case, the court should decline such a drastic measure of severing or dropping any Doe Defendants at this stage of the case.

---

[12] While Amici do "recognize the judicial analysis [in their favor] was not universal," they only cite three instances, none of which are the adverse rulings cited in the DIRECTV, Inc. cases. [See Doc. No. 13 (Motion to File Amici Curiae Brief) at p. 23]

[13] Plaintiff notes that in one similar case, the Northern District Court of Ohio stated that "it appears that the majority of district courts who have addressed the issue of joinder and were faced with the same allegations to connect doe defendants in other music downloading lawsuits have concluded that those allegations were insufficient to satisfy the transactional requirement of Fed.R.Civ.P. 20(a)(2) and that joinder was therefore improper."  Arista Records LLC v. Does 1-11, No. 1:07-CV-2828, 2008 WL 4823160, *6 (N.D. Ohio Nov. 3, 2008).  However, it is interesting to note that the court then cites to the magistrate judge's recommendation in the Arista Records LLC v. Does 1-27 District Court of Maine case [No. 07-162-B-W, 2008 WL 222283, at *6 n.5 (D. Me. Jan. 25, 2008)], even though District Court Judge John A. Woodcock, Jr.'s opinion declining to adopt that recommendation was issued the week prior (October 29, 2008).  See generally Arista Records, LLC v. Does 1-27, 584 F. Supp. 2d 240 (D. Me. 2008).

E.     ANY ACTION TAKEN PURSUANT TO RULES 20 OR 21 WOULD BE

       PREMATURE.

Here, the Court has already determined that Plaintiff has met its threshold burden to

obtain further information about the Doe Defendants by identifying the Doe Defendants with

sufficient specificity and showing that Plaintiff's suit can withstand a motion to dismiss.  [See

generally Doc. Nos. 3 (Plaintiff's motion for expedited discovery), 4 (this Court's order granting

discovery)]  As more fully set out in Plaintiff's Motion for Leave to Take Discovery Prior to the

Rule 26(f) Conference [Doc. No. 3], Plaintiff identified the unique IP address for each

Defendant, along with the date and time of alleged infringement and ISP that provided Internet

access to each Defendant and assigned the unique IP address to the Defendant, from information

provided to it by Plaintiff's on-line piracy technology consultant, Guardaley, Limited

("Guardaley").  This information was obtained by Guardaley's proprietary tracing software

program to trace the IP address for each Defendant, as detailed in the declarations of Benjamin

Perino and Patrick Achache.  However, Plaintiff is unable to obtain the true identity of the Doe

Defendants without issuing subpoenas to the non-party ISPs, and the Defendants must be

identified before this suit can progress further.  Therefore, Plaintiff has already demonstrated

good cause for the requested information.

Further, Plaintiff has made a prima facie evidentiary showing that the IP addresses it has

identified and subpoenaed to various ISPs did make an unlawful download of Plaintiff's Movie

on a specific date and time.  Again, Plaintiff utilized proprietary technology developed and

instituted by Guardaley that detects the unauthorized distribution of movies and other

audiovisual content and files over online media distribution systems.  See Achache Declaration

(filed as Exhibit B to Plaintiff's Motion for Leave to Take Discovery [Doc. No. 3]) ¶ 4.

21

Accordingly, Defendants' IP addresses at the time of the alleged infringement were included in this case because they were copying and offering files containing Plaintiff's Movie for unlawful transfer or distribution. *See id.* at ¶ 8. In fact, Guardaley actually downloaded Plaintiff's Movie from the IP address assigned to these Defendants, just as it does with all Doe Defendants. *See id.* at ¶ 9. Lastly, Guardaley confirmed that the files that Defendants distributed were actually Plaintiff's Movie by watching both and comparing them. *Id.* at ¶¶ 16-17.

Therefore, Plaintiff has already demonstrated good cause for the subpoenas and has established a prima facie case against each and every Doe Defendant. Therein, the court should not have any reservations that Plaintiff's claims lack merit and should allow Plaintiff at least the opportunity to conduct discovery.

While Plaintiff has served subpoenas on the non-party ISPs, Plaintiff has not yet received information from all of the ISPs. Further, Plaintiff has sent correspondence to the Doe Defendants already identified by some of the ISPs in an attempt to either settle with those Doe Defendants before naming and serving them or further ascertaining the merits of Plaintiff's case against those certain Doe Defendants, as required by such rules as Fed. R. Civ. P. 11.

Accordingly, justice requires that Plaintiff be permitted to finish the discovery already started. First, Plaintiff has not yet received all of the identifying information for all Doe Defendants. Second, Plaintiff has not yet been able to ascertain the merits of its claims against all Doe Defendants so as to ensure Plaintiff does not prosecute frivolous claims. Therefore, it is premature for the court to determine whether joinder of the Doe Defendants is proper at this stage of the case. See Arista Records LLC v. Does 1-19, 551 F. Supp. 2d 1 (D.D.C. 2008) (Kollar-Kotelly, C.) ("While the Court notes that the remedy for improper joinder is severance and not dismissal, … the Court also finds that this inquiry is premature without first knowing

Defendants' identities and the actual facts and circumstances associated with Defendants' conduct.").

At the very least, the court should not "drop" any defendant, as that would not be just.[14] As stated in Plaintiff's motion for expedited discovery, because of the relatively short timeframe in which the ISPs retain the information sought by Plaintiff—i.e., the IP addresses and corresponding customer identifying information of the Doe Defendants—Plaintiff's claims will be severely prejudiced if all but one of the Doe Defendants are dropped from the case. Even though Plaintiff may be able to re-file against those Doe Defendants, Plaintiff may lose its opportunity to pursue its claims because the information may not be properly preserved by the ISPs.

Further, contrary to the claims of Amici, the Doe Defendants have not been prejudiced by being joined in one lawsuit. Amici generally argue that instituting this suit against all Doe Defendants somehow creates unfairness and denies each individual Doe Defendant justice.[15] Amici seem to argue that instituting this case against all Doe Defendants in this jurisdiction creates additional burden and expense on the Doe Defendants not located in this jurisdiction. However, Amici fail to show how, at this point of the litigation, defending the case here differs at

_____

[14] This court's minute order to show cause required Plaintiff to show cause why all the Doe Defendants except for Doe 1 should not be "dismissed for misjoinder." [June 7, 2010 Minute Order.] Plaintiff understands this to mean that the court would sua sponte "drop" all Doe Defendants except Doe 1 if it finds misjoinder. However, even when it appears parties have been misjoined, the more appropriate remedy is severance, as opposed to "dropping" a party. See, e.g., Androphy v. Smith & Nephew, Inc., 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998) (stating that severance is appropriate, not dismissal, where multiple defendants were alleged to have infringed the same patents, creating a common question of law or fact).

[15] Again, Amici also claim that the court lacks personal jurisdiction over the Doe Defendants and that the Doe Defendants' First Amendment and due process rights have been violated. However, the court should not give any credence to these arguments, as they have already been firmly rejected by other courts. See, e.g., Sony Music Entm't Inc. v. Does 1-40, 326 F. Supp. 2d at 562-568.

all from defending the case in the Doe Defendants' home jurisdiction. Further, Amici fail to show how, at this point of the litigation, an individual Doe Defendant is being treated unfairly or is being deprived of his or her individual rights just because that Doe Defendant is grouped with other Doe Defendants.

On the other hand, Amici fail to acknowledge the benefits of giving all Doe Defendants the ability to defend the case in one jurisdiction, e.g. the ability to combine or join other Doe Defendants' filings and the ability to receive uniform decisions by the Court. Overall, as stated in DIRECTV, Inc. v. Barrett, "[a]t this stage of the litigation, the court cannot conclude that any prejudice to the defendants will outweigh the judicial economy of joinder of claims. To the contrary, the defendants may ultimately benefit from leaving the claims joined; the fewer cases DIRECTV is managing, the better DIRECTV can control its costs--costs which potentially could be borne by the defendants." 220 F.R.D. at 632.[16]

## V. CONCLUSION

As shown throughout this case, including Plaintiff's pleadings, motion for expedited discovery, and this statement, the nature of the "torrent" file sharing alleged by Plaintiff in this case permits Plaintiff to join all Doe Defendants in the case at this time. As alleged, all Doe Defendants have engaged in the same series of transactions to infringe on Plaintiff's copyright, and common questions of law and fact will arise in this case. Additionally, because Plaintiff has not yet learned the identities of all Doe Defendants in this case, any severance under Rule 20 is

---

[16] Plaintiff cannot imagine that the court truly wants Plaintiff to file over 2,000 separate cases related to Plaintiff's one work. As stated in Arista Records, LLC v. Does 1-27, that would result in an "alternative that does not exactly resonate with practicality." 584 F. Supp. 2d at 251.

premature at this time.  Overall, justice requires that Plaintiff be permitted to proceed with its

case as styled.


Respectfully Submitted,

                            WEST BAY ONE, INC.


**DATED**:  June 21, 2010

                    By:     /s/ Thomas Dunlap
                            Thomas M. Dunlap (D.C. Bar # 471319)
                            Nicholas A. Kurtz (D.C. Bar # 980091)
                            DUNLAP, GRUBB & WEAVER, PLLC
                            1200 G Street, NW Suite 800
                            Washington, DC 20005
                            Telephone: 202-316-8558
                            Facsimile: 202-318-0242
                            tdunlap@dglegal.com
                            nkurtz@dglegal.com
                            *Attorneys for the Plaintiff*

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WEST BAY ONE, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CA. 1:10-cv-00481-RMC |
| | ) | |
| DOES 1 – 2,000 | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## DECLARATION OF PATRICK ACHACHE IN SUPPORT OF PLAINTIFF'S STATEMENT OF GOOD CAUSE AS TO WHY DEFENDANTS 2 THROUGH 2,000 SHOULD NOT BE DISMISSED FOR MISJOINDER UNDER RULE 20 OF THE FEDERAL RULES OF CIVIL PROCEDURE

I, Patrick Achache, declare:

1.  I am Director of Data Services for Guardaley, Limited ("Guardaley"), a company incorporated in England and Wales under company number 06576149. Guardaley is a provider of online anti-piracy services for the motion picture industry. Before my employment with Guardaley, I held various software developer and consultant positions at companies that developed software technologies.

2.  The manner of the illegal transfer of Plaintiff's movie by Doe Defendants in this case has been through a "BitTorrent protocol" (or "torrent"), which is significantly different in its architecture than the older peer-to-peer (P2P) network protocols used by such networks as Napster, Grokster, Kazaa, Limewire, and Gnutella.

3.  One difference in the services is how they locate and trade bits of the files. Napster, Grokster, Kazaa, Gnutella, etc. are file sharing networks. Through a series of nodes, infringers are interconnected to a variety of people sharing a variety of files. Most of the time

they send out a search request along the network and people who have files that meet the search criteria answer back that they have it. Then an individual will pick one of the search results and start getting bits of the file from that particular person who has some available bandwidth for transferring of the file.

4. BitTorrent, on the other hand is file-focused. Someone who has a copy of the file creates a tracker and makes it available. Rather than finding that tracker by sending out search requests along a file sharing network, infringers find it on web sites, via recommendations in chat rooms, in links posted to mailing lists, etc. Then everyone interested in sharing that specific file (either providing a copy they already downloaded or getting a copy) can use the tracker to essentially create a network dedicated to sharing just that specific file.

5. The primary characteristic of BitTorrent is the notion of torrent, which defines a session of transferring a single file to a set of peers. Peers involved in a torrent cooperate to replicate the file among each other using swarming techniques. A user joins an existing torrent by downloading a ".torrent" file and adding it to its client. This file contains meta-information on the file to be downloaded, e.g., the number of pieces, the SHA-1 hash values of each piece, and the IP address of the so-called tracker of the torrent. The tracker is the only centralized component of BitTorrent, but it is not involved in the actual distribution of the file. It only keeps track of the peers currently involved in the torrent and collects statistics on the torrent. When joining a torrent, a new peer asks the tracker for a list of IP addresses of peers to connect to and cooperate with, typically 50 peers chosen at random in the list of peers currently involved in the torrent. This set of peers forms the peer set of the new peer. The group of peers will share the file among each other. Each peer knows what pieces each other peer in its peer set has, and each peer helps the other to fulfill the completion of the file.

6. If a file is observed directly after its release, the network size increases from a few users to the maximum amount in which all users are potential uploaders for the respective file. Within a small network, and depending on the upload bandwith of each user and the size of the file shared, the plausibility that each user downloaded a part from each other is very high. For example, on the August 5, 2009 Guardaley found the following IP addresses sharing the same file with the same hash, same name, same file size, and operating over the same ISP (Comcast Cable) with not more than ten hours between them:

| 67.183.31.xx | 8.5.09 12:33:04 AM | BEVLPMMW2KVV4MJGHYHTBGOLNDSGN7EO |
| 98.208.19.xx | 8.5.09 12:35:34 AM | BEVLPMMW2KVV4MJGHYHTBGOLNDSGN7EO |
| 67.172.243.xx | 8.5.09 05:24:40 AM | BEVLPMMW2KVV4MJGHYHTBGOLNDSGN7EO |
| 76.122.65.xx | 8.5.09 02:06:40 PM | BEVLPMMW2KVV4MJGHYHTBGOLNDSGN7EO |
| 68.55.71.xx | 8.5.09 09:18:32 PM | BEVLPMMW2KVV4MJGHYHTBGOLNDSGN7EO |

All those infringers only had one specific file in connection:

**The Chaos Experiment (2009)DVDRip(Xvid)AC3 5.1(Eng)-RoCK&BlueLadyRG.avi** file

size 1220.93 in MB.

On August, 18, 2009 Guardaley found additional collaborating IP addresses:

| 76.125.105.xx | 8.18.09 12:55:16 AM | BEVLPMMW2KVV4MJGHYHTBGOLNDSGN7EO |
| 69.250.132.xx | 8.18.09 01:18:38 AM | BEVLPMMW2KVV4MJGHYHTBGOLNDSGN7EO |
| 24.129.11.xx | 8.18.09 05:02:29 AM | BEVLPMMW2KVV4MJGHYHTBGOLNDSGN7EO |
| 69.248.201.xx | 8.18.09 04:52:57 PM | BEVLPMMW2KVV4MJGHYHTBGOLNDSGN7EO |
| 71.197.197.xx | 8.18.09 11:52:18 PM | BEVLPMMW2KVV4MJGHYHTBGOLNDSGN7EO |

Seeing the whole structure of the infringers from other ISPs sharing the same file with the same hash value, it indicates that all of those individuals must have searched for this file on a website like isohunt, mininova, the pirate bay, etc., and they all chose the same file:

**The Chaos Experiment (2009)DVDRip(Xvid)AC3 5.1(Eng)-RoCK&BlueLadyRG.avi**. , file

size 1220.93 in MB.

3

7. Overall, there are a limited number of files of Plaintiff's movie available on BitTorrent protocols. The data already obtained by Guardaley could be completely analyzed by an external expert, but such analysis would take at least 10 to 14 business days.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 21, 2010 at the United States of America.

_____

Patrick Achache