UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


ACHTE/NUENTE BOLL KINO          :
BETEILIGUNGS GMBH & CO KG       :
                                :        Docket No. CA 10-453 and
            Plaintiff,          :              10-481
        vs.                     :
                                :        Washington, D.C.
DOES 1-4,577,                   :      Wednesday, June 30, 2010
                                :            2:25 p.m.
WEST BAY ONE INC.,              :
                                :
        vs.                     :
                                :
DOES 1-2,000,                   :
            Defendants.         :
-------------------------------x


TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE ROSEMARY M. COLLYER
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:          NICHOLAS A. KURTZ, Esquire
                            THOMAS M. DUNLAP, Esquire
                            Dunlap Grubb Weaver
                            199 Liberty Stree, SW
                            Leesburg, VA  20175


For Amicus Electronic       CORYNNE MCSHERRY, Esquire
Frontier Foundation:        454 Shotwell Street
                            San Francisco, CA  94110


For Interested Party        Alexander Maltas, Esquire
Time Warner Cable Inc.:     Latham & Watkins LLP
                            555 Eleventh Street, NW
                            Suite 1000
                            Washington, DC  20004

Appearances continued:

Court Reporter:                  Crystal M. Pilgrim, RPR
                                 United States District Court
                                 District of Columbia
                                 333 Constitution Ave., NW
                                 Room 4704
                                 Washington, DC  20001


Proceedings recorded by machine shorthand, transcript produced
by computer-aided transcription.

```
1        THE DEPUTY CLERK: Civil action number 10-453 and 10-481

2   Achte/Nuente Boll Kino Beteiligungs GMBH & Co. versus Does

3   1-4,577 and West Bay One Incorporated versus Does 1-2,000.  For

4   the plaintiff Nicholas Kurtz and Thomas Dunlap.  The defendants

5   are pro se. For the Amicus parties Alexander Maltas and Corynne

6   McSherry.

7        THE COURT:  Good afternoon everyone. This is -- wait

8   a minute.  Don't we have Turner broadcast, somebody?

9        MR. MALTAS:  Time Warner.

10        THE COURT:  Yes, right.

11        MR. MALTAS:  Yes, Your Honor, we're the moving party

12   here.

13        THE COURT:  Right.

14        MR. MALTAS:  Would you like us to go first?

15        THE COURT:  Well yes, wait.  Let me figure out who's

16   who.  Wait a minute, who are you two guys?

17        MR. DUNLAP:  Tom Dunlap, Your Honor.

18        MR. KURTZ:  And Nick Kurtz, both for the plaintiffs.

19        THE COURT:  Okay, now that's why I'm confused because

20   plaintiffs go here.  You can stay where you are.  But

21   plaintiffs or prosecutors get to sit closest to the jury.  So

22   that's just a little heads up.  Okay, that's why I was

23   confused.

24     Okay, now tell me again who you are.

25        MR. MALTAS:  Yes, Alexander Maltas.  I represent Time
```

1  Warner Cable, we're the moving party here.

2           THE COURT:  Yes.

3           MR. MALTAS:  Your Honor, the two cases before the

4  Court today are a part of a series of essentially identical

5  cases filed in this judicial district, each alleging unlawful

6  downloading of copyrighted material, each brought against

7  several thousand plaintiffs -- defendants, as many as four or

8  5,000 anonymous defendants in each case.

9       Time Warner Cable, my client, is not a party to any of

10  these cases.  We are a third party.  We are here because we

11  received multiple subpoenas seeking an enormous amount of

12  information on a short time period.  So we're asking the Court

13  to quash or modify these subpoenas.

14       Now there have been many prior cases involving allegations

15  of unlawful downloading of copyrighted material.  They are

16  cited in the briefs.  You can see these cases have involved,

17  for example, four or 10 or 20 defendants.  These cases are

18  involving four and 5,000 defendants, dramatically larger in

19  scope.

20       So we are asking the Court to quash the subpoenas issued

21  to Time Warner Cable for two reasons.  First of all, in an

22  effort to manage the burdens on Time Warner Cable we attempted

23  to negotiate a solution with the plaintiffs that would minimize

24  the burdens to a reasonable level.  We reached an agreement

25  with them that they would not serve on us more than 28 IP

1  addresses lookups per month and that's globally for all of

2  their cases.  That agreement applied to two cases before this

3  Court.

4      The plaintiffs then in our view reneged on that agreement

5  and served us with very large subpoenas including 809 IP

6  address lookups.  We are now facing a total of nearly 1500 IP

7  address lookups.

8      That is in plain violation of the agreement Rule 29 and

9  the Angel versus Shawmut Bank case that we cite.  These

10 authorities establish that courts will enforce agreements by

11 parties to limit discovery and because these subpoenas are in

12 violation of that agreement, we ask the Court to quash them.

13     In the alternative even if there's no agreements, the

14 Court should quash the subpoenas because they would impose a

15 very significant and undue burden on Time Warner Cable.  We

16 have a subpoena compliance team, we have described it in our

17 affidavit.  It is a team that is tasked with responding to

18 process including subpoenas.  On average, they receive

19 approximately 550 IP address lookups per month total, the

20 majority of which are for law enforcement.  A lot of their work

21 is serving law enforcement requests on some very serious issues

22 including terrorism, child endangerment.  This is what they

23 spend most of their time doing.

24     So now we face 1500 requests for IP address lookups that

25 would overwhelm the team.  In effect, Your Honor, this is a

1  zero sum game.  Either our team can set aside all of it's law

2  enforcement work, set aside its business activities and devote

3  several months of work to the plaintiff's subpoenas or if we

4  are to continue with our current business activities and law

5  enforcement activities, we can reasonably handle 28 IP address

6  lookups per month for the plaintiffs.

7        Now I'm not aware of any cases that require a third

8  party that is not a party to the case to alter its business

9  operations or to change it's activities for a civil plaintiffs

10  third party discovery.  In fact, the cases we cite the Lender

11  case from this District, Microsoft v. Cusumano, these

12  authorities establish a couple of principals that I think are

13  right on point.

14        First of all, that courts need to be particularly

15  protective of third parties not being dragged into these

16  disputes and subjected to undue burdens.  But more

17  significantly, the authorities made clear and I'll read even

18  from the Lender case that they should not be subjected to

19  subpoenas and the Court should quash subpoenas that would

20  threaten the normal operations of the responding party or would

21  require an inordinate amount of time and resources.  That is

22  unquestionably the case here, both of those prongs are

23  satisfied here.

24        Your Honor has already raised the joinder issue, we will

25  leave that to the Amici to address.  But I do want to make one

1  point for the record just to clarify.  The plaintiffs in their

2  opposition brief have said that the entire basis for seeking

3  all of their discovery is that they believe they could satisfy

4  a motion to dismiss.

5      As for Time Warner Cable's subscribers I don't believe

6  that's the case because to be clear, we don't have any

7  subscribers in this jurisdiction.  We have zero subscribers in

8  the District of Columbia, we have zero subscribers in Maryland,

9  we have zero subscribers in Northern Virginia.  The closest our

10 subscribers are in the far Southwest corner of Virginia several

11 hundred miles from here and the plaintiffs are aware of that

12 because the process that they have described for identifying

13 the IP addresses and which internet service provider to direct

14 the subpoenas to would tell them that the location of a

15 subscriber, our Time Warner Cable subscribers are in places

16 like Ohio, North Carolina, Texas, not in the District of

17 Columbia.

18     So it's not clear to us why we're in this Court to begin

19 with and certainly not clear to us that they would survive a

20 motion to dismiss against any of our subscribers.

21     In terms of the remedies that we're seeking first and

22 foremost we ask the Court to quash the subpoena because it's in

23 violation of the agreements.  And because it's in violation of

24 Rule 45.  Rule 45 on it's face requires a serving party, the

25 plaintiff in this case, to take reasonable steps to reduce

1  undue burdens.  And in light of the history of copyright cases

2  against four or five, ten defendants at once, and in light of

3  the fact that they were fully aware of our capability and our

4  ability to handle only 28 IP address lookups at once, to then

5  serve us with over 1400 IP address lookups is simply not

6  reasonable and is contrary to Rule 45.

7       If the Court declines to quash we ask that at a minimum

8  the Court implements several significant restrictions on the

9  subpoena burdens that would minimize the burdens on Time Warner

10  Cable.  First of all, limiting our burdens to the 28 IP address

11  lookups a month that we can handle.

12       Second of all, we request reimbursement of costs.  I

13  believe this Court's orders already contemplate reimbursement

14  of costs and really the question is how much.  The plaintiffs

15  have said that they want to pay per subscriber.  So if for

16  example, Time Warner Cable looks up two IP addresses and they

17  both resolve to the same subscriber they want to pay once for

18  that subscriber, but Time Warner Cable incurs cost twice.  We

19  incur costs for each IP address that we look up and that should

20  be the appropriate measure of costs here.

21       Finally, Your Honor, we would like the Court to end the

22  plaintiff's practice of serving discovery that is far beyond

23  this Court's orders.  In several of these instances for

24  example, in the Achte/Nuente case, the plaintiffs filed a

25  complaint with a list of IP addresses.

1      There are I believe 426 or so that were corresponding to

2  Time Warner Cable subscribers and they got an order from Your

3  Honor permitting them to pursue discovery.  They then served a

4  subpoena on us seeking 809 IP address lookups.  They doubled

5  the discovery without informing the Court and they have been

6  doing this repeatedly and we think that the only way to protect

7  us from undue burdens and for the Court to manage the discovery

8  process should actually seek an order from the Court relating

9  to the particular IP addresses.

10      THE COURT:  Thank you, sir.

11      MR. MALTAS:  Thank you.

12      THE COURT:  Why don't I hear from the Amici next and

13  then the plaintiffs can argue it either each of you separately

14  on separate issues or whatever.

15      MS. MCSHERRY:  Thank you, Your Honor.

16     Corynne McSherry for the Electronic Frontier Foundation

17  on behalf of the Amici.

18      First of all, thank you, Your Honor, for permitting us

19  to be heard.  I know that's somewhat unusual and we appreciate

20  the opportunity.

21      THE COURT:  Well, it is unusual, but given the fact

22  that all of the plaintiffs are so far John Does, I actually

23  welcomed your involvement.

24      MS. MCSHERRY:  Thank you, Your Honor.

25     In fact, I do tend to think that I'm here on behalf of

1  Amici, but really we would like to think that we are here on

2  behalf of all those thousands of John Does who we believe are

3  not receiving individual justice in these cases so far.  In

4  fact, that is why we're here.

5          The principal issue that has already been raised I think

6  is the issue of joinder and so I am going to make points about

7  that and then if Your Honor would like to hear about the issues

8  of jurisdiction and the First Amendment problems I would be

9  happy to speak to those as well.

10          THE COURT:  All right.

11          MS. MCSHERRY:  Now, Your Honor, the purpose of

12  joinder is two-fold:  Fairness and judicial economy.  Neither

13  of those purpose are being accomplished as these cases are

14  currently postured where we have thousands of defendants who

15  are alleged to have infringed the same work but doubtless under

16  different facts and circumstances subject to different defenses

17  at different times, we know that based on the evidence that has

18  been submitted to the Court, all of those defendants are being

19  lumped in together.

20          I would point out right away that there's no also

21  sensible limit based on the theories that have been presented

22  on the number of defendants that could be lumped in together.

23  Right now we started in the Achte/Nuente case with 2,000, and

24  then it was 4500, it could be 10,000 based on the theories of

25  joinder that are presented at this point.

1          What that means for defendants is a very unfair

2    situation, it means there's a slanted playing field.  Imagine

3    that a defendant actually wants to defend themselves, they

4    believe they have legitimate defenses to raise with legitimate

5    facts and circumstances.

6          Well, they are looking at a very expensive proposition

7    and a more expensive proposition than they normally would face.

8    That's because they not only have to hire an attorney to

9    represent them, probably because of the jurisdictional issues

10   in a jurisdiction that they should not even properly have to

11   be, but leaving that aside for a moment, they have to hire an

12   attorney to not only represent, take care of their case but

13   monitor thousands of other cases because that's effectively

14   what it is.  They have to monitor discovery motions, they have

15   to monitor motions to strike answers, the responses from

16   plaintiffs to those that are happening with respect to multiple

17   other defendants because that's what a responsible attorney

18   needs to do to make sure that there aren't mistakes or rulings

19   anything that might adversely effect their own client.  So

20   that's a very expensive proposition and that's what a defendant

21   is looking at if they want to defend themselves.

22         So what that creates -- I'm sorry, one other point.

23         Should even some fraction of these cases ever go to

24   trial, let's say ten percent in the Achte/Nuente cases, that's

25   450 defendants.  Jury confusion is virtually inevitable and we

1   can see that right now.  So that means that defendants are

2   going to be under an enormous amount of pressure to simply

3   settle the cases because they won't be able to defend

4   themselves, and that's not fair.

5        Now sometimes settlement is appropriate but defendants

6   should be able to make that decision based on the merits of

7   their situation and not just because it's going to be too

8   expensive to defend themselves inevitably.

9        In addition, I would point out there's a related problem

10  which is there is going to be no judicial economy being

11  accomplished here.  Normally when we think of joinder and

12  judicial economy one of the things it does is it facilitates

13  fact finding with respect to liability.  Well, that's not going

14  to happen here and that's because the key issues in all of

15  these cases are the facts and circumstances that pertain to the

16  specific defendants and the defenses that can be raised by the

17  specific defendants.

18        And all of those, all of those defendants have the right

19  to raise them individually.  So joinder is not going to help

20  the Court in addressing those issues and in fact, may make it

21  more difficult.  And that's why --

22        THE COURT:  What kinds of defenses would you

23  anticipate?

24        MS. MCSHERRY:  Well, according to the Tanenbaum case

25  that recently came out of the Massachusetts District Court one

1  Judge has found that there is a legitimate fair use defense to

2  be raised depending on the facts and circumstances of the

3  downloading.  So that's one issue that may be raised.

4      In addition, what we have seen in the file sharing cases

5  is people will raise things like I was misidentified and they

6  will be able to establish that.  They may suggest that a minor

7  child did the actual downloading unbeknownst to them.  They may

8  suggest that they share an IP address with several other people

9  and they are not the people who should be identified and they

10 are not the people who have done the harm.  So there will be a

11 variety of facts and circumstances that could be raised.

12 Again, defendants should have the right to do that.

13      And that's why as a practical matter, Your Honor, right

14 now you have thousands of law suits before you.  We just have a

15 legal fiction here that it is just two.  But in fact, that's

16 not I believe how it's going to play out.

17      THE COURT:  Don't you think I should get credit for

18 that?

19      MS. MCSHERRY:  I think you should get credit for

20 that.

21      THE COURT:  Don't you think I should send up some

22 sort of balloon somewhere and say hey, hey, somebody is

23 drowning.  That's me.

24      MS. MCSHERRY:  I think you and several other Judges

25 in this District should be able to do that.

1          THE COURT:  Apparently the other cases don't have

2     quite the numbers that these two do.

3          MS. MCSHERRY:  That's true, but there are some high

4     numbers.  I believe in the Heartlocker case it's 5,000

5     defendants.

6          THE COURT:  That's a pretty high number.

7          MS. MCSHERRY:  That's a pretty high number.  You have

8     got over 7,000 so there you are, I believe.

9          So we have got a situation there it is going to be

10    extremely difficult for everybody involved.  There's no

11    judicial economy being accomplished here, we have got

12    fundamental unfairness to the defendants.  That's not

13    appropriate, it's not right.

14         Now related to this we have a problem with jurisdiction.

15    Based on the evidence that plaintiffs have themselves submitted

16    and based on our expert's analysis of it, it appears that the

17    Does are located all over the country.  Time Warner Cable has

18    just confirmed that with respect to their subscribers they are

19    not located in this jurisdiction.  So there is no appropriate

20    reason to bring those defendants here and to hear these cases

21    here.  And plaintiffs have suggested in their filings that

22    their principal theory of jurisdiction is to try to get around

23    this potential problem is that they contract with an ISP that

24    does business here.

25         Now again, I'm not sure that that agency even works for

1  Time Warner Cable but let's assume that it might work for some

2  other ISP.  Well, on that theory, essentially if you are using

3  the internet you are subject to universal jurisdiction.  I use

4  AT&T, so whether I think I have done something illegal via the

5  internet, I don't think that means I can be sued in Alaska or

6  Florida or somewhere else that I have no relationship to.

7          THE COURT:  Okay.

8          MS. MCSHERRY:  And the reason that it's important to

9  pay attention to this is really typical of joinder which is

10  that currently we have a situation where you might have a

11  defendant who is located in as far away as Hawaii and they're

12  being sued here in the District of Columbia.

13          Now they have to retain local counsel or they should

14  retain local counsel if they are really going to prosecute

15  their defense carefully because different Courts have different

16  procedures and they need to master those procedures.

17          That's going to again to make it more expensive for them

18  to defend their case and it helps tilt the playing field

19  against the defendants in a way that it's just not fair and it

20  doesn't comport with our basic principals of due process.

21          THE COURT:  So if you were a client here, I don't

22  even remember which movies we're talking about, so let's just

23  talk about the client.  You pronounced their name better than I

24  do.

25          MS. MCSHERRY:  I could be completely wrong.

1          THE COURT:  But you are doing a wonderful job of

2     pronouncing it and they're not here personally, right?  Right.

3     So it's okay.  We're not insulting them.

4          But you, they have a problem.  They have thousands of

5     people who have downloaded their copyrighted material and they

6     would like to in an efficient cost effective way stop that

7     behavior, how would they do that properly?

8          MS. MCSHERRY:  Well, the way they do it properly is

9     by following the same rules that everybody else has to follow.

10    And that means --

11         THE COURT:  No, no, but if you don't know who

12    somebody is, how do you know where and how to sue him or her?

13         MS. MCSHERRY:  Well, what they can do is what the

14    record companies ended up doing in the previous file sharing

15    cases which is that you take the information that you have and

16    you can use that to help you determine the appropriate

17    jurisdiction.  At the very least, we can solve that problem.

18    Now we're still going to have a problem with joinder, Your

19    Honor, because I think it's simply inefficient to sue thousands

20    of people at once.  Again, keep in mind there's no upper limit.

21         THE COURT:  I understand that and what I'm really

22    talking here is the practicalities of it from both --

23         MS. MCSHERRY:  Sure.

24         THE COURT:  -- both the individual defendants and the

25    allegedly injured plaintiff.  And for these purposes, we'll

 1  assume people have downloaded their movies and not -- in

 2  violating the copyright laws.  So how do they do that?

 3       Let's assume that they only ask for 28 names from Time

 4  Warner Cable and so they could do that in a month, and in a

 5  month Time Warner Cable gave them 28 names and they were at

 6  different places.  You have to go to different places for

 7  different lawsuits then.

 8            MS. MCSHERRY:  Yes, Your Honor.

 9            THE COURT:  If they gave them 28 names and they were

10  all here in the District of Columbia, could they sue all 28 in

11  a single lawsuit?

12            MS. MCSHERRY:  Well, that might help resolve the

13  jurisdictional issues but I think you would still have a

14  joinder problem.

15            THE COURT:  Well, that's why I am talking to you.

16            MS. MCSHERRY:  I'm afraid, Your Honor, I can't solve

17  that joinder problem for the plaintiffs.

18       There are some inefficiencies that are built into our

19  court system, but they are inefficiencies that are built in, in

20  order to assure fundamental fairness to defendants.  And those

21  are important interests as well.

22            THE COURT:  So would you then ultimately leave the

23  plaintiff in a situation where under your analysis they would

24  be literally filing 5,000 lawsuits here or assuming for this

25  purpose that they all live in D.C. which I know they don't, but

1    if there were 5,000 D.C. residents who engaged in this conduct,

2    you would say they have to file 5,000 lawsuits?

3             MS. MCSHERRY:  I think so, Your Honor, but I would

4    point out to you they already have filed 5,000 lawsuits.  We're

5    just pretending that they're not 5,000 lawsuits.

6             THE COURT:  No, I understand.  I'm just trying to get

7    to the bottom logic of the argument.

8             MS. MCSHERRY:  Of course.

9             THE COURT:  That to do it properly, even if they all

10   lived in D.C. so the venue and all of that, I have personal

11   jurisdiction over them, that was all taken care of, you would

12   say they still couldn't be joined because they're separate

13   persons with separate activities and the fact that each of them

14   engaged in something that is allegedly violating the copyright

15   rights with the plaintiff does not allow them to be joined?

16            MS. MCSHERRY:  That's correct.

17        Now it may be that over the course of discovery and in

18   any case they may find out that there is a sufficient basis for

19   joinder but it's their burden to establish it and they haven't.

20            THE COURT:  Okay.  Very clear anyway.

21            MS. MCSHERRY:  Thank you, Your Honor.

22            THE COURT:  Thank you.

23            MS. MCSHERRY:  If I may just address one last issue.

24            THE COURT:  Yes.

25            MS. MCSHERRY:  The First Amendment issue that is also

1   we believe quite important.  The plaintiff has suggested that

2   there isn't really a First Amendment problem here.  And I would

3   submit to you that that's simply incorrect under numerous

4   decisions.

5        Those cases are noted in our brief.

6        THE COURT:  I'm curious about this.  The First

7   Amendment protects speech and I know that speech is not a

8   limited term.  But is it speech to go and take something?  It's

9   speech if I send out a message and I say I found this cool site

10  where you can download movies quicker than you can imagine and

11  get them for free.  That might be speech.  It might be

12  insighting people to unlawful activity but it's speech.

13       But if I just go out and find a site and push a button

14  and take something, how is that my speech?

15       MS. MCSHERRY:  Well, Your Honor, Courts have

16  struggled with this very issue.

17       THE COURT:  That's nice to know.

18       MS. MCSHERRY:  You're not the first one.  In fact,

19  Courts in this District in the Verizon case struggled with this

20  very issue.  The conclusion has been that it's a thin speech

21  right.  But the right to speak anonymously is important enough

22  that we're going to protect it because you're communicating

23  your choices.

24       THE COURT:  But I'm more than happy to communicating

25  to my choices because of the movie that I chose to steal.  I

1  would have to work on that one a little bit but, okay.

2          MS. MCSHERRY:  Okay, Your Honor, thank you.

3          All we're asking to be clear, Your Honor, is we believe

4  at a minimum the Court should consider the procedures that were

5  set out in the Eastern District of Pennsylvania case.  We have

6  submitted that order to you and those are the kinds of

7  procedures that might help protect the rights of these

8  defendants.

9          THE COURT:  Thank you.  I really appreciate your

10  participation.

11          MS. MCSHERRY:  Thank you, Your Honor.

12          THE COURT:  Okay, who's going to talk first and what

13  are you going to talk about?

14          MR. DUNLAP:  Well, Your Honor, I figured that we

15  would go in reverse order since you just heard about joinder, I

16  thought I'd talk about joinder first.

17          THE COURT:  And you're Mr. Dunlap?

18          MR. DUNLAP:  Yes, Your Honor.

19          Just to start off, it's our belief, understanding that

20  the First Amendment issues and the personal jurisdiction issues

21  weren't before the Court today, but I will say that we feel the

22  Court hasn't struggled with the First Amendment issues.  If you

23  steal, if your speech is to determine what movie you're

24  stealing that's never protected.  The fact that you're

25  infringing on copyright I think there's a recent case in

1  California that talked about that.  We'd be happy to brief it,

2  Your Honor.

3       We don't think it's before the Court and we don't think

4  that this Court or any other Court has really struggled with

5  the issue of whether or not downloading copyright protected

6  material is free speech.

7       I agree that perhaps if you were to tell somebody that

8  there was a neat site to go to and they should go check it out,

9  as long as there wasn't infringing copyright materials, there's

10 a neat site for oh, you know, comments on the Constitution or

11 comments on how the Federal District Court of District of

12 Columbia operates, I think that's free speech, but I don't

13 think downloading movies that are copyright protected is free

14 speech.

15      With respect to the jurisdictional issue, we have not

16 entered into the discovery phase.  I don't think it's proper to

17 investigate personal jurisdiction until we have found out where

18 the defendants are.  I want to talk about the backdrop of

19 BitTorrent, Your Honor.  I think that will answer your next

20 question.

21      THE COURT:  No, no, I read your brief about

22 BitTorrent actually, and was fascinated with the technology

23 that gives you an argument that all of these people are

24 associated and related.

25      But before we get there what about the fact that Time

1  Warner Cable says well, wherever they are none of our

2  subscribers are in the District of Columbia, they say that.

3       And two, they say by looking at the information you do

4  have you would know that Time Warner Cable subscribers are in

5  Ohio, the very southern tip of Virginia, Texas and wherever

6  else he said.

7       MR. DUNLAP:  There are two pieces to that, Your

8  Honor.  I think the first piece is by looking at the

9  information we would know where they are.

10      There's a case in the Southern District of New York that

11  is very clear.  That looking at an IP address and figuring out

12  where that subscriber is jurisdictionally is guesswork.  In

13  fact, we took the EFF's technical advisor's brief of all the IP

14  addresses, and I think Your Honor saw this, of all of the IP

15  addresses he compared and said it's in this jurisdiction, it's

16  in this jurisdiction.

17      We subscribed to a different service, ran the same

18  search and by state, outside of the state that the EFF found,

19  38 percent of the ones we found were in a different state than

20  the EFF found.  So it's not a reliable service and the Southern

21  District of New York is clear that it is just guesswork.  So

22  that's that piece of it.

23      The second piece is it may be true that Time Warner

24  Cable doesn't have anybody that has signed a contract with them

25  that lives in the District or that lives in Virginia or that

1   lives in Maryland, but Time Warner may have someone who lives

2   in Ohio who hit a button and downloaded a swarm torrent, a

3   thousand pieces of a file from somebody in D.C., from somebody

4   in Virginia, from somebody in Maryland.  In fact, based on the

5   size of this, the sheer size of it, it lends itself to the more

6   likely than not standard that in fact, somebody in Ohio if it's

7   a Time Warner subscriber probably did download a piece of that

8   file from D.C.

9          It's interesting because BitTorrent is not a direct I'm

10   downloading it from your computer over here or I'm downloading

11   it from this server.  You are getting in a swarm so that each

12   computer, so that each person downloading a film no longer has

13   to wait on that computer speed and your computer speed of one

14   file, you are getting a thousand pieces at once you are

15   assembling on your computer.  At least that's my understanding.

16   Again, I'm a lay person.  But --

17          THE COURT:  Now come on, you are the one that is

18   suppose to know all about this.  You can't stand up and say I'm

19   a lay person.

20          MR. DUNLAP:  I read my expert's declarations and I

21   talk with them and I, you know, read as much as I can about it,

22   but that's my understanding of how torrents work.

23          THE COURT:  So let me pursue that a little bit.

24   That's kind of my understanding what I got from your brief too.

25          So let's assume that there is a Time Warner subscriber

1    in Ohio who downloaded some movie belonging to your client and

2    some one or more of the bits came from somebody in Washington,

3    D.C.

4        Why even if so would that expose the person in Ohio to a

5    lawsuit in Washington, D.C.?

6        MR. DUNLAP:  Let me also be clear on this, Your

7    Honor.  Since we can't determine where they are, right now we

8    have Doe defendants, that's all we know.  So we don't know

9    where these defendants are by looking at their IP addresses.

10   It is as the Southern District of New York case said guesswork.

11       But assuming we found the person was in Ohio, I assume

12   there would be a personal jurisdiction matter and that

13   defendant would have the right to assert that here.  We would

14   have to dismiss and go after them in Ohio, there's no question.

15       On the other hand, it's possible that that defendant in

16   Ohio has pcanywhere or gotomypc.com.  BitTorrent is a program

17   that you have to put on your computer.  It actually requires

18   some technical expertise, I tried doing it myself, some

19   technical expertise to put a BitTorrent file sharing software

20   onto your computer.

21       If you travel with a laptop to Washington D.C. for

22   business and you need to download a film while you are away,

23   just kind of like you would log into Direct TV and download a

24   Direct TV movie while you're away from your TV, you can do that

25   from Washington, D.C. using pcanywhere, gotomypc.  We don't

1  know.

2      The fact that it's possible a defendant very well could

3  have remoted into their computer, their home computer that is

4  fast and hooked up to a high speed line to initiate a

5  BitTorrent download in Ohio through a Time Warner account, but

6  we don't know until we find out who that defendant is, where

7  they are and the facts and circumstances of their individual

8  defense.  That's the crux of that kind of potential

9  jurisdictional issue.  Again, I don't think that we have

10 reached it yet.

11     I think the real issue here is whether or not -- I guess

12 the question you have raised, Your Honor, is the joinder

13 question.  I think this is kind of, I think that the EFF is

14 right.  I think it's part and parcel of the joinder question.

15 It helps us solve the joinder question, it shows the

16 relatedness of the parties.

17    The EFF cites a case, the BMG case which I thought was

18 interesting.  I don't know if Your Honor is familiar with the

19 BMG case.  But it's kind of the first case they cite in the

20 joinder section.

21    The BMG Music versus Does 1-230 says -- this is a quote

22 from the Judge's opinion -- each claim involves different

23 property, different facts and different defenses.  Rest of the

24 quote from the Court.  John Doe 104 for example is alleged to

25 have infringed nine works held by five plaintiffs.  John Doe

113 is to alleged to have infringed ten works owned by a

different sometimes overlapping group of plaintiffs with only

one copyright identical to John Doe 104.  John Doe 199

meanwhile is alleged to have infringed seven works none of the

same as John Doe 58.

    The Court concludes in other words, in addition to the

individual acts of infringement encompassing separate

transactions and occurrences the actual property at issue is

different for each defendant.

    Here we have one piece of property, we have one plaintiff,

and we have a different type of software.  We have a BitTorrent

software.  There are common questions of law and fact.  There

is a series of transactions or occurrences that are common to

the defendants at least from our view the way we have pled it

which all we have to do is meet Rule 8 A and the Twombly

standard.  All we have to do is give them notice pleading as to

what we think, and we have done that.

    We have said this is how BitTorrent works.  These are how

the transactions are related and this is why we believe we need

to find out who these people are first.  So I am not saying

that severance is wrong.  What I'm saying is that severance is

wrong until we know where the people are, who they are and what

their defenses are.

    So we ask at this time, Your Honor, that you would enter an

order essentially dismissing your own show cause order.

1    THE COURT:  Well, I will dismiss the show cause order

2  because you have certainly discharged that.

3    MR. DUNLAP:  Thank you.

4    THE COURT:  So that's going to be dismissed.  The

5  issue now whether or not you've actually shown cause may be a

6  different issue.

7    MR. DUNLAP:  I understand, Your Honor.

8    I will finally just add this because I think it was

9  interesting that in the BMG case in the footnote the Court

10 mentions that even in the event that these cases or say in

11 seven of these cases, even in the event that they're all filed

12 again I couldn't take these cases under our local Rule 40.1 is

13 the same as our local Rule here 40.5 C which talks about

14 related cases.  Under our local Rule here I firmly believe and

15 I think that anyone would agree that if we file these cases

16 individually one Judge is still going to get them all because

17 it's the same piece of property, same plaintiff, same

18 transactions, we're going to allege the same thing, it's a

19 BitTorrent network.

20    So I don't think that dismissing or severing these

21 defendants now before we know who they are, we're filing 5,000

22 Doe cases just ends up being a penalty, $350 per case penalty.

23 So it's a penalty on the clerks for having to deal with that

24 many cases because we don't know who they are.  We don't know

25 if we should file in Ohio or if we should file in Florida.  All

1  we know is that we have Doe defendants and we need to find out

2  where they are.

3          THE COURT:  So tell me do you think then on your

4  theories that you could make it 10,000 defendants?

5          MR. DUNLAP:  In one case.  I mean, administratively,

6  Your Honor, I don't see why we couldn't.  It's the same as long

7  as it's, you know, one piece of report it's one plaintiff and

8  they're sharing the file.  These files aren't, when we look at

9  these BitTorrent files, it's not 10,000 files.  It ends up

10  being 10,000 files but it starts with one burned file and it

11  gets shared and shared and shared.  It's not 10,000 people

12  downloading or taking a disk from Red Box and reburning it.

13  It's one file.  So we are seeing the exact same file name over

14  and over again.  So we know it's bouncing from person to person

15  to person.  Theoretically, yeah, I think it's possible.

16          THE COURT:  Okay.  Thank you.

17          MR. DUNLAP:  Thank you, Your Honor.

18       Mr. Kurtz is going to argue the Time Warner piece.

19          MR. KURTZ:  Good afternoon, Your Honor.

20          THE COURT:  Good afternoon, sir.

21          MR. KURTZ:  I'm not going to rehash too much of the

22  briefs.  I think you have got more than enough briefing than

23  you probably could even hope for in these couple of issues.

24          THE COURT:  But I read them all very well.

25          MR. KURTZ:  I'm sure you did, Your Honor.

1        Just a couple of points brought up by Time Warner in the

2  hearing today.  One was the supposed agreement between counsel.

3  They keep arguing that it somehow applied to future cases

4  without seemingly any limitation meaning that somehow we would

5  bind clients we didn't even have yet or cases we haven't even

6  filed yet.  Cases that we have filed and hadn't gotten

7  discovery orders on yet.

8        THE COURT:  But they have the same practical problem

9  whether you're filing one case against 5,000 people, 5,000

10  cases against one person each, one client representation or 15

11  clients.  They still can only process so much at a time.

12        So what would you have them do?  I mean, practically,

13  putting aside the legal argument for the moment, how would you

14  have them respond?

15        MR. KURTZ:  Well, and I agree, Your Honor.

16        And part of that is in the papers wherein we see that we

17  have been trying to work with them in an arrangement.

18  Obviously, we feel on our side that we have been trying to

19  accommodate, trying to do everything we should do under Rule

20  45, but now especially at this point, we are getting varied

21  stories and no specific proof, evidence or substantiation on

22  what they can do.

23        As we have shown they keep talking about only being able

24  to do 28 a month.  Then later on after they filed the motions

25  to quash and we continue to try and work with them they say

1   they can do 45 a month.

2       And in conjunction with the motion they filed this

3   declaration that gives us no real insight into what it actually

4   takes to look up an IP address and do the due diligence on

5   their part how long it takes, who does it.  All we have is

6   basically the average number of lookups they get in a year or a

7   month, the people's salaries who work on those, and their math

8   then dividing those numbers and saying how much it cost them

9   per look up.  It doesn't tell us their capability.  They say

10  that's the amount of lookups they receive and consequently,

11  obviously that's the amount they do.  But they never said they

12  could do more.  If so, they just seem to kind of dance around

13  the issue and that's, you know, one of our --

14      THE COURT:  The only way that they could come close

15  to doing a hundred a month for you would be to hire some other

16  people.

17      Now do you think that that's, can you legitimately

18  demand that from an uninvolved third party?

19      MR. KURTZ:  Your Honor, I know in discussing this

20  with them and touching briefly on the cost issue, we've never

21  been opposed to reimbursing Time Warner for, you know,

22  reasonable costs.

23      One issue we have had that came up in the motion is

24  possibly advancing costs.  That's not something we agreed with.

25  But we've never been opposed to reimbursing them for costs.

1          And in discussing this issue I believe we have discussed

2    if they were to hire a person that were to work even solely on

3    our requests we would reimburse them for that person.  Thereby

4    they would obviously not incur any additional costs out of

5    their pocket if we're basically paying for them.  Obviously

6    back and forth we've had some -- that has not obviously worked

7    out.

8          THE COURT:  Doesn't it take, as I understood it,

9    there are two physical locations where work must be done to

10   identify some, the real name and address associated with one of

11   these internet protocol things.  So it would really take two

12   people.

13         MR. KURTZ:  Well again, Your Honor, the only thing

14   we've seen in this declaration and, you know, inferred through

15   the cost study is that it's a quote unquote multi step process

16   I believe they say that does at a central location and at a

17   local location.  Again, we don't know exactly what the

18   centralized person does.  We don't know exactly what the local

19   person does.

20         THE COURT:  Maybe they don't want you to know that

21   much about their business.

22         MR. KURTZ:  And I understand.

23         THE COURT:  They're only a third party, they don't

24   have to lay out their entire business structure for you.

25         MR. KURTZ:  And I understand that to an extent, Your

1  Honor, but their burden on a motion to quash is they have to

2  provide legitimate proof of the actual undue burden or

3  significant expense that would be incurred.

4        THE COURT:  Well, I think they've actually met that.

5  I think they've met that burden.  I mean, they may not have met

6  it with the specificity that if you were sitting where I am you

7  would require.

8        MR. KURTZ:  I appreciate that.

9        THE COURT:  Yes, but they've met it sufficiently for

10  my purposes that the requests are sort of overwhelming.  I have

11  to say that I looked at the request and I thought oh, my Lord.

12  Actually, I thought something more colorful than that, but we

13  won't say what.  I think it is overwhelming.

14     So I'm trying to figure out not only a legal answer here

15  but the practical answer.  Your client has alleged that

16  thousands of people have violated its copyright rights by

17  stealing its intellectual property is which you have alleged.

18        MR. KURTZ:  Sure.

19        THE COURT:  And I also understand from your papers I

20  believe that you really don't want to go after all of these

21  presumably mostly young people for scads of money, you want to

22  get them to stop.  So you want them to say okay, okay, we won't

23  do it again and we'll pay you a little money.

24     Isn't that what you want?

25        MR. KURTZ:  That is definitely one of the goals of

1    the litigation, Your Honor.

2         But just briefly even though the cases are against

3    thousands; obviously they're not all against Time Warner and I

4    understand your arguments in a vacuum, but when we look at some

5    of the other ISPs we have been dealing with now over 20 ISPs

6    that we have dealt with in these cases and similar cases and

7    one example I submitted to the Court is Verizon another which I

8    will submit somewhat of an equal size as Time Warner, maybe not

9    quite as big but when we have dealt with these other ISPs we

10   have either been able to work out arrangements where they have

11   not been nearly as quote unquote overwhelmed as Time Warner.

12        Verizon for example, one of the cases we gave them was

13   over 300 IP lookups just for them and within the same time

14   frame, within a month.  And they were able to turn that around

15   within that months time.  We reimbursed them for their costs.

16   It turned out to be less than $15 a search.  So that's just one

17   example and again, there's more than 20 other examples that are

18   similar.

19        When I look at Time Warner and they say they can only do

20   20 a month as compared to over 300 for a seemingly a smaller

21   internet provider and it costs them $45 a month as opposed to

22   $15 a month.  It's just not as similar and something, some

23   doubt has come into our minds of, you know, what exactly are

24   their burdens, what exactly would their increased burdens be

25   and truly what are their costs because I appreciate they don't

1  want to give out their business model even though we are by no

2  means a competitor.

3           THE COURT:  No, but you understand.

4           MR. KURTZ:  Sure.  But they're, you know, there are

5  ways to accomplish I think our goals together.

6           THE COURT:  Well, let me ask you this.  Maybe this is

7  actually a question I should have asked Mr. Dunlap, but you can

8  answer it, I'm sure.

9        Time Warner represents to me today that they have no

10  subscribers in the District of Columbia.  So couldn't I

11  legitimately conclude that my authorization of the subpoena to

12  Time Warner was improvident and that I should quash the

13  subpoena from this Court anyway because I don't have any

14  jurisdiction?

15          MR. KURTZ:  Well, as Mr. Dunlap stated, just because

16  Time Warner might not have a signed contract within the

17  District of Columbia with a certain subscriber does not mean at

18  this point we can tell that you, Your Honor, do not have

19  personal jurisdiction over any one of these defendants.

20        As stated by Mr. Dunlap there's a host of possibilities

21  that exist.  Frankly, we don't know at this point because we

22  have not identified the subscribers.  It could be an Ohio

23  defendant signed up with Time Warner who specifically joined a

24  swarm with multiple D.C. residents and purposely availed

25  themselves of D.C. jurisdiction.  It could be a, somebody that

1  lives in Ohio but does business every month in D.C. and comes

2  here and works on their laptop and while they're doing that in

3  D.C. they're able to use their Time Warner account and plug

4  into their BitTorrent service and download a movie.

5        You know, with the joinder issue, with the personal

6  jurisdiction, I think one of the overarching arguments

7  obviously from our end is that it's just too premature to tell.

8  A lot of defendants, some defendants who might not even have,

9  you might not even have jurisdiction over technically might

10 waive that.  If they're sued in D.C. they could possibly even

11 waive that.  I mean, we just don't know.

12        THE COURT:  They could waive that.  I have a much

13 greater concern that they would inadvertently waive it because

14 they didn't know that it was even an issue because they're not

15 lawyers.

16        MR. KURTZ:  Well, Your Honor, EFF is here now to

17 represent --

18        THE COURT:  Wait, wait, I'm sorry.  I don't have a

19 good voice because I had neck surgery and I lost half of my

20 vocal cords.  They don't operate so I don't have a very good

21 voice.  So I know that I'm sometimes hard to hear and easy to

22 talk over, so you have to bear with me in your eager advocacy.

23        Where was I going?  I was going to the people who don't

24 know that there's an issue of personal jurisdiction.  And I did

25 not know before this dust up about how Courts had handled

1  notice to alleged downloaders in music cases, but I think that

2  giving notice to people that don't, you know, that they might

3  have an objection to jurisdiction, if we had done that, that

4  would have been very comforting to some of the people whose

5  names were subpoenaed, some of whom are quite upset that your

6  client has asked for their names.

7       So I'm feeling a little bit like I was terribly naive to

8  be perfectly frank when you filed this and I just blithely

9  signed the subpoena and headed you off into the wilderness.

10 And I think I did that wrong.

11      I think we need to rethink how you're going to go about

12 this.  I don't want to stand in the way of your clients

13 defending its legitimate rights, but I do have to be more

14 careful than I was in watching out for the defendants' rights.

15      It's clear to me that not all the named people are

16 actually setting at the computer downloading.  Somebody

17 probably did at their computer but not all of the persons whose

18 names and addresses are come rolling in.  So I have to be more

19 careful about that.

20      So what do you propose?  What's happening with your

21 other ISPs?  Are they all just turning names over to you, no

22 harm, no foul?

23      MR. KURTZ:  Just a quick point on that, Your Honor.

24 I believe in this case the orders that you did sign and the

25 orders in the other cases do require at least pursuant to the

1  order that the ISPs do give some kind of notice to the

2  subscribers.

3        THE COURT:  It's only notice though as I recall that

4  their addresses were sought, not notice that they could object

5  about whether there was personal jurisdiction and stuff like

6  that.

7        MR. KURTZ:  And Your Honor, frankly, I have not seen

8  obviously all of the notices going out from the ISPs, but from

9  what I hear obviously the notices are varied and the ISPs it

10  seems have a different understanding of even what their

11  responsibilities under other laws may be to give notice to

12  their subscribers.

13      As the EFF mentioned, the Court in the Eastern District

14  of Pennsylvania took that into consideration in fashioning a

15  more specific order which it sounds like you're considering in

16  which it lays out these issues that the subscriber should be

17  noticed about.

18      I can only reiterate --

19        THE COURT:  Wait, wait.  Are we too far down the path

20  for that to happen in these two cases because you've already

21  served all of your subpoenas?

22        MR. KURTZ:  We have served the subpoenas but

23  obviously, we have not gotten production on all of the

24  subpoenas, Time Warner being one of them.

25        THE COURT:  Well, that's okay, Time Warner at least

1  stood up and filed a motion to quash.

2       MR. KURTZ:  Sure.

3       THE COURT:  The question is, is everybody else

4  responding or are they just sitting on their hands neither

5  filing motions nor responding?

6       MR. KURTZ:  To be honest with you, Your Honor, some

7  subpoenas have already been responded to by a certain number of

8  internet service providers.

9      In these two cases I can tell you that some of the ISPs

10  that we have been dealing with we have agreed to postpone any

11  production pending basically this hearing.

12       THE COURT:  Oh!

13       MR. KURTZ:  So I can represent to you that by no

14  means have all of the subpoenas we have served been responded

15  to and we have not served subpoenas on all of the ISPs that we

16  potentially could.

17       THE COURT:  Well then, before you serve any more

18  subpoenas on anybody, I would like you to file with me a

19  proposed Rule order or something that would give notice and

20  what the notice might say to the end user that the ISP should

21  inform its end users.

22      Do ISPs inform their end users by e-mail?

23       MR. DUNLAP:  By letter.

24       THE COURT:  So you spend the 45 cents or whatever

25  mail costs these days?

1        MR. KURTZ:  Some ISPs actually do FedEx certified

2   mail.  Some kind of confirmation that the correspondence

3   actually gets to the customer.

4        THE COURT:  Wow!  And do they then bill you for that?

5        MR. KURTZ:  Yes, ma'am.

6        THE COURT:  Okay.

7        MR. KURTZ:  And just one last quick point.

8        There was an issue that Time Warner brought up in this,

9   in these two cases and their characterization is that we have

10  repeatedly sent out subpoenas that were overly broad and did

11  not comply with the orders because they included more IP

12  addresses than were stated in the complaint even though we

13  filed a first amended complaint.

14       The day after Time Warner filed their reply in these

15  cases it just so happened that one of your learned Judges next

16  door in a similar case ruled on a motion to quash asserting

17  this same sort of argument and denied the argument basically

18  and basically saying that quashing the subpoena merely because

19  it was served prior to the filing of the amended complaint

20  would be an exercise and pointless formalism and that is Judge

21  Kolar Cottaley.

22       THE COURT:  Kollar-Kotelly.

23       MR. KURTZ:  Oh, I was not even close.

24  Kollar-Kotelly.

25       THE COURT:  Could you pronounce your client's name?

1          MR. KURTZ:  Achte Nuente Kino Boll ...

2          THE COURT:  Oh, boy.

3          MR. KURTZ:  And West Bay One, Your Honor.

4          THE COURT:  Okay, thank you.

5      Could Time Warner come back and talk to me about $45 and

6  28 a month.

7          MR. MALTAS:  Yes.  Couple of points, Your Honor.

8      First of all, as you know we did submit an affidavit

9  that is evidence of our burdens.  The one thing that they've

10 commented is well, Verizon has produced much more.

11     Verizon is larger than all cable operators combined.  It

12 is dramatically larger.  I think all it really establishes is

13 that different companies may be differently situated.  The way

14 that our company is set up and it is in our affidavit, we have

15 a decentralized structure.  There are 15 regional offices,

16 there's also a corporate headquarters.

17     The process of looking up an IP address involves some

18 activities at both, both at the central office and in each

19 individual regional office where the subscriber is located.  If

20 you think about the significance of making sure that these

21 lookups are really accurate as I say, you know, the people

22 whose names we turn over may get their doors knocked down by

23 law enforcement in a law enforcement request.  They may get

24 served with a lawsuit.  It is very important that we get the

25 lookups accurate and get them correct.

1        So the process is a multi step process of doing it at

2    the corporate office and at each regional office.  So it may

3    well be that different ISPs have a different physical structure

4    and the burdens on them may be different.  The issue before the

5    Court here is the burdens on Time Warner Cable, and it is in

6    fact the case that this is what our capabilities are.

7        We have described we have an internal team that handles

8    this.  They have been at capacity and that's described in the,

9    in the affidavit.  In fact, have already brought on a temporary

10   employee to assist the team even just for the existing law

11   enforcement requests.

12       So, you know, although they've raised the issue of

13   paying for another employee, it's really not feasible because

14   first of all, it would have to be something like 15 or 20

15   employees at the various regional offices to do all of this

16   work.

17       Second of all, if you just compare the numbers of our

18   capabilities, you know, currently we can handle about 28 IP

19   addresses for all of their cases, they want 1400 plus.  There

20   will be more cases coming.  We are talking about an awful lot

21   of employees.  It just simply is beyond our capacity to be able

22   to do anything like this.

23       As I described, there is no case law that I'm aware of

24   that requires us to go out and hire more people to handle this.

25   It's unfortunate for the fact that they want to prosecute a

1   case against 5,000 people, but this is what our capacity is,

2   this is what our capabilities are and we are a third party and

3   Rule 45 goes out of its way to say that we're not, the Courts

4   are suppose to protect third parties from having to incur these

5   types of burdens to bring on additional employees.

6        The cost I imagine are different for each ISP.  I

7   imagine they span a range.  These are the costs that Time

8   Warner Cable has to bear to produce ISPs and we have laid this

9   out in an affidavit and provided the evidence that these are

10  the capabilities of Time Warner Cable and this is what the

11  costs are.

12       THE COURT:  In terms of 28 a month.  You have said

13  three things, 28 a month, 45 a month, 35 a month.  Something

14  like that.

15       What's a real number?

16       MR. MALTAS:  Two things.  So what we said was a

17  reasonable burden that would keep the burdens to a reasonable

18  level is 28.

19       We filed our motion, we have been seeking to, you know,

20  attempts to resolve this without judicial intervention.  It's

21  always a goal to resolve things just among the parties.  We did

22  propose as a mode of compromise that we would go as high as 45.

23  We clarified this in, at my reply brief I put it as an exhibit.

24       The statement says we can view up to 45, but I want to

25  make clear that that would be quite a substantial burden on

1  Time Warner Cable.  So we have been willing as a mode of

2  compromise to try to resolve this that we could go as high as

3  45, but it is clear that that in itself would in fact cause a

4  burden on Time Warner Cable.  We offered that as a compromise

5  for resolution, but that doesn't minimize the burden.

6       For keeping it at a reasonable level 28 IP addresses a

7  month is what we can reasonably handle.

8            THE COURT:  All right.

9            MR. MALTAS:  One final point if I might, Your Honor.

10      Just on the question of agreements, Mr. Kurtz said that

11 the agreement cannot apply to the two cases before the Courts.

12 At the exhibit to our motion the e-mail from plaintiff's

13 counsel says that this agreement applies we have just filed two

14 more cases.  That is in their statement so we certainly took

15 that as applying to these cases because they told us it did.

16      So for that reason we ask the Court to quash the

17 subpoenas or in the alternative to keep it to a minimum level

18 for us.

19      Thank you.

20            THE COURT:  All right.

21      What I'm going to do is recognize, there are a number of

22 things to recognize.  One is that we don't know who the John

23 Does are, but many of them if not most are not going to be in

24 the jurisdiction of this Court.  And when that becomes known,

25 those persons would have to be dismissed from this lawsuit.

1   And if the plaintiff wishes to sue them elsewhere plaintiff

2   can, but cannot sue them here unless they're in this Court's

3   jurisdiction.

4        Number two, the burden on Time Warner to comply with the

5   subpoena as issued by the plaintiff has been demonstrated to

6   the Court's satisfaction and so at a minimum, we have to amend

7   the terms of the subpoena if not quash.

8        Number three, the plaintiff has a very legitimate

9   interest in protecting its copyrighted materials, and although

10  the litigation is at this point somewhat clumsy, it cannot be

11  said that it's frivolous or anything.  And so the Court has to

12  also take into account protecting the legal rights of the

13  plaintiff, plaintiffs.

14       Assuming for present purposes that these really

15  represent 5,000 or 6,000 different lawsuits as was described by

16  Ms. McSherry, we would and this Court probably put them all

17  together for purpose of discovery anyway just because you don't

18  want 15 Judges in this courthouse tearing their hair out at the

19  same time, you might as well just have one Judge go bald.

20       So the cases that are split up among different Judges

21  will stay split up.  I'm just responding to the argument that

22  these are really separate lawsuits.

23       When I balance all of those things out, the interest of

24  the John Does, the interest of the plaintiff, the interest of

25  the third party ISPs, I think you should modify the subpoena to

1    limit production by Time Warner to 28 names a month, but not

2    quash the subpoena because we don't know who the end users are

3    and even though I trust the representation that none of those

4    persons is in the District of Columbia as a residence, we don't

5    know where their actions were taken that were offensive to the

6    copyright interest of the plaintiff.  So for the moment I'm not

7    going to totally quash the subpoena.

8          On the other hand, I want counsel for the plaintiffs to

9    propose to me the terminology of a notice to all John Does that

10   the ISPs could send that say we have been asked for your name

11   and address for this purpose and if you want to object, you do

12   it in this way.  And you have a right to object if you want to.

13         I think we need to be sure that any further production

14   of names and addresses that are sought by subpoena are done in

15   a little less perhaps little less efficient but more cognizant

16   way for protecting the rights of the John Does, so I want this

17   to be a balanced process whereby the rights of the John Does

18   and the rights of the plaintiff who has its own legal damages

19   are both protected.

20         Is there anything else I need to address?

21         Yes, ma'am.  Could you just come to the microphone?  We

22   get a much better record that way.

23         MS. MCSHERRY:  Your Honor, we would request the

24   opportunity to look at that proposed order and weigh in on it.

25         THE COURT:  You can because I'm going to let you do

1   that.

2         MR. DUNLAP:  Judge, I already agreed to talk to her.

3   We agreed to talk before the hearing.

4         MS. MCSHERRY:  Thank you, Your Honor.

5         MR. MALTAS:  Just one point, Your Honor.

6         THE COURT:  Yes, sir.

7         MR. MALTAS:  From an ISP standpoint before we can

8   look up IP addresses and inform our subscribers, we need to

9   have a court order.

10      Now they filed an amended complaint that post dates this

11  Court's order so before we can proceed, we would ask that this

12  be resolved through some sort of formal court order.

13        THE COURT:  Yes.  I don't actually want you to

14  proceed yet.  Because I want to work out with essentially all

15  of you whatever that notice will be, that will go along with

16  the subpoena, your notice -- not the subpoena -- your notice to

17  your subscribers.

18      Do you call them subscribers?

19        MR. MALTAS:  Subscribers of Time Warner Cable

20  services.  We will await a further order.

21        THE COURT:  Yes, you will await a further order.  So

22  for the moment you don't have to respond to the subpoena

23  because we don't have a notice for you to send to your

24  subscribers.

25        MR. MALTAS:  Thank you, Your Honor.

 1          THE COURT:  But I'm assuming that Mr. Dunlap and

 2  Mr. Kurtz will jump right on it.

 3          MR. DUNLAP:  Your Honor, we'll get you a notice

 4  before the end of the week which is tomorrow.

 5          THE COURT:  Wow!  Ms. McSherry, you got your work cut

 6  out for you too.

 7          MS. MCSHERRY:  Not if we're going to be weighing in

 8  on this.

 9          THE COURT:  All right.  Send it on and you can file

10  it on ECF if you want to do it that way or you can just send it

11  around until you reach agreement.

12      If for any reason you don't reach agreement, I can't

13  imagine why that would be, but if you don't reach agreement, I

14  am actually out of the jurisdiction next week.  I could be

15  reached not as readily as the week after, so if we need to, we

16  could convene by telephone conference call the week after next

17  to resolve any issues as to what that notice should say.

18          MR. DUNLAP:  Judge, I have one last question.

19      With respect to time Warner's costs.

20          THE COURT:  Yes.

21          MR. DUNLAP:  I was wondering if the Court is going to

22  enter an order.  Our primary issue is not necessarily the

23  amount of the cost but more to the point whether or not we have

24  to pay them in advance.  It's not required by Rule 45.  We have

25  been paying them all of the other ISPs, but that seems like

1   it's kind of an extra request.

2          THE COURT:  Did you want to address that?

3          MR. MALTAS:  Two things.  As to the cost issue if

4   they're under a court order that they will be paying cost

5   within say net 30 days, I think we can handle that.

6      The other issue is in terms of the notice to our

7   subscribers there are obviously First Amendment rights held by

8   the ISPs.  So to the extent that there's notice, it may be

9   appropriate for the plaintiffs to send notice, I mean ordering

10  us to submit certain language to our subscribers that we're not

11  a part of raises some concerns for me.  I understand there are

12  notices that need to be sent but they may be sent by the

13  plaintiff as opposed to by the ISP.

14         MR. DUNLAP:  Your Honor, it's my understanding that

15  is part of the Court order that they attach to their notice.

16         THE COURT:  That's what I thought.  You see, the

17  advantage is that they, some of your subscribers do not want

18  the plaintiffs to know their names and addresses.  And once

19  they have their names and addresses, then it's moot.

20         MR. MALTAS:  If it's from the Court, I think we can

21  live with that but it has, the question is, is it being

22  directed that Time Warner speak essentially?

23         THE COURT:  No, it's an order, it will be an order

24  from the Court.

25         You would be responding to an order from me to be sure

1  to notify your subscribers X.

2          MR. MALTAS:  Okay.  I think that will be just fine if

3  we could just see what the order says.

4          THE COURT:  You are going to have every right to

5  participate in the formulation of the order.

6          MR. MALTAS:  Okay, thank you.

7          THE COURT:  And it's really just a notice.  The order

8  is a separate thing.  It will order that this notice be sent to

9  all subscribers so they will be alerted to their equal rights.

10          MR. MALTAS:  If we can review and participate.

11          THE COURT:  And you can clearly review and

12  participate.  Again if it doesn't get cleared up happily among

13  you all, then we'll set up a telephone conference call.

14       So are you here in town everybody or not?

15          MS. MCSHERRY:  I'm in San Francisco, Your Honor, but

16  if we do it by phone.

17          THE COURT:  San Francisco isn't quite town, so okay.

18          MR. MALTAS:  Thank you, Your Honor.

19          THE COURT:  You are most welcome.  Thank you.

20          MS. MCSHERRY:  Thank you, Your Honor.

21          THE COURT:  Thank you everybody for coming.

22          MR. DUNLAP:  Thank you, Your Honor.

23          THE COURT:  Thank you.  It's nice to meet you.

24          MR. KURTZ:  You too.

25          (Hearing concluded @ 3:30 p.m.)

1                              CERTIFICATE

2          I certify that the foregoing is a true and correct

3  transcript, to the best of my ability, of the above pages, of

4  the stenographic notes provided to me by the United States

5  District Court, of the proceedings taken on the date and time

6  previously stated in the above matter.

7          I further certify that I am neither counsel for, related

8  to, nor employed by any of the parties to the action in which

9  this hearing was taken, and further that I am not financially

10 nor otherwise interested in the outcome of the action.

11

12

   _____          _____

13 /S/ Crystal M. Pilgrim, RPR          Date: July 26, 2010

14

15

16

17

18

19

20

21

22

23

24

25

$   Case 1:10-cv-00475-BMU   Document 26-1   Filed 02/22/10   Page 48/18 48/19 of 64   addressing [1]   12/20

**$**

$15 [2]   33/16 33/22
$350 [1]   27/22
$45 [2]   33/21 40/5

**–**

------------------------

1/10

**/**

/s [1]   50/13

**1**

1-2,000 [2]   1/9 3/3
1-230 [1]   25/21
1-4,577 [2]   1/6 3/3
10 [1]   4/17
10,000 [5]   10/24 28/4
 28/9 28/10 28/11
10-453 [2]   1/4 3/1
10-481 [2]   1/4 3/1
1000 [1]   1/22
104 [2]   25/24 26/3
113 [1]   26/1
1400 [2]   8/5 41/19
15 [4]   29/10 40/15 41/14
 44/18
1500 [2]   5/6 5/24
199 [2]   1/17 26/3

**2**

2,000 [3]   1/9 3/3 10/23
20 [5]   4/17 33/5 33/17
 33/20 41/14
20001 [1]   2/4
20004 [1]   1/23
2010 [2]   1/6 50/13
20175 [1]   1/18
230 [1]   25/21
26 [1]   50/13
28 [16]   4/25 6/5 8/4 8/10
 17/3 17/5 17/9 17/10
 29/24 40/6 41/18 42/12
 42/13 42/18 43/6 45/1
29 [1]   5/8
2:25 [1]   1/6

**3**

30 [2]   1/6 48/5
300 [2]   33/13 33/20
333 [1]   2/3
35 [1]   42/13
38 percent [1]   22/19
3:30 [1]   49/25

**4**

4,577 [2]   1/6 3/3
40.1 [1]   27/12
40.5 [1]   27/13
426 [1]   9/1
45 [12]   7/24 7/24 8/6
 29/20 30/1 38/24 42/3
 42/13 42/22 42/24 43/3
 47/24
450 [1]   11/25
4500 [1]   10/24
453 [2]   1/4 3/1
454 [1]   1/19
4704 [1]   2/4
481 [2]   1/4 3/1

5,000 [13]   4/8 4/18 14/4
 17/24 18/1 18/2 18/4 18/5
 27/21 29/9 29/9 42/1
 44/15
550 [1]   5/19
55 [1]   1/22
58 [1]   26/5

**6**

6,000 [1]   44/15

**7**

7,000 [1]   14/8

**8**

809 [2]   5/5 9/4

**9**

94110 [1]   1/20

**A**

ability [2]   8/4 50/3
able [9]   12/3 12/6 13/6
 13/25 29/23 33/10 33/14
 35/3 41/21
about [26]   10/6 10/7
 15/22 15/23 19/6 20/13
 20/15 20/16 21/1 21/18
 21/21 21/25 23/18 23/21
 27/13 29/23 31/21 35/25
 36/11 36/19 37/5 37/17
 40/5 40/20 41/18 41/20
above [2]   50/3 50/6
accommodate [1]   29/19
accomplish [1]   34/5
accomplished [3]   10/13
 12/11 14/11
according [1]   12/24
account [3]   25/5 35/3
 44/12
accurate [2]   40/21 40/25
ACHTE [6]   1/3 3/2 8/24
 10/23 11/24 40/1
ACHTE/NUENTE [5]   1/3 3/2
 8/24 10/23 11/24
action [3]   3/1 50/8 50/10
actions [1]   45/5
activities [6]   6/2 6/4
 6/5 6/9 18/13 40/18
activity [1]   19/12
acts [1]   26/7
actual [3]   13/7 26/8 32/2
actually [15]   9/8 9/22
 11/3 21/22 24/17 27/5
 30/3 32/4 32/12 34/7
 36/16 39/1 39/3 46/13
 47/14
add [1]   27/8
addition [3]   12/9 13/4
 26/6
additional [2]   31/4 42/5
address [20]   5/6 5/7 5/19
 5/24 6/5 6/25 8/4 8/5
 8/10 8/19 9/4 13/8 18/23
 22/11 30/4 31/10 40/17
 45/11 45/20 48/2
addresses [17]   5/1 7/13
 8/16 8/25 9/9 22/14 22/15
 24/9 36/18 37/4 39/12
 41/19 43/6 45/14 46/8

administratively [1]   28/5
advance [1]   47/24
advancing [1]   30/24
advantage [1]   48/17
adversely [1]   11/19
advisor's [1]   22/13
advocacy [1]   35/22
affidavit [5]   5/17 40/8
 40/14 41/9 42/9
afraid [1]   17/16
after [6]   24/14 29/24
 32/20 39/14 47/15 47/16
afternoon [3]   3/7 28/19
 28/20
again [14]   3/24 13/12
 14/25 15/17 16/20 23/16
 25/9 27/12 28/14 31/13
 31/17 32/23 33/17 49/12
against [9]   4/6 7/20 8/2
 15/19 29/9 29/10 33/2
 33/3 42/1
agency [1]   14/25
agree [3]   21/7 27/15
 29/15
agreed [4]   30/24 38/10
 46/2 46/3
agreement [11]   4/24 5/2
 5/4 5/8 5/12 29/2 43/11
 43/13 47/11 47/12 47/13
agreements [4]   5/10 5/13
 7/23 43/10
aided [1]   2/6
Alaska [1]   15/5
alerted [1]   49/9
Alexander [3]   1/21 3/5
 3/25
all [62]
allegations [1]   4/14
allege [1]   27/18
alleged [7]   10/15 25/24
 26/1 26/4 32/15 32/17
 36/1
allegedly [2]   16/25 18/14
alleging [1]   4/5
allow [1]   18/15
along [1]   46/15
already [8]   6/24 8/13
 10/5 18/4 37/20 38/7 41/9
 46/2
also [6]   10/20 18/25 24/6
 32/19 40/16 44/12
alter [1]   6/8
alternative [2]   5/13
 43/17
although [2]   41/12 44/9
always [1]   42/21
am [7]   10/6 17/15 26/20
 32/6 47/14 50/7 50/9
amend [1]   44/6
amended [3]   39/13 39/19
 46/10
Amendment [7]   10/8 18/25
 19/2 19/17 20/20 20/22
 48/7
Amici [4]   6/25 9/12 9/17
 10/1
Amicus [2]   1/19 3/5
among [3]   42/21 44/20
 49/12

**A**

amount [6]   4/11 6/21 12/2
 30/10 30/11 47/23
analysis [2]   14/16 17/23
Angel [1]   5/9
anonymous [1]   4/8
anonymously [1]   19/21
another [2]   33/7 41/13
answer [4]   21/19 32/14
 32/15 34/8
answers [1]   11/15
anticipate [1]   12/23
any [16]   4/9 6/7 7/6 7/20
 18/18 21/4 29/4 31/4
 34/13 34/19 38/10 38/17
 45/13 47/12 47/17 50/8
anybody [2]   22/24 38/18
anyone [1]   27/15
anything [4]   11/19 41/22
 44/11 45/20
anyway [3]   18/20 34/13
 44/17
Apparently [1]   14/1
APPEARANCES [2]   1/15 2/1
appears [1]   14/16
applied [2]   5/2 29/3
applies [1]   43/13
apply [1]   43/11
applying [1]   43/15
appreciate [4]   9/19 20/9
 32/8 33/25
appropriate [6]   8/20 12/5
 14/13 14/19 16/16 48/9
approximately [1]   5/19
are [119]
aren't [2]   11/18 28/8
argue [2]   9/13 28/18
arguing [1]   29/3
argument [6]   18/7 21/23
 29/13 39/17 39/17 44/21
arguments [2]   33/4 35/6
around [4]   14/22 30/12
 33/14 47/11
arrangement [1]   29/17
arrangements [1]   33/10
as [53]
aside [4]   6/1 6/2 11/11
 29/13
ask [8]   5/12 7/22 8/7
 17/3 26/24 34/6 43/16
 46/11
asked [3]   34/7 36/6 45/10
asking [3]   4/12 4/20 20/3
assembling [1]   23/15
assert [1]   24/13
asserting [1]   39/16
assist [1]   41/10
associated [2]   21/24
 31/10
assume [5]   15/1 17/1 17/3
 23/25 24/11
assuming [4]   17/24 24/11
 44/14 47/1
assure [1]   17/20
attach [1]   48/15
attempted [1]   4/22
attempts [1]   42/20
attention [1]   15/9
attorney [3]   11/8 11/12
 11/17

authorities [3]   5/10 6/12
 6/17
authorization [1]   34/11
availed [1]   34/24
Ave [1]   2/3
average [2]   5/18 30/6
await [1]   46/20 46/21
aware [4]   6/7 7/11 8/3
 41/23
away [4]   10/20 15/11
 24/22 24/24
awful [1]   41/20

**B**

back [2]   31/6 40/5
backdrop [1]   21/18
balance [1]   44/23
balanced [1]   45/17
bald [1]   44/19
balloon [1]   13/22
Bank [1]   5/9
based [7]   10/17 10/21
 10/24 12/6 14/15 14/16
 23/4
basic [1]   15/20
basically [5]   30/6 31/5
 38/11 39/17 39/18
basis [2]   7/2 18/18
BAY [3]   1/7 3/3 40/3
be [79]
bear [2]   35/22 42/8
because [42]   3/19 4/10
 5/11 5/14 7/6 7/12 7/22
 7/23 11/8 11/9 11/13
 11/17 12/3 12/7 12/14
 15/15 16/19 18/12 19/22
 19/25 23/9 27/2 27/8
 27/16 27/24 33/25 34/13
 34/15 34/21 35/13 35/14
 35/19 37/20 39/11 39/18
 41/13 43/15 44/17 45/2
 45/25 46/14 46/23
becomes [1]   43/24
been [23]   4/14 9/5 10/5
 10/18 10/21 19/20 29/17
 29/18 30/21 30/25 33/5
 33/10 33/11 36/4 38/7
 38/10 38/14 41/8 42/19
 43/1 44/5 45/10 47/25
before [16]   1/12 4/3 5/2
 13/14 20/21 21/3 21/25
 27/21 35/25 38/17 41/4
 43/11 46/3 46/7 46/11
 47/4
begin [1]   7/18
behalf [3]   9/17 9/25 10/2
behavior [1]   16/7
being [11]   6/15 10/13
 10/18 12/10 14/11 15/12
 27/22 28/10 29/23 37/24
 48/21
belief [1]   20/19
believe [17]   7/3 7/5 8/13
 9/1 10/2 11/4 13/16 14/4
 14/8 19/1 20/3 26/19
 27/14 31/1 31/16 32/20
 36/24
belonging [1]   24/1
best [1]   50/3
BETEILIGUNGS [2]   1/3 3/2
better [2]   15/23 45/22

between [1]   28/2
beyond [2]   8/22 41/21
big [1]   33/9
bill [1]   39/4
bind [1]   29/5
bit [3]   20/1 23/23 36/7
bits [1]   24/2
BitTorrent [11]   21/19
 21/22 23/9 24/16 24/19
 25/5 26/11 26/18 27/19
 28/9 35/4
blithely [1]   36/8
BMG [4]   25/17 25/19 25/21
 27/9
BOLL [3]   1/3 3/2 40/1
both [8]   3/18 6/22 8/17
 16/22 16/24 40/18 40/18
 45/19
bottom [1]   18/7
bouncing [1]   28/14
Box [1]   28/12
boy [1]   40/2
brief [7]   7/2 19/5 21/1
 21/21 22/13 23/24 42/23
briefing [1]   28/22
briefly [2]   30/20 33/2
briefs [2]   4/16 28/22
bring [2]   14/20 42/5
broad [1]   39/10
broadcast [1]   3/8
brought [4]   4/6 29/1 39/8
 41/9
built [2]   17/18 17/19
burden [10]   5/15 18/19
 32/1 32/2 32/5 42/17
 42/25 43/4 43/5 44/4
burdens [15]   4/2 4/24
 6/16 8/1 8/9 8/9 8/10 9/7
 33/24 33/24 40/9 41/4
 41/5 42/5 42/17
burned [1]   28/10
business [9]   6/2 6/4 6/8
 14/24 24/22 31/21 31/24
 34/1 35/1
button [2]   19/13 23/2

**C**

CA [2]   1/4 1/20
cable [25]   1/21 4/1 4/9
 4/21 4/22 5/15 7/15 8/10
 8/16 8/18 9/2 14/17 15/1
 17/4 17/5 22/1 22/4 22/24
 40/11 41/5 42/8 42/10
 43/1 43/4 46/19
Cable's [1]   7/5
California [1]   21/1
call [3]   46/18 47/16
 49/13
came [3]   12/25 24/2 30/23
can [39]   3/20 4/16 6/1
 6/5 8/11 9/13 12/1 12/16
 15/5 16/13 16/16 16/17
 19/10 19/10 23/21 24/24
 29/11 29/22 30/1 30/17
 33/19 34/7 34/18 37/18
 38/9 38/13 41/18 42/24
 43/7 44/2 45/25 46/7
 46/11 47/9 47/10 48/5
 48/20 49/10 49/11
can't [4]   17/16 23/18
 24/7 47/12

53

**C**

cannot [3]   43/11 44/2
  44/10
capabilities [4]   41/6
  41/18 42/2 42/10
capability [2]   8/3 30/9
capacity [3]   41/8 41/21
  42/1
care [2]   11/12 18/11
careful [2]   36/14 36/19
carefully [1]   15/15
Carolina [1]   7/16
case [33]   4/8 5/9 6/8
  6/11 6/18 6/22 7/6 7/25
  8/24 10/23 11/12 12/24
  14/4 15/18 18/18 19/19
  20/5 20/25 22/10 24/10
  25/17 25/17 25/19 25/19
  27/9 27/22 28/5 29/9
  36/24 39/16 41/6 41/23
  42/1
cases [50]   4/3 4/5 4/10
  4/14 4/16 4/17 5/2 5/2
  6/7 6/10 8/1 10/3 10/13
  11/13 11/23 11/24 12/3
  12/15 13/4 14/1 14/20
  16/15 19/5 27/10 27/11
  27/12 27/14 27/15 27/22
  27/24 29/3 29/5 29/6
  29/10 33/2 33/6 33/6
  33/12 36/1 36/25 37/20
  38/9 39/9 39/15 41/19
  41/20 43/11 43/14 43/15
  44/20
cause [4]   26/25 27/1 27/5
  43/3
central [2]   31/16 40/18
centralized [1]   31/18
cents [1]   38/24
certain [3]   34/17 38/7
  48/10
certainly [3]   7/19 27/2
  43/14
CERTIFICATE [1]   50/1
certified [1]   39/1
certify [2]   50/2 50/7
change [1]   6/9
characterization [1]   39/9
check [1]   21/8
child [2]   5/22 13/7
choices [2]   19/23 19/25
chose [1]   19/25
circumstances [6]   10/16
  11/5 12/15 13/2 13/11
  25/7
cite [3]   5/9 6/10 25/19
cited [1]   4/16
cites [1]   25/17
civil [2]   3/1 6/9
claim [1]   25/22
clarified [1]   42/23
clarify [1]   7/1
clear [12]   6/17 7/6 7/18
  7/19 18/20 20/3 22/11
  22/21 24/6 36/15 42/25
  43/3
cleared [1]   49/12
clearly [1]   49/11
CLERK [1]   3/1
clerks [1]   27/23

client [8]   4/9 11/10
  12/21 15/25 24/1 29/10
  32/15 36/6
client's [1]   39/25
clients [3]   29/5 29/11
  36/12
close [2]   30/14 39/23
closest [2]   3/21 7/9
clumsy [1]   44/10
CO [2]   1/3 3/2
cognizant [1]   45/15
COLLYER [1]   1/12
colorful [1]   32/12
COLUMBIA [11]   1/1 2/3 7/8
  7/17 15/12 17/10 21/12
  22/2 34/10 34/17 45/4
combined [1]   40/11
come [6]   23/17 30/14
  33/23 36/18 40/5 45/21
comes [1]   35/1
comforting [1]   36/4
coming [2]   41/20 49/21
commented [1]   40/10
comments [2]   21/10 21/11
common [2]   26/12 26/13
communicating [2]   19/22
  19/24
companies [2]   16/14 40/13
company [1]   40/14
compare [1]   41/17
compared [2]   22/15 33/20
competitor [1]   34/7
complaint [5]   8/25 39/12
  39/13 39/19 46/10
completely [1]   15/25
compliance [1]   5/16
comply [2]   39/11 44/4
comport [1]   15/20
compromise [3]   42/22 43/2
  43/4
computer [12]   2/6 23/10
  23/12 23/13 23/13 23/15
  24/17 24/20 25/3 25/3
  36/16 36/17
computer-aided [1]   2/6
concern [1]   35/13
concerns [1]   48/11
conclude [1]   34/11
concluded [1]   49/25
concludes [1]   26/6
conclusion [1]   19/20
conduct [1]   18/1
conference [2]   47/16
  49/13
confirmation [1]   39/2
confirmed [1]   14/18
confused [2]   3/19 3/23
confusion [1]   11/25
conjunction [1]   30/2
consequently [1]   30/10
consider [1]   20/4
consideration [1]   37/14
considering [1]   37/15
Constitution [2]   2/3
  21/10
contemplate [1]   8/13
continue [2]   6/4 29/25
continued [1]   2/1
contract [3]   14/23 22/24
  34/16
contrary [1]   8/6

convene [1]   47/16
cool [1]   53/16/53
copyright [10]   8/1 17/2
  18/14 20/25 21/5 21/9
  21/13 26/3 32/16 45/6
copyrighted [4]   4/6 4/15
  16/5 44/9
cords [1]   35/20
corner [1]   7/10
corporate [2]   40/16 41/2
correct [3]   18/16 40/25
  50/2
correspondence [1]   39/2
corresponding [1]   9/1
CORYNNE [3]   1/19 3/5 9/16
cost [9]   8/18 16/6 30/8
  30/20 31/15 42/6 47/23
  48/3 48/4
costs [15]   8/12 8/14 8/19
  8/20 30/22 30/24 30/25
  31/4 33/15 33/21 33/25
  38/25 42/7 42/11 47/19
Cottaley [1]   39/21
could [26]   7/3 10/22
  10/24 13/11 15/25 17/4
  17/10 25/2 28/4 28/23
  30/12 30/14 34/22 34/25
  35/10 35/12 37/4 38/16
  39/25 40/5 43/2 45/10
  45/21 47/14 47/16 49/3
couldn't [4]   18/12 27/12
  28/6 34/10
counsel [6]   15/13 15/14
  29/2 43/13 45/8 50/7
country [1]   14/17
couple [4]   6/12 28/23
  29/1 40/7
course [2]   18/8 18/17
court [48]   1/1 2/2 2/2
  4/4 4/12 4/20 5/3 5/12
  5/14 6/19 7/18 7/22 8/7
  8/8 8/21 9/5 9/7 9/8
  10/18 12/20 12/25 17/19
  20/4 20/21 20/22 21/3
  26/6 27/9 33/7 34/13
  37/13 41/5 43/16 43/24
  44/11 44/16 46/9 46/12
  47/21 48/4 48/15 48/20
  48/24 50/5
Court's [5]   8/13 8/23
  44/2 44/6 46/11
courthouse [1]   44/18
courts [8]   5/10 6/14
  15/15 19/15 19/19 35/25
  42/3 43/11
creates [1]   11/22
credit [2]   13/17 13/19
crux [1]   25/8
Crystal [2]   2/2 50/13
curious [1]   19/6
current [1]   6/4
currently [3]   10/14 15/10
  41/18
customer [1]   39/3
Cusumano [1]   6/11
cut [1]   47/5

**D**

D.C [15]   1/5 17/25 18/1
  18/10 23/3 23/8 24/3 24/5

**D.C... [7]   24/21 24/25
34/24 34/25 35/1 35/3
35/10
damages [1]   45/18
dance [1]   30/12
date [2]   50/5 50/13
dates [1]   46/10
day [1]   39/14
days [2]   38/25 48/5
DC [2]   1/23 2/4
deal [1]   27/23
dealing [2]   33/5 38/10
dealt [2]   33/6 33/9
decentralized [1]   40/15
decision [1]   12/6
decisions [1]   19/4
declaration [2]   30/3
31/14
declarations [1]   23/20
declines [1]   8/7
defend [5]   11/3 11/21
12/3 12/8 15/18
defendant [9]   11/3 11/20
15/11 24/13 24/15 25/2
25/6 26/9 34/23
defendants [36]   1/9 3/4
4/7 4/8 4/17 4/18 8/2
10/14 10/18 10/22 11/1
11/17 11/25 12/1 12/5
12/16 12/17 12/18 13/12
14/5 14/12 14/20 15/19
16/24 17/20 20/8 21/18
24/8 24/9 26/14 27/21
28/1 28/4 34/19 35/8 35/8
defendants' [1]   36/14
defending [1]   36/13
defense [3]   13/1 15/15
25/8
defenses [6]   10/16 11/4
12/16 12/22 25/23 26/23
definitely [1]   32/25
demand [1]   30/18
demonstrated [1]   44/5
denied [1]   39/17
depending [1]   13/2
DEPUTY [1]   3/1
described [6]   5/16 7/12
41/7 41/8 41/23 44/15
determine [3]   16/16 20/23
24/7
devote [1]   6/2
did [12]   13/7 23/7 28/25
35/24 36/10 36/17 36/24
39/10 40/8 42/21 43/15
48/2
didn't [2]   29/5 35/14
different [25]   10/16
10/16 10/17 15/15 15/15
17/6 17/6 17/7 22/17
22/19 25/22 25/23 25/23
26/2 26/9 26/11 27/6
37/10 40/13 41/3 41/3
41/4 42/6 44/15 44/20
differently [1]   40/13
difficult [2]   12/21 14/10
diligence [1]   30/4
direct [4]   7/13 23/9
24/23 24/24
directed [1]   48/22**

discharged [1]   27/2
Discovery [12]   5/11 6/10
7/3 8/22 9/3 9/5 9/7
11/14 18/17 21/16 29/7
44/17
discussed [1]   31/1
discussing [2]   30/19 31/1
disk [1]   28/12
dismiss [4]   7/4 7/20
24/14 27/1
dismissed [2]   27/4 43/25
dismissing [2]   26/25
27/20
disputes [1]   6/16
district [27]   1/1 1/1
1/13 2/2 2/3 4/5 6/11 7/8
7/16 12/25 13/25 15/12
17/10 19/19 20/5 21/11
21/11 22/2 22/10 22/21
22/25 24/10 34/10 34/17
37/13 45/4 50/5
dividing [1]   30/8
do [49]   5/9 9/25 11/18
13/12 13/25 14/2 15/24
16/7 16/8 16/12 16/13
17/2 17/2 17/4 18/9 22/3
24/24 26/15 26/16 28/3
29/12 29/19 29/19 29/22
29/24 30/1 30/4 30/11
30/12 30/17 32/23 33/19
34/18 36/13 36/20 36/25
37/1 38/22 39/1 39/4
41/15 41/22 43/21 45/11
45/25 46/18 47/10 48/17
49/16
Docket [1]   1/4
Doe [8]   24/8 25/24 25/25
26/3 26/3 26/5 27/22 28/1
does [22]   1/6 1/9 3/2 3/3
9/22 10/2 12/12 14/17
14/24 14/15 15/21 30/5
31/16 31/18 31/19 34/17
35/1 43/23 44/24 45/9
45/16 45/17
doesn't [6]   15/20 22/24
30/9 31/8 43/5 49/12
doing [8]   5/23 9/6 16/1
16/14 24/18 30/15 35/2
41/1
don't [48]   3/8 7/5 7/6
9/12 13/17 13/21 14/1
15/5 15/21 16/11 17/25
21/3 21/3 21/12 21/16
24/8 24/25 25/6 25/9
25/18 27/20 27/24 27/24
28/6 31/17 31/18 31/20
31/23 32/20 33/25 34/13
34/21 35/11 35/18 35/20
35/20 35/23 36/2 36/12
43/22 44/17 45/2 45/4
46/13 46/22 46/23 47/12
47/13
done [6]   13/10 15/4 26/17
31/9 36/3 45/14
door [1]   39/16
doors [1]   40/22
doubled [1]   9/4
doubt [1]   33/23
doubtless [1]   10/15
down [2]   37/19 40/22
download [6]   19/10 23/7

downloaders [1]   36/1
downloading [11]   4/6 4/15
13/3 13/7 21/5 21/13
23/10 23/10 23/12 28/12
36/16
dragged [2]   6/15
dramatically [2]   4/18
40/12
drowning [1]   13/23
due [2]   15/20 30/4
DUNLAP [10]   1/16 1/17 3/4
3/17 3/17 20/17 34/7
34/15 34/20 47/1
dust [1]   35/25

**E**

e-mail [2]   38/22 43/12
each [14]   4/5 4/6 4/8
8/19 9/13 18/13 23/11
23/12 25/22 26/9 29/10
40/18 41/2 42/6
eager [1]   35/22
Eastern [2]   20/5 37/13
easy [1]   35/21
ECF [1]   47/10
economy [4]   10/12 12/10
12/12 14/11
EFF [6]   22/18 22/20 25/13
25/17 35/16 37/13
EFF's [1]   22/13
effect [2]   5/25 11/19
effective [1]   16/6
effectively [1]   11/13
efficient [2]   16/6 45/15
effort [1]   4/22
either [3]   6/1 9/13 33/10
Electronic [2]   1/19 9/16
Eleventh [1]   1/22
else [5]   15/6 16/9 22/6
38/3 45/20
elsewhere [1]   44/1
employed [1]   50/8
employee [2]   41/10 41/13
employees [3]   41/15 41/21
42/5
encompassing [1]   26/7
end [7]   8/21 35/7 38/20
38/21 38/22 45/2 47/4
endangerment [1]   5/22
ended [1]   16/14
ends [2]   27/22 28/9
enforce [1]   5/10
enforcement [7]   5/20 5/21
6/2 6/5 40/23 40/23 41/11
engaged [2]   18/1 18/14
enormous [2]   4/11 12/2
enough [2]   19/21 28/22
enter [2]   26/24 47/22
entered [1]   21/16
entire [2]   7/2 31/24
equal [2]   33/8 49/9
especially [1]   29/20
Esquire [4]   1/16 1/16
1/19 1/21
essentially [5]   4/4 15/2
26/25 46/14 48/22
establish [4]   5/10 6/12
13/6 18/19

establishes [1]   40/12
even [25]   5/13 6/17 11/10
   11/23 14/25 15/22 18/9
   24/4 27/10 27/11 28/23
   29/5 29/5 31/2 33/2 34/1
   35/8 35/9 35/10 35/14
   37/10 39/12 39/23 41/10
   45/3
event [2]   27/10 27/11
ever [1]   11/23
every [2]   35/1 49/4
everybody [5]   14/10 16/9
   38/3 49/14 49/21
everyone [1]   3/7
everything [1]   29/19
evidence [5]   10/17 14/15
   29/21 40/9 42/9
exact [1]   28/13
exactly [4]   31/17 31/18
   33/23 33/24
example [7]   4/17 8/16
   8/24 25/24 33/7 33/12
   33/17
examples [1]   33/17
exercise [1]   39/20
exhibit [2]   42/23 43/12
exist [1]   34/21
existing [1]   41/10
expense [1]   32/3
expensive [5]   11/6 11/7
   11/20 12/8 15/17
expert's [2]   14/16 23/20
expertise [2]   24/18 24/19
expose [1]   24/4
extent [2]   31/25 48/8
extra [1]   48/1
extremely [1]   14/10

**F**

face [3]   5/24 7/24 11/7
facilitates [1]   12/12
facing [1]   5/6
fact [21]   6/10 8/3 9/21
   9/25 10/4 12/13 12/20
   13/15 18/13 19/18 20/24
   21/25 22/13 23/4 23/6
   25/2 26/12 41/6 41/9
   41/25 43/3
facts [7]   10/16 11/5
   12/15 13/2 13/11 25/7
   25/23
fair [3]   12/4 13/1 15/19
fairness [2]   10/12 17/20
familiar [1]   25/18
far [6]   7/10 8/22 9/22
   10/3 15/11 37/19
fascinated [1]   21/22
fashioning [1]   37/14
fast [1]   25/4
feasible [1]   41/13
Federal [1]   21/11
FedEx [1]   39/1
feel [2]   20/21 29/18
feeling [1]   36/7
fiction [1]   13/15
field [2]   11/2 15/18
figure [2]   3/15 32/14
figured [1]   20/14
figuring [1]   22/11

file [16]   13/4 16/14 18/2
   23/1 23/5 23/14 24/19
   27/15 27/25 27/25 28/8
   28/10 28/13 28/13 38/18
   47/9
filed [15]   4/5 8/24 18/4
   27/11 29/6 29/6 29/24
   30/2 36/8 38/1 39/13
   39/14 42/19 43/13 46/10
files [4]   28/8 28/9 28/9
   28/10
filing [5]   17/24 27/21
   29/9 38/5 39/19
filings [1]   14/21
film [2]   23/12 24/22
final [1]   43/9
finally [2]   8/21 27/8
financially [1]   50/9
find [5]   18/18 19/13 25/6
   26/20 28/1
finding [1]   12/13
fine [1]   49/2
firmly [1]   27/14
first [22]   3/14 4/21 6/14
   7/21 8/10 9/18 10/8 18/25
   19/2 19/6 19/18 20/12
   20/16 20/20 20/22 22/8
   25/19 26/20 39/13 40/8
   41/14 48/7
five [2]   8/2 25/25
Florida [2]   15/6 27/25
fold [1]   10/12
follow [1]   16/9
following [1]   16/9
footnote [1]   27/9
foregoing [1]   50/2
foremost [1]   7/22
formal [1]   46/12
formalism [1]   39/20
formulation [1]   49/5
forth [1]   31/6
foul [1]   36/22
found [7]   13/1 19/9 21/17
   22/18 22/19 22/20 24/11
Foundation [2]   1/19 9/16
four [4]   4/7 4/17 4/18
   8/2
fraction [1]   11/23
frame [1]   33/14
Francisco [3]   1/20 49/15
   49/17
frank [1]   36/8
frankly [2]   34/21 37/7
free [4]   19/11 21/6 21/12
   21/13
frivolous [1]   44/11
Frontier [2]   1/19 9/16
fully [1]   8/3
fundamental [2]   14/12
   17/20
further [5]   45/13 46/20
   46/21 50/7 50/9
future [1]   29/3

**G**

game [1]   6/1
gave [3]   17/5 17/9 33/12
get [17]   3/21 13/17 13/19
   14/22 18/6 19/11 21/25
   27/16 30/6 32/22 40/22
   40/23 40/24 40/25 45/22

gets [2]   28/8 39/3
getting [3]   23/11 23/14
   29/20
give [2]   26/16 34/1 37/1
   37/11 38/19
given [1]   9/21
gives [2]   21/23 30/3
giving [1]   36/2
globally [1]   5/1
GMBH [2]   1/3 3/2
go [17]   3/14 3/20 11/23
   17/6 19/8 19/13 20/15
   21/8 21/8 24/14 32/20
   36/11 41/24 42/22 43/2
   44/19 46/15
goal [1]   42/21
goals [2]   32/25 34/5
goes [1]   42/3
going [30]   10/6 12/2 12/7
   12/10 12/13 12/13 13/16
   14/9 15/14 15/17 16/18
   19/22 20/12 20/13 27/4
   27/16 27/18 28/18 28/21
   35/23 35/23 36/11 37/8
   43/21 43/23 45/7 45/25
   47/7 47/21 49/4
good [5]   3/7 28/19 28/20
   35/19 35/20
got [17]   9/2 14/8 14/9
   14/11 23/24 28/22 47/5
gotomypc [1]   24/25
gotomypc.com [1]   24/16
gotten [2]   29/6 37/23
greater [1]   35/13
group [1]   26/2
Grubb [1]   1/17
guess [1]   25/11
guesswork [3]   22/12 22/21
   24/10
guys [1]   3/16

**H**

had [5]   30/23 31/6 35/19
   35/25 36/3
hadn't [1]   29/6
hair [1]   44/18
half [1]   35/19
hand [2]   24/15 45/8
handle [7]   6/5 8/4 8/11
   41/18 41/24 43/7 48/5
handled [1]   35/25
handles [1]   41/7
hands [1]   38/4
happen [2]   12/14 37/20
happened [1]   39/15
happening [2]   11/16 36/20
happily [1]   49/12
happy [3]   10/9 19/24 21/1
hard [1]   35/21
harm [2]   13/10 36/22
has [23]   6/24 10/5 10/17
   13/1 14/17 16/9 19/1
   19/20 21/4 22/24 23/12
   24/16 31/6 32/15 33/23
   36/6 40/10 42/8 44/5 44/8
   44/11 45/18 48/21
hasn't [1]   20/22
have [156]
haven't [2]   18/19 29/5
having [2]   27/23 42/4

**H**

Hawaii [1]  15/11
he [2]  22/6 22/15
headed [1]  36/9
headquarters [1]  40/16
heads [1]  3/22
hear [5]  9/12 10/7 14/20
 35/21 37/9
heard [2]  9/19 20/15
hearing [6]  1/12 29/2
 38/11 46/3 49/25 50/9
Heartlocker [1]  14/4
held [2]  25/25 48/7
help [4]  12/19 16/16
 17/12 20/7
helps [2]  15/18 25/15
her [2]  16/12 46/2
here [37]  3/12 3/20 4/1
 4/10 6/22 6/23 7/11 8/20
 9/25 10/1 10/4 12/11
 12/14 13/15 14/11 14/20
 14/21 14/24 15/12 15/21
 16/2 16/22 17/10 17/24
 19/2 23/10 24/13 25/11
 26/10 27/13 27/14 32/14
 35/2 35/16 41/5 44/2
 49/14
hey [2]  13/22 13/22
high [6]  14/3 14/6 14/7
 25/4 42/22 43/2
him [1]  16/12
hire [5]  11/8 11/11 30/15
 31/2 41/24
history [1]  8/1
hit [1]  23/2
home [1]  25/3
honest [1]  38/6
Honor [60]
HONORABLE [1]  1/12
hooked [1]  25/4
hope [1]  28/23
host [1]  34/20
how [16]  8/14 13/16 16/7
 16/12 16/12 17/2 19/14
 21/11 23/22 26/18 26/18
 29/13 30/5 30/8 35/25
 36/11
hundred [2]  7/11 30/15

**I**

I'd [1]  20/16
I'll [1]  6/17
I'm [29]  3/19 6/7 9/25
 11/22 14/25 16/21 17/16
 18/6 19/6 19/24 23/9
 23/10 23/16 23/18 26/21
 28/21 28/25 32/14 34/8
 35/18 35/21 36/7 41/23
 43/21 44/21 45/6 45/25
 47/1 49/15
identical [2]  4/4 26/3
identified [2]  13/9 34/22
identify [1]  31/10
identifying [1]  7/12
illegal [1]  15/4
imagine [5]  11/2 19/10
 42/6 42/7 47/13
implements [1]  8/8
important [5]  15/8 17/21
 19/1 19/21 40/24

impose [1]  5/14
improvident [1]  34/12
inadvertently [1]  35/13
INC [2]  1/7 1/21
included [1]  39/11
including [3]  5/5 5/18
 5/22
Incorporated [1]  3/3
incorrect [1]  19/3
increased [1]  33/24
incur [3]  8/19 31/4 42/4
incurred [1]  32/3
incurs [1]  8/18
individual [5]  10/3 16/24
 25/7 26/7 40/19
individually [2]  12/19
 27/16
inefficiencies [2]  17/18
 17/19
inefficient [1]  16/19
inevitable [1]  11/25
inevitably [1]  12/8
inferred [1]  31/14
inform [3]  38/21 38/22
 46/8
information [4]  4/12
 16/15 22/3 22/9
informing [1]  9/5
infringed [4]  10/15 25/25
 26/1 26/4
infringement [1]  26/7
infringing [2]  20/25 21/9
initiate [1]  25/4
injured [1]  16/25
inordinate [1]  6/21
insight [1]  30/3
insighting [1]  19/12
instances [1]  8/23
insulting [1]  16/3
intellectual [1]  32/17
interest [5]  44/9 44/23
 44/24 44/24 45/6
interested [2]  1/21 50/10
interesting [3]  23/9
 25/18 27/9
interests [1]  17/21
internal [1]  41/7
internet [6]  7/13 15/3
 15/5 31/11 33/21 38/8
intervention [1]  42/20
investigate [1]  21/17
involved [2]  4/16 14/10
involvement [1]  9/23
involves [2]  25/22 40/17
involving [2]  4/14 4/18
IP [27]  4/25 5/5 5/6 5/19
 5/24 6/5 7/13 8/4 8/5
 8/10 8/16 8/19 8/25 9/4
 9/9 13/8 22/11 22/13
 22/14 24/9 30/4 33/13
 39/11 40/17 41/18 43/6
 46/8
is [145]
isn't [3]  19/2 32/24
 49/17
ISP [6]  14/23 15/2 38/20
 42/6 46/7 48/13
ISPs [17]  33/5 33/5 33/9
 36/21 37/1 37/8 37/9 38/9
 38/15 38/22 39/1 41/3
 42/8 44/25 45/10 47/25

issue [25]  5/24 10/5 10/6
 13/3 13/23 18/25 19/16
 19/20 21/5 21/15 25/9
 25/11 26/8 27/5 27/6
 30/13 30/20 30/23 31/1
 35/5 35/14 35/24 39/8
 41/4 41/12 47/22 48/3
 48/6
issued [2]  4/20 44/5
issues [13]  5/21 9/14
 10/7 11/9 12/14 12/20
 17/13 20/20 20/20 20/22
 28/23 37/16 47/17
it [105]
it's [58]
its [9]  6/2 6/8 32/16
 32/17 36/13 38/21 42/3
 44/9 45/18
itself [2]  23/5 43/3

**J**

job [1]  16/1
John [12]  9/22 10/2 25/24
 25/25 26/3 26/3 26/5
 43/22 44/24 45/9 45/16
 45/17
joinder [18]  6/24 10/6
 10/12 10/25 12/11 12/19
 15/9 16/18 17/14 17/17
 18/19 20/15 20/16 25/12
 25/14 25/15 25/20 35/5
joined [3]  18/12 18/15
 34/23
JUDGE [7]  1/13 13/1 27/16
 39/20 44/19 46/2 47/18
Judge's [1]  25/22
Judges [4]  13/24 39/15
 44/18 44/20
judicial [6]  4/5 10/12
 12/10 12/12 14/11 42/20
July [1]  50/13
jump [1]  47/2
June [1]  1/6
jurisdiction [25]  7/7
 10/8 11/10 14/14 14/19
 14/22 15/3 16/17 18/11
 20/20 21/17 21/25 22/16
 24/12 34/14 34/19 34/25
 35/6 35/9 35/24 36/3 37/5
 43/24 44/3 47/14
jurisdictional [4]  11/9
 17/13 21/15 25/9
jurisdictionally [1]
 22/12
jury [2]  3/21 11/25
just [48]  3/22 7/1 12/7
 13/14 13/15 14/18 15/19
 15/22 18/5 18/6 18/23
 19/13 20/15 20/19 22/21
 24/23 27/8 27/22 29/1
 30/12 33/2 33/13 33/16
 33/22 34/15 35/7 35/11
 36/8 36/21 36/23 38/4
 39/7 39/15 41/10 41/17
 41/21 42/21 43/10 43/13
 44/17 44/19 44/21 45/21
 46/5 47/10 49/2 49/3 49/7
justice [1]  10/3

**K**

keep [5]  16/20 29/3 29/23

keep... [2]   42/17 43/17
keeping [1]   43/6
key [1]   12/14
KG [1]   1/3
kind [9]   23/24 24/23 25/8
 25/13 25/19 30/12 37/1
 39/2 48/1
kinds [2]   12/22 20/6
KINO [3]   1/3 3/2 40/1
knocked [1]   40/22
know [50]   9/19 10/17
 16/11 16/12 17/25 19/7
 19/17 21/10 22/4 22/9
 23/18 23/21 24/8 24/8
 25/1 25/6 25/18 26/22
 27/21 27/24 27/24 28/1
 28/7 28/14 30/13 30/19
 30/21 31/14 31/17 31/18
 31/20 33/23 34/4 34/21
 35/5 35/11 35/14 35/21
 35/24 35/25 36/2 40/8
 40/21 41/12 41/18 42/19
 43/22 45/2 45/5 48/18
known [1]   43/24
Kolar [1]   39/21
Kollar [2]   39/22 39/24
Kollar-Kotelly [2]   39/22
 39/24
Kotelly [2]   39/22 39/24
KURTZ [10]   1/16 3/4 3/18
 3/18 28/18 28/21 30/19
 43/10 47/2 49/24

L

laid [1]   42/8
language [1]   48/10
laptop [2]   24/21 35/2
large [1]   5/5
larger [3]   4/18 40/11
 40/12
last [3]   18/23 39/7 47/18
later [1]   29/24
Latham [1]   1/21
law [10]   5/20 5/21 6/1
 6/4 13/14 26/12 40/23
 40/23 41/10 41/23
laws [2]   17/2 37/11
lawsuit [4]   17/11 24/5
 40/24 43/25
lawsuits [7]   17/7 17/24
 18/2 18/4 18/5 44/15
 44/22
lawyers [1]   35/15
lay [3]   23/16 23/19 31/24
lays [1]   37/16
learned [1]   39/15
least [5]   16/17 23/15
 26/14 36/25 37/25
leave [2]   6/25 17/22
leaving [1]   11/11
Leesburg [1]   1/18
legal [5]   13/15 29/13
 32/14 44/12 45/18
legitimate [6]   11/4 11/4
 13/1 32/2 36/13 44/8
legitimately [2]   30/17
 34/11
Lender [2]   6/10 6/18
lends [1]   23/5

1955 [3]   33/16 45/15
 49/15
let [5]   3/15 23/23 24/6
 34/6 45/25
let's [5]   11/24 15/1
 15/22 17/3 23/25
letter [1]   38/23
level [4]   4/24 42/18 43/6
 43/17
liability [1]   12/13
Liberty [1]   1/17
light [2]   8/1 8/2
like [16]   3/14 7/16 8/21
 10/1 10/17 13/5 16/6 24/23
 36/7 37/5 37/15 38/18
 41/14 41/22 42/14 47/25
likely [1]   23/6
limit [4]   5/11 10/21
 16/20 45/1
limitation [1]   29/4
limited [1]   19/8
limiting [1]   8/10
line [1]   25/4
list [1]   8/25
literally [1]   17/24
litigation [2]   33/1 44/10
little [7]   3/22 20/1
 23/23 32/23 36/7 45/15
 45/15
live [2]   17/25 48/21
lived [1]   18/10
lives [5]   22/25 22/25
 23/1 23/1 35/1
LLP [1]   1/21
local [7]   15/13 15/14
 27/12 27/13 27/14 31/17
 31/18
located [4]   14/17 14/19
 15/11 40/19
location [3]   7/14 31/16
 31/17
locations [1]   31/9
log [1]   24/23
logic [1]   18/7
long [3]   21/9 28/6 30/5
longer [1]   23/12
look [8]   8/19 28/8 30/4
 30/9 33/4 33/19 45/24
 46/8
looked [1]   32/11
looking [7]   11/6 11/21
 22/3 22/8 22/11 24/9
 40/17
looks [1]   8/16
lookups [15]   5/1 5/6 5/7
 5/19 5/24 6/6 8/4 8/5
 8/11 9/4 30/6 30/10 33/13
 40/21 40/25
Lord [1]   32/11
lost [1]   35/19
lot [3]   5/20 35/8 41/20
lumped [2]   10/19 10/22

M

ma'am [2]   39/5 45/21
machine [1]   2/6
made [1]   6/17
mail [4]   38/22 38/25 39/2
 43/12
majority [1]   5/20
make [8]   6/25 10/6 11/18

12/6 12/20 15/17 28/4
 42/22
making [1]   40/20
Maltas [9]   1/21 3/5 3/11
 3/14 3/25 3/25 4/3 9/11
 48/3
manage [2]   42/9 9/7
many [4]   4/7 4/14 27/24
 43/23
Maryland [3]   7/8 23/1
 23/4
Massachusetts [1]   12/25
master [1]   15/16
material [4]   4/6 4/15
 16/5 21/6
materials [2]   21/9 44/9
math [1]   30/7
matter [3]   13/13 24/12
 50/6
may [19]   12/20 13/3 13/6
 13/7 18/17 18/18 18/23
 22/23 23/1 27/5 32/5
 37/11 40/13 40/22 40/23
 41/2 41/4 48/8 48/12
maybe [3]   31/20 33/8 34/6
MCSHERRY [5]   1/19 3/6
 9/16 44/16 47/5
me [16]   3/15 3/24 13/23
 23/23 24/6 28/3 34/6 34/9
 35/22 36/15 38/18 40/5
 45/9 48/11 48/25 50/4
mean [6]   28/5 29/12 32/5
 34/17 35/11 48/9
meaning [1]   29/4
means [7]   11/1 11/2 12/1
 15/5 16/10 34/2 38/14
meanwhile [1]   26/4
measure [1]   8/20
meet [2]   26/15 49/23
mentioned [1]   37/13
mentions [1]   27/10
merely [1]   39/18
merits [1]   12/6
message [1]   19/9
met [4]   32/4 32/5 32/5
 32/9
microphone [1]   45/21
Microsoft [1]   6/11
might [15]   11/19 15/1
 15/10 17/12 19/11 19/11
 20/7 34/16 35/8 35/9 35/9
 36/2 38/20 43/9 44/19
miles [1]   7/11
mind [1]   16/20
minds [1]   33/23
minimize [3]   4/23 8/9
 43/5
minimum [4]   8/7 20/4
 43/17 44/6
minor [1]   13/6
minute [2]   3/8 3/16
misidentified [1]   13/5
mistakes [1]   11/18
mode [2]   42/22 43/1
model [1]   34/1
modify [2]   4/13 44/25
moment [4]   11/11 29/13
 45/6 46/22
money [2]   32/21 32/23
monitor [3]   11/13 11/14
 11/15

**M**

month [22]   5/1 5/19 6/6
  8/11 17/4 17/5 29/24 30/1
  30/7 30/15 33/14 33/20
  33/21 33/22 35/1 40/6
  42/12 42/13 42/13 42/13
  43/7 45/1
months [2]   6/3 33/15
moot [1]   48/19
more [23]   4/25 6/16 11/7
  12/21 15/17 19/24 23/5
  24/2 28/22 30/12 32/12
  33/17 36/13 36/18 37/15
  38/17 39/11 40/10 41/20
  41/24 43/14 45/15 47/23
most [3]   5/23 43/23 49/19
mostly [1]   32/21
motion [10]   1/12 7/4 7/20
  30/2 30/23 32/1 38/1
  39/16 42/19 43/12
motions [4]   11/14 11/15
  29/24 38/5
movie [5]   19/25 20/23
  24/1 24/24 35/4
movies [4]   15/22 17/1
  19/10 21/13
moving [2]   3/11 4/1
MR [11]   3/11 3/14 3/17
  3/18 3/25 4/3 9/11 28/21
  30/19 48/3 49/24
Mr. [8]   20/17 28/18 34/7
  34/15 34/20 43/10 47/1
  47/2
Mr. Dunlap [5]   20/17 34/7
  34/15 34/20 47/1
Mr. Kurtz [3]   28/18 43/10
  47/2
Ms. [2]   44/16 47/5
Ms. McSherry [2]   44/16
  47/5
much [9]   8/14 23/21 28/21
  29/11 30/8 31/21 35/12
  40/10 45/22
multi [2]   31/15 41/1
multiple [3]   4/11 11/16
  34/24
music [2]   25/21 36/1
must [1]   31/9
my [14]   4/9 19/14 19/25
  23/15 23/20 23/22 23/24
  32/10 32/11 34/11 35/19
  42/23 48/14 50/3
myself [1]   24/18

**N**

naive [1]   36/7
name [5]   15/23 28/13
  31/10 39/25 45/10
named [1]   36/15
names [12]   17/3 17/5 17/9
  36/5 36/6 36/18 36/21
  40/22 45/1 45/14 48/18
  48/19
nearly [2]   5/6 33/11
neat [2]   21/8 21/10
necessarily [1]   47/22
neck [1]   35/19
need [11]   6/14 15/16
  24/22 26/19 28/1 36/11
  45/13 45/20 46/8 47/15

needs [1]   21/18
negotiate [1]   4/23
neither [3]   10/12 38/4
  50/7
net [1]   48/5
network [1]   27/19
never [4]   20/24 30/11
  30/20 30/25
New [3]   22/10 22/21 24/10
next [5]   9/12 21/19 39/15
  47/14 47/16
nice [2]   19/17 49/23
NICHOLAS [1]   1/16 3/4
Nick [1]   3/18
nine [1]   25/5
no [25]   1/4 5/13 10/20
  12/10 14/10 14/19 15/6
  16/11 16/11 16/20 18/6
  21/21 21/21 23/12 24/14
  29/21 30/3 34/1 34/3 34/9
  36/21 36/22 38/13 41/23
  48/23
none [3]   22/1 26/4 45/3
normal [1]   6/20
normally [2]   11/7 12/11
North [1]   7/16
Northern [1]   7/9
not [86]
noted [1]   19/5
notes [1]   50/4
notice [22]   26/16 36/1
  36/2 37/1 37/3 37/4 37/11
  38/19 38/20 45/9 46/15
  46/16 46/16 46/23 47/3
  47/17 48/6 48/8 48/9
  48/15 49/7 49/8
noticed [1]   37/17
notices [3]   37/8 37/9
  48/12
notify [1]   49/1
now [25]   3/19 3/24 4/14
  5/6 5/24 6/7 10/11 10/23
  12/1 12/5 13/14 14/14
  14/25 15/13 16/18 18/17
  23/17 24/7 27/5 27/21
  29/20 30/17 33/5 35/16
  46/10
NUENTE [6]   1/3 3/2 8/24
  10/23 11/24 40/1
number [10]   3/1 10/22
  14/6 14/7 30/6 38/7 42/15
  43/21 44/4 44/8
numbers [4]   14/2 14/4
  30/8 41/17
numerous [1]   19/3
NW [2]   1/22 2/3

**O**

object [3]   37/4 45/11
  45/12
objection [1]   36/3
obviously [11]   29/18
  30/11 31/4 31/5 31/6 33/3
  35/7 37/8 37/9 37/23 48/7
occurrences [2]   26/8
  26/13
off [2]   20/19 36/9
offensive [1]   45/5
offered [1]   43/4
office [4]   40/18 40/19

offices [2]   40/15 41/15
oh [5]   21/10 32/11 38/12
  39/23 40/2
Ohio [13]   7/16 22/5 23/2
  23/6 24/1 24/4 24/11
  24/14 24/16 25/5 27/25
  34/22 35/1
okay [18]   3/19 3/22 3/24
  15/7 16/3 18/20 20/1 20/2
  20/12 28/16 32/22 32/22
  37/25 39/6 40/4 49/2 49/6
  49/17
once [6]   8/2 8/4 8/17
  16/20 23/14 48/18
one [45]   1/7 3/3 6/25
  11/22 12/12 12/25 13/3
  18/23 19/18 20/1 23/13
  23/17 24/2 26/3 26/10
  26/10 27/16 28/5 28/7
  28/7 28/10 28/13 29/2
  29/9 29/10 29/10 30/13
  30/23 31/10 32/25 33/7
  33/12 33/16 34/19 35/6
  37/24 39/7 39/15 40/3
  40/9 43/9 43/22 44/19
  46/5 47/18
ones [1]   22/19
only [15]   8/4 9/6 11/8
  11/12 17/3 26/2 29/11
  29/23 30/14 31/13 31/23
  32/14 33/19 37/3 37/18
operate [1]   35/20
operates [1]   21/12
operations [2]   6/9 6/20
operators [1]   40/11
opinion [1]   25/22
opportunity [2]   9/20
  45/24
opposed [4]   30/21 30/25
  33/21 48/13
opposition [1]   7/2
order [27]   9/2 9/8 17/20
  20/6 20/15 26/25 26/25
  27/1 37/1 37/15 38/19
  45/24 46/9 46/11 46/12
  46/20 46/21 47/22 48/4
  48/15 48/23 48/23 48/25
  49/3 49/5 49/7 49/8
ordering [1]   40/1
orders [6]   8/13 8/23 29/7
  36/24 36/25 39/11
other [20]   11/13 11/17
  11/22 13/8 13/24 14/1
  15/2 21/4 24/15 26/6
  30/15 33/5 33/9 33/17
  36/21 36/25 37/11 45/8
  47/25 48/6
otherwise [1]   50/10
our [40]   5/4 5/16 6/1 6/4
  7/9 7/15 7/20 8/3 8/3
  8/10 14/16 15/20 17/18
  19/5 20/19 22/1 26/14
  27/12 27/13 27/14 29/18
  30/13 31/3 33/23 34/5
  35/7 40/9 40/14 40/14
  41/6 41/17 41/21 42/1
  42/2 42/19 43/12 46/8
  47/22 48/6 48/10
out [35]   3/15 10/20 12/9
  12/25 13/16 18/4 18/18

**out...** [28]  19/9 19/13
20/5 21/8 21/17 22/11
25/6 26/20 28/1 31/4 31/7
31/24 32/14 33/10 33/16
34/1 36/14 37/8 37/16
39/10 41/24 42/3 42/9
44/18 44/23 46/14 47/6
47/14
**outcome** [1]  50/10
**outside** [1]  22/18
**over** [16]  8/5 14/8 14/17
18/11 18/17 23/10 28/13
28/14 33/5 33/13 33/20
34/19 35/9 35/22 36/21
40/22
**overarching** [1]  35/6
**overlapping** [1]  26/2
**overly** [1]  39/10
**overwhelm** [1]  5/25
**overwhelmed** [1]  33/11
**overwhelming** [2]  32/10
32/13
**own** [3]  11/19 26/25 45/18
**owned** [1]  26/1

**P**

**p.m** [2]  1/6 49/25
**pages** [1]  50/3
**papers** [2]  29/16 32/19
**parcel** [1]  25/14
**part** [6]  4/4 25/14 29/16
30/5 48/11 48/15
**participate** [3]  49/5
49/10 49/12
**participation** [1]  20/10
**particular** [1]  9/9
**particularly** [1]  6/14
**parties** [7]  3/5 5/11 6/15
25/16 42/4 42/21 50/8
**party** [14]  1/21 3/11 4/1
4/9 4/10 6/8 6/8 6/10
6/20 7/24 30/18 31/23
42/2 44/25
**path** [1]  37/19
**pay** [5]  8/15 8/17 15/9
32/23 47/24
**paying** [4]  31/5 41/13
47/25 48/4
**pcanywhere** [2]  24/16
24/25
**penalty** [3]  27/22 27/22
27/23
**pending** [1]  38/11
**Pennsylvania** [2]  20/5
37/14
**people** [24]  13/5 13/8
13/9 13/10 16/5 16/20
17/1 19/12 21/23 26/20
26/22 28/11 29/9 30/16
31/12 32/16 32/21 35/23
36/2 36/4 36/15 40/21
41/24 42/1
**people's** [1]  30/7
**per** [6]  5/1 5/19 6/6 8/15
27/22 30/9
**percent** [2]  11/24 22/19
**perfectly** [1]  36/8
**perhaps** [2]  21/7 45/15
**period** [1]  4/12

**permitting** [2]  9/3 9/18
**person** [6]  3/13 23/12
23/19 24/4 24/11 28/14
28/14 28/15 29/10 31/2
31/3 31/18 31/19
**personal** [8]  18/10 20/20
21/17 24/12 34/19 35/5
35/24 37/5
**personally** [1]  16/2
**persons** [4]  18/13 36/17
43/25 45/4
**pertain** [1]  12/15
**phase** [1]  21/16
**phone** [1]  49/16
**physical** [2]  31/9 41/3
**piece** [8]  22/8 22/22
22/23 23/7 26/10 27/17
28/7 28/18
**pieces** [3]  22/7 23/3
23/14
**Pilgrim** [2]  2/2 50/13
**places** [3]  7/15 17/6 17/6
**plain** [1]  5/8
**plaintiff** [20]  1/4 1/16
3/4 7/25 16/25 17/23
18/15 19/1 26/10 27/17
28/7 44/1 44/1 44/5 44/8
44/13 44/24 45/6 45/18
48/13
**plaintiff's** [1]  6/3 8/22
43/12
**plaintiffs** [24]  3/18 3/20
3/21 4/7 4/23 5/4 6/6 6/9
7/1 7/11 8/14 8/24 9/13
9/22 11/16 14/15 14/21
17/17 25/25 26/2 44/13
45/8 48/9 48/18
**play** [1]  13/16
**playing** [2]  11/2 15/18
**pleading** [1]  26/16
**pled** [1]  26/14
**plug** [1]  35/3
**plus** [1]  41/19
**pocket** [1]  31/5
**point** [16]  6/13 7/1 10/20
10/25 11/22 12/9 18/4
29/20 34/18 34/21 36/23
39/7 43/9 44/10 46/5
47/23
**pointless** [1]  39/20
**points** [3]  10/6 29/1 40/7
**possibilities** [1]  34/20
**possible** [3]  24/15 25/2
28/15
**possibly** [2]  30/24 35/10
**post** [1]  46/10
**postpone** [1]  38/10
**postured** [1]  10/14
**potential** [2]  14/23 25/8
**potentially** [1]  38/16
**practical** [3]  13/13 29/8
32/15
**practicalities** [1]  16/22
**practically** [1]  29/12
**practice** [1]  8/22
**premature** [1]  35/7
**present** [1]  44/14
**presented** [2]  10/21 10/25
**pressure** [1]  12/2
**presumably** [1]  32/21
**pretending** [1]  18/5

**pretty** [2]  14/6 14/7
**previous** [1]  16/14
**previously** [1]  50/6
**primary** [1]  47/22
**principal** [2]  10/5 14/22
**principals** [2]  6/12 15/20
**prior** [2]  4/14 39/19
**pro** [1]  3/5
**probably** [5]  11/9 23/7
28/23 36/17 44/16
**problem** [10]  12/9 14/14
14/23 16/4 16/17 16/18
17/14 17/17 19/2 29/8
**problems** [1]  10/8
**procedures** [4]  15/16
15/16 20/4 20/7
**proceed** [2]  46/11 46/14
**proceedings** [2]  2/6 50/5
**process** [10]  5/18 7/12
9/8 15/20 29/11 31/15
40/17 41/1 41/1 45/17
**produce** [1]  42/8
**produced** [2]  2/6 40/10
**production** [4]  37/23
38/11 45/1 45/13
**program** [1]  24/16
**prongs** [1]  6/22
**pronounce** [1]  39/25
**pronounced** [1]  15/23
**pronouncing** [1]  16/2
**proof** [2]  29/21 32/2
**proper** [1]  21/16
**properly** [4]  11/10 16/7
16/8 18/9
**property** [5]  25/23 26/8
26/10 27/17 32/17
**propose** [3]  36/20 42/22
45/9
**proposed** [2]  38/19 45/24
**proposition** [3]  11/6 11/7
11/20
**prosecute** [2]  15/14 41/25
**prosecutors** [1]  3/21
**protect** [4]  9/6 19/22
20/7 42/4
**protected** [4]  20/24 21/5
21/13 45/19
**protecting** [3]  44/9 44/12
45/16
**protective** [1]  6/15
**protects** [1]  19/7
**protocol** [1]  31/11
**provide** [1]  32/2
**provided** [2]  42/9 50/4
**provider** [2]  7/13 33/21
**providers** [1]  38/8
**purpose** [5]  10/11 10/13
17/25 44/17 45/11
**purposely** [1]  34/24
**purposes** [3]  16/25 32/10
44/14
**pursuant** [1]  36/25
**pursue** [2]  9/3 23/23
**push** [1]  19/13
**put** [4]  24/17 24/19 42/23
44/16
**putting** [1]  29/13

**Q**

**quash** [16]  4/13 4/20 5/12
5/14 6/19 7/22 8/7 29/25

**Q**

quash... [8]   32/1 34/12
 38/1 39/16 43/16 44/7
 45/2 45/7
quashing [1]   39/18
question [12]   8/14 21/20
 24/14 25/12 25/13 25/14
 25/15 34/7 38/3 43/10
 47/18 48/21
questions [1]   26/12
quick [2]   36/23 39/7
quicker [1]   19/10
quite [6]   14/2 19/1 33/9
 36/5 42/25 49/17
quote [4]   25/21 25/24
 31/15 33/11

**R**

raise [3]   11/4 12/19 13/5
raised [8]   6/24 10/5
 12/16 13/2 13/3 13/11
 25/12 41/12
raises [1]   48/11
ran [1]   22/17
range [1]   42/7
reach [3]   47/11 47/12
 47/13
reached [3]   4/24 25/10
 47/15
read [5]   6/17 21/21 23/20
 23/21 28/24
readily [1]   47/15
real [4]   25/11 30/3 31/10
 42/15
really [16]   8/14 10/1
 15/9 15/14 16/21 19/2
 20/9 21/4 31/11 32/20
 40/12 40/21 41/13 44/14
 44/22 49/7
reason [4]   14/20 15/8
 43/16 47/12
reasonable [7]   4/24 7/25
 8/6 30/22 42/17 42/17
 43/6
reasonably [2]   6/5 43/7
reasons [1]   4/21
reburning [1]   28/12
recall [1]   37/3
receive [2]   5/18 30/10
received [1]   4/11
receiving [1]   10/3
recent [1]   20/25
recently [1]   12/25
recognize [2]   43/21 43/22
record [3]   7/1 16/14
 45/22
recorded [1]   2/6
Red [1]   28/12
reduce [1]   7/25
regional [4]   40/15 40/19
 41/2 41/15
rehash [1]   28/21
reimburse [1]   31/3
reimbursed [1]   33/15
reimbursement [2]   8/12
 8/13
reimbursing [2]   30/21
 30/25
reiterate [1]   37/18
related [6]   12/9 14/14

relating [1]   9/8
relationship [1]   15/6
reliable [1]   22/20
remedies [1]   7/21
remember [1]   15/22
remoted [1]   25/3
reneged [1]   5/4
repeatedly [2]   9/6 39/10
reply [2]   39/14 42/23
report [1]   28/7
Reporter [1]   2/2
represent [5]   3/25 11/9
 11/12 35/17 38/13 44/15
representation [2]   29/10
 45/3
represents [1]   34/9
request [5]   8/12 32/11
 40/23 45/23 48/1
requests [5]   5/21 5/24
 31/3 32/10 41/11
require [4]   6/7 6/21 32/7
 36/25
required [1]   47/24
requires [3]   7/24 24/17
 41/24
residence [1]   45/4
residents [2]   18/1 34/24
resolution [1]   43/5
resolve [6]   8/17 17/12
 42/20 42/21 43/2 47/17
resolved [1]   46/12
resources [1]   6/21
respect [5]   11/16 12/13
 14/18 21/15 47/19
respond [2]   29/14 46/22
responded [2]   38/7 38/14
responding [6]   5/17 6/20
 38/4 38/5 44/21 48/25
responses [1]   11/15
responsibilities [1]
 37/11
responsible [1]   11/17
Rest [1]   25/23
restrictions [1]   8/8
retain [2]   15/13 15/14
rethink [1]   36/11
reverse [1]   20/15
review [2]   49/10 49/11
right [24]   3/10 3/13 6/13
 10/10 10/20 10/23 12/1
 12/18 13/12 13/13 14/13
 16/2 16/2 19/21 19/21
 24/7 24/13 25/14 43/8
 43/20 45/12 47/2 47/9
 49/4
rights [11]   18/15 20/7
 32/16 36/13 36/14 44/12
 45/16 45/17 45/18 48/7
 49/9
rolling [1]   36/18
Room [1]   2/4
ROSEMARY [1]   1/12
RPR [2]   2/2 50/13
Rule [12]   5/8 7/24 7/24
 8/6 26/15 27/12 27/13
 27/14 29/19 38/19 42/3
 47/24
ruled [1]   39/16
rules [1]   16/9

**S**

said [11]   7/2 8/15 22/6
 22/15 24/10 26/18 30/11
 42/12 42/16 43/10 44/11
salaries [1]   30/7
same [16]   8/17 10/15 16/9
 22/17 26/5 27/13 27/17
 27/17 27/17 27/18 28/6
 28/13 29/8 33/13 39/17
 44/19
San [3]   1/20 49/15 49/17
satisfaction [1]   44/6
satisfied [1]   6/23
satisfy [1]   7/3
saw [1]   22/14
say [23]   11/24 13/22 18/2
 18/12 19/9 20/21 22/2
 22/3 23/18 27/10 29/25
 30/9 31/16 32/11 32/13
 32/22 33/19 38/20 40/21
 42/3 45/10 47/17 48/5
saying [4]   26/20 26/21
 30/8 39/18
says [5]   22/1 25/21 42/24
 43/13 49/3
scads [1]   32/21
scope [1]   4/19
se [1]   3/5
search [2]   22/18 33/16
second [3]   8/12 22/23
 41/17
section [1]   25/20
see [6]   4/16 12/1 28/6
 29/16 48/16 49/3
seeing [1]   28/13
seek [1]   9/8
seeking [5]   4/11 7/2 7/21
 9/4 42/19
seem [1]   30/12
seemingly [2]   29/4 33/20
seems [2]   37/10 47/25
seen [3]   13/4 31/14 37/7
send [7]   13/21 19/9 45/10
 46/23 47/9 47/10 48/9
sensible [1]   10/21
sent [4]   39/10 48/12
 48/12 49/8
separate [6]   9/14 18/12
 18/13 26/7 44/22 49/8
separately [1]   9/13
series [2]   4/4 26/13
serious [1]   5/21
serve [3]   4/25 8/5 38/17
served [8]   5/5 9/3 37/21
 37/22 38/14 38/15 39/19
 40/24
server [1]   23/11
service [5]   7/13 22/17
 22/20 35/4 38/8
services [1]   46/20
serving [3]   5/21 7/24
 8/22
set [5]   6/1 6/2 20/5
 40/14 49/13
setting [1]   36/16
settle [1]   12/3
settlement [1]   12/5
seven [2]   26/4 27/11
several [7]   4/7 6/3 7/10

several... [4]   8/8 8/23
  13/8 13/24
severance [2]   26/21 26/21
severing [1]   27/20
share [1]   13/8
shared [3]   28/11 28/11
  28/11
sharing [4]   13/4 16/14
  24/19 28/8
Shawmut [1]   5/9
sheer [1]   23/5
short [1]   4/12
shorthand [1]   2/6
Shotwell [1]   1/19
should [26]   5/14 6/18
  6/19 8/19 9/8 11/10 11/23
  12/6 13/9 13/12 13/17
  13/19 13/21 13/25 15/13
  20/4 21/8 27/25 27/25
  29/19 34/7 34/12 37/16
  38/20 44/25 47/17
show [2]   26/25 27/1
shown [2]   27/5 29/23
shows [1]   25/15
side [1]   29/18
sign [1]   36/24
signed [4]   22/24 34/16
  34/23 36/9
significance [1]   40/20
significant [3]   5/15 8/8
  32/3
significantly [1]   6/17
similar [4]   33/6 33/18
  33/22 39/16
simply [5]   8/5 12/2 16/19
  19/3 41/21
since [2]   20/15 24/7
single [1]   17/11
sir [3]   9/10 28/20 46/6
sit [1]   3/21
site [4]   19/9 19/13 21/8
  21/10
sitting [2]   32/6 38/4
situated [1]   40/13
situation [5]   11/2 12/7
  14/9 15/10 17/23
size [3]   23/5 23/5 33/8
slanted [1]   11/2
smaller [1]   33/20
so [80]
software [3]   24/19 26/11
  26/12
solely [1]   31/2
solution [1]   4/23
solve [3]   16/17 17/16
  25/15
some [27]   5/21 11/23
  13/21 14/3 15/1 17/18
  24/1 24/2 24/18 24/18
  30/15 31/6 31/10 33/4
  33/22 35/8 36/4 36/5 37/1
  38/6 38/9 39/1 39/2 40/17
  46/12 48/11 48/17
somebody [11]   3/8 13/22
  16/12 21/7 23/3 23/3 23/4
  23/6 24/2 34/25 36/16
somehow [2]   29/3 29/4
someone [1]   23/1
something [10]   15/4 18/14

sometimes [3]   12/5 26/2
  35/21
somewhat [3]   9/19 33/8
  44/10
somewhere [2]   13/22 15/6
sorry [2]   11/22 35/18
sort [4]   13/22 32/10
  39/17 46/12
sought [2]   37/4 45/14
sounds [1]   37/15
southern [4]   22/5 22/10
  22/20 24/10
Southwest [1]   7/10
span [1]   42/7
speak [3]   10/9 19/21
  48/22
specific [4]   12/16 12/17
  29/21 37/15
specifically [1]   34/23
specificity [1]   32/6
speech [12]   19/7 19/7
  19/8 19/9 19/11 19/12
  19/14 19/20 20/23 21/6
  21/12 21/14
speed [3]   23/13 23/13
  25/4
spend [2]   5/23 38/24
split [2]   44/20 44/21
stand [2]   23/18 36/12
standard [2]   23/6 26/16
standpoint [1]   46/7
start [1]   20/19
started [1]   10/23
starts [1]   28/10
state [3]   22/18 22/18
  22/19
stated [4]   34/15 34/20
  39/12 50/6
statement [2]   42/24 43/14
STATES [4]   1/1 1/13 2/2
  50/4
stay [2]   3/20 44/21
steal [2]   19/25 20/23
stealing [2]   20/24 32/17
stenographic [1]   50/4
step [2]   31/15 41/1
steps [1]   7/25
still [5]   16/18 17/13
  18/12 27/16 29/11
stood [1]   38/1
stop [2]   16/6 32/22
stories [1]   29/21
Stree [1]   1/17
Street [2]   1/19 1/22
strike [1]   11/15
structure [3]   31/24 40/15
  41/3
struggled [4]   19/16 19/19
  20/22 21/4
study [1]   31/15
stuff [1]   37/5
subject [2]   10/16 15/3
subjected [2]   6/16 6/18
submit [4]   19/3 33/8 40/8
  48/10
submitted [4]   10/18 14/15
  20/6 33/7
subpoena [17]   5/16 7/22
  8/9 9/4 34/11 34/13 36/9

subpoenaed [1]   36/5
subpoenas [20]   4/11 4/13
  4/20 5/5 5/11 5/14 5/18
  6/3 6/19 6/19 7/14 37/21
  37/22 37/24 38/7 38/14
  38/15 38/18 39/10 43/17
subscribed [1]   22/17
subscriber [10]   7/15 8/15
  8/17 8/18 22/12 23/7
  23/25 34/17 37/16 40/19
subscribers [26]   7/5 7/7
  7/7 7/8 7/9 7/10 7/15
  7/20 9/2 14/18 22/2 22/4
  34/10 34/22 37/2 37/12
  46/8 46/17 46/18 46/19
  46/24 48/7 48/10 48/17
  49/1 49/9
substantial [1]   42/25
substantiation [1]   29/21
sue [5]   16/12 16/19 17/10
  44/1 44/2
sued [3]   15/5 15/12 35/10
sufficient [1]   18/18
sufficiently [1]   32/9
suggest [2]   13/6 13/8
suggested [2]   14/21 19/1
Suite [1]   1/22
suits [1]   13/14
sum [1]   6/1
suppose [2]   23/18 42/4
supposed [1]   29/2
sure [11]   11/18 14/25
  16/23 28/25 32/18 34/4
  34/8 38/2 40/20 45/13
  48/25
surgery [1]   35/19
survive [1]   7/19
SW [1]   1/17
swarm [3]   23/2 23/11
  34/24
system [1]   17/19

T

take [9]   7/25 11/12 16/15
  19/8 19/14 27/12 31/8
  31/11 44/12
taken [4]   18/11 45/5 50/5
  50/9
takes [2]   30/4 30/5
taking [1]   28/12
talk [10]   15/23 20/12
  20/13 20/16 21/18 23/21
  35/22 40/5 46/2 46/3
talked [1]   21/1
talking [5]   15/22 16/22
  17/15 29/23 41/20
talks [1]   27/13
Tanenbaum [1]   12/24
tasked [1]   5/17
team [6]   5/16 5/17 5/25
  6/1 41/7 41/10
tearing [1]   44/18
technical [3]   22/13 24/18
  24/19
technically [1]   35/9
technology [1]   21/22
telephone [2]   47/16 49/13
tell [8]   3/24 7/14 21/7

| | | |
|---|---|---|
| tell... [5]  28/3 30/9<br>  34/18 35/7 38/9<br>temporary [1]  41/9<br>ten [3]  8/2 11/24 26/1<br>tend [1]  9/25<br>term [1]  19/8<br>terminology [1]  45/9<br>terms [4]  7/21 42/12 44/7<br>  48/6<br>terribly [1]  36/7<br>terrorism [1]  5/22<br>Texas [2]  7/16 22/5<br>than [15]  4/25 11/7 15/23<br>  19/10 19/24 22/19 23/6<br>  28/22 28/22 32/12 33/16<br>  33/17 36/14 39/12 40/11<br>thank [24]  9/10 9/11 9/15<br>  9/18 9/24 18/21 18/22<br>  20/2 20/9 20/11 27/3<br>  28/16 28/17 40/4 43/19<br>  46/4 46/25 49/6 49/18<br>  49/19 49/20 49/21 49/22<br>  49/23<br>that [344]<br>that's [47]  3/19 3/22<br>  3/22 5/1 7/6 9/19 11/8<br>  11/13 11/17 11/20 11/20<br>  11/24 12/4 12/13 12/14<br>  12/21 13/3 13/13 13/15<br>  13/23 14/3 14/6 14/7<br>  14/12 15/17 17/15 18/16<br>  19/3 19/17 20/24 21/12<br>  22/22 23/15 23/22 23/24<br>  24/8 25/8 27/4 30/10<br>  30/11 30/13 30/17 30/24<br>  33/16 37/25 41/8 48/16<br>their [55]<br>them [46]  4/25 5/12 7/14<br>  9/3 11/9 12/19 13/7 15/17<br>  16/3 17/5 17/9 18/11<br>  18/13 18/15 19/11 22/24<br>  23/21 24/14 26/16 27/16<br>  28/24 29/12 29/14 29/17<br>  29/25 30/8 30/20 30/25<br>  31/3 31/5 32/22 32/22<br>  33/12 33/13 33/15 33/21<br>  37/24 40/25 41/4 43/23<br>  44/1 44/2 44/16 46/18<br>  47/24 47/25<br>themselves [6]  11/3 11/21<br>  12/4 12/8 14/15 34/25<br>then [15]  5/4 8/4 9/3<br>  9/13 10/7 10/24 17/7<br>  17/22 28/3 29/24 30/8<br>  38/17 39/4 48/19 49/13<br>Theoretically [1]  28/15<br>theories [3]  10/21 10/24<br>  28/4<br>theory [2]  14/22 15/2<br>there [33]  4/14 9/1 11/18<br>  12/10 13/1 13/10 14/3<br>  14/8 14/9 14/19 17/18<br>  18/1 18/18 19/2 21/8 21/9<br>  21/25 22/7 23/25 24/12<br>  26/12 26/12 31/9 34/4<br>  37/5 39/8 40/15 41/19<br>  41/23 43/21 45/20 48/7<br>  48/11<br>there's [15]  5/13 10/20 | 20/25 21/9 22/16 24/14<br>33/17 34/20 35/24 40/16<br>48/8<br>Thereby [1]  31/3<br>these [47]  4/10 4/13 4/16<br>  4/17 5/9 5/11 6/11 6/15<br>  8/23 10/3 10/13 11/23<br>  12/15 14/2 14/20 16/25<br>  20/7 21/23 24/9 26/18<br>  26/20 27/10 27/11 27/12<br>  27/15 27/20 28/8 28/9<br>  28/23 31/11 32/20 33/6<br>  33/9 34/19 37/16 37/20<br>  38/9 38/25 39/9 39/14<br>  40/20 42/4 42/7 42/9<br>  43/15 44/14 44/22<br>they [130]<br>they're [15]  15/11 16/2<br>  18/5 18/12 27/11 28/8<br>  31/23 33/3 34/4 35/2 35/3<br>  35/10 35/14 44/2 48/4<br>they've [5]  32/4 32/5<br>  32/9 40/9 41/12<br>thin [1]  19/20<br>thing [4]  27/18 31/13<br>  40/9 49/8<br>things [9]  12/12 13/5<br>  31/11 42/13 42/16 42/21<br>  43/22 44/23 48/3<br>think [52]<br>third [9]  4/10 6/7 6/10<br>  6/15 30/18 31/23 42/2<br>  42/4 44/25<br>this [83]<br>THOMAS [2]  1/16 3/4<br>those [19]  6/22 10/2 10/9<br>  10/13 10/18 11/16 12/18<br>  12/18 12/20 14/20 15/16<br>  17/20 19/5 20/6 30/7 30/8<br>  43/25 44/23 45/3<br>though [5]  33/2 34/1 37/3<br>  39/12 45/3<br>thought [5]  20/16 25/17<br>  32/11 32/12 48/16<br>thousand [3]  4/7 23/3<br>  23/14<br>thousands [8]  10/2 10/14<br>  11/13 13/14 16/4 16/19<br>  32/16 33/3<br>threaten [1]  6/20<br>three [2]  42/13 44/8<br>through [3]  25/5 31/14<br>  46/12<br>tilt [1]  15/18<br>time [60]<br>times [1]  10/17<br>tip [1]  22/5<br>today [4]  4/4 20/21 29/2<br>  34/9<br>together [4]  10/19 10/22<br>  34/5 44/17<br>told [1]  43/15<br>Tom [1]  3/17<br>tomorrow [1]  47/4<br>too [7]  12/7 23/24 28/21<br>  35/7 37/19 47/6 49/24<br>took [3]  22/13 37/14<br>  43/14<br>torrent [1]  23/2<br>torrents [1]  23/22 | total [2]  5/6 5/19<br>totally [1]  45/7<br>touching [1]  30/20<br>town [2]  49/14 49/17<br>transactions [1]  26/8<br>  26/13 26/19 27/18<br>transcript [3]  1/12 2/6<br>  50/3<br>transcription [1]  2/6<br>travel [1]  24/21<br>trial [1]  11/24<br>tried [1]  24/18<br>true [3]  14/3 22/23 50/2<br>truly [1]  33/25<br>trust [1]  45/3<br>try [3]  14/22 29/25 43/2<br>trying [5]  18/6 29/17<br>  29/18 29/19 32/14<br>turn [2]  33/14 40/22<br>turned [1]  33/16<br>Turner [1]  3/8<br>turning [1]  36/21<br>TV [3]  24/23 24/24 24/24<br>twice [1]  8/18<br>two [20]  3/16 4/3 4/21<br>  5/2 8/16 10/12 13/15 14/2<br>  22/3 22/7 31/9 31/11<br>  37/20 38/9 39/9 42/16<br>  43/11 43/13 44/4 48/3<br>two-fold [1]  10/12<br>Twombly [1]  26/15<br>type [1]  26/11<br>types [1]  42/5<br>typical [1]  15/9<br><br>**U**<br>ultimately [1]  17/22<br>unbeknownst [1]  13/7<br>under [9]  10/15 12/2<br>  17/23 19/3 27/12 27/14<br>  29/19 37/11 48/4<br>understand [9]  16/21 18/6<br>  27/7 31/22 31/25 32/19<br>  33/4 34/3 48/11<br>understanding [6]  20/19<br>  23/15 23/22 23/24 37/10<br>  48/14<br>understood [1]  31/8<br>undue [5]  5/15 6/16 8/1<br>  9/7 32/2<br>unfair [1]  11/1<br>unfairness [1]  14/12<br>unfortunate [1]  41/25<br>uninvolved [1]  30/18<br>UNITED [4]  1/1 1/13 2/2<br>  50/4<br>universal [1]  15/3<br>unlawful [3]  4/5 4/15<br>  19/12<br>unless [1]  44/2<br>unquestionably [1]  6/22<br>unquote [2]  31/15 33/11<br>until [4]  21/17 25/6<br>  26/22 47/11<br>unusual [2]  9/19 9/21<br>up [25]  3/22 8/16 8/19<br>  13/21 16/14 23/18 25/4<br>  27/22 28/9 29/1 30/4 30/9<br>  30/23 34/23 35/25 38/1<br>  39/8 40/14 40/17 42/24<br>  44/20 44/21 46/8 49/12 |

up... [1]   49/13
upper [1]   16/20
upset [1]   36/5
us [16]   3/14 4/25 5/5
 7/18 7/19 8/5 9/4 9/7
 9/18 25/15 30/3 30/9
 41/24 43/15 43/18 48/10
use [4]   13/1 15/3 16/16
 35/3
user [1]   38/20
users [3]   38/21 38/22
 45/2
using [2]   15/2 24/25

**V**

VA [1]   1/18
vacuum [1]   33/4
varied [2]   29/20 37/9
variety [1]   13/11
various [1]   41/15
venue [1]   18/10
Verizon [5]   19/19 33/7
 33/12 40/10 40/11
versus [4]   3/2 3/3 5/9
 25/21
very [18]   5/5 5/15 5/21
 11/1 11/6 11/20 16/17
 18/20 19/16 19/20 22/5
 22/11 25/2 28/24 35/20
 36/4 40/24 44/8
via [1]   15/4
view [3]   5/4 26/14 42/24
violated [1]   32/16
violating [2]   17/2 18/14
violation [4]   5/8 5/12
 7/23 7/23
Virginia [5]   7/9 7/10
 22/5 22/25 23/4
virtually [1]   11/25
vocal [1]   35/20
voice [2]   35/19 35/21

**W**

wait [8]   3/7 3/15 3/16
 23/13 35/18 35/18 37/19
 37/19
waive [4]   35/10 35/11
 35/12 35/13
want [25]   6/25 8/15 8/17
 11/21 21/18 31/20 32/20
 32/21 32/22 32/24 34/1
 36/12 41/19 41/25 42/24
 44/18 45/8 45/11 45/12
 45/16 46/13 46/14 47/10
 48/2 48/17
wants [1]   11/3
Warner [50]   1/21 3/9 4/1
 4/9 4/21 4/22 5/15 7/5
 7/15 8/9 8/16 8/18 9/2
 14/17 15/1 17/4 17/5 22/1
 22/4 22/23 23/1 23/7
 23/25 25/5 28/18 29/1
 30/21 33/3 33/8 33/11
 33/19 34/9 34/12 34/16
 34/23 35/3 37/24 37/25
 39/8 39/14 40/5 41/5 42/8
 42/10 43/1 43/4 44/4 45/1
 46/19 48/22
Warner's [1]   47/19

W35 [25]   3/22 10/24 13/5
 18/11 22/3 21/23 24/11
 25/17 27/8 29/2 33/12
 34/12 35/14 35/23 35/23
 36/7 36/14 37/5 39/8
 39/19 39/23 42/16 44/15
 47/21 50/9
Washington [7]   1/5 1/23
 2/4 24/2 24/5 24/21 24/25
 wasn't [1]   21/9
watching [1]   36/14
Watkins [1]   1/21
way [13]   9/6 15/19 16/6
 16/8 26/14 30/14 36/12
 40/13 42/3 45/12 45/16
 45/22 47/10
ways [1]   34/5
we [190]
We'd [1]   21/1
we'll [4]   16/25 32/23
 47/3 49/13
we're [18]   3/11 4/1 4/12
 7/18 7/21 10/4 15/22 16/3
 16/18 18/4 19/22 20/3
 27/18 27/21 31/5 42/3
 47/7 48/10
we've [4]   30/20 30/25
 31/6 31/14
Weaver [1]   1/17
Wednesday [1]   1/6
week [4]   47/4 47/14 47/15
 47/16
weigh [1]   45/24
weighing [1]   47/7
welcome [1]   49/19
welcomed [1]   9/23
well [29]   3/15 9/21 10/9
 11/6 12/13 12/24 15/2
 16/8 16/13 17/12 17/15
 17/21 19/15 20/14 22/1
 25/2 27/1 28/24 29/15
 31/13 32/4 34/6 34/15
 35/16 37/25 38/17 40/10
 41/3 44/19
were [19]   8/3 9/1 15/21
 17/5 17/9 18/1 20/4 21/7
 22/19 31/2 31/2 32/6
 33/14 36/5 37/4 39/10
 39/12 45/5 45/5
weren't [1]   20/21
WEST [3]   1/7 3/3 40/3
what [42]   5/22 11/1 11/14
 11/17 11/20 11/22 12/22
 13/4 16/13 16/13 16/21
 20/12 20/23 21/25 23/24
 26/17 26/21 26/22 29/12
 29/22 30/3 31/17 31/18
 32/13 32/24 33/23 33/24
 33/25 36/20 37/9 37/10
 38/20 41/6 42/1 42/2
 42/10 42/16 43/7 43/21
 47/17 48/16 49/3
what's [2]   36/20 42/15
whatever [3]   9/14 38/24
 46/15
when [8]   12/11 28/8 33/4
 33/9 33/19 36/8 43/24
 44/23
where [20]   3/20 10/14
 15/10 16/12 17/23 19/10
 21/17 22/9 22/12 24/7

24/9 25/6 26/22 28/2 31/9
 32/4 33/10 35/23 40/19
 45/5
whereby [1]   45/17
wherein [1]   29/16
wherever [2]   22/1 22/5
whether [7]   15/4 21/5
 25/11 27/5 29/9 37/5
 47/23
which [16]   5/20 7/13
 12/10 15/9 15/22 16/15
 17/25 25/17 26/15 27/13
 32/17 33/7 37/15 37/16
 47/4 50/8
while [3]   24/22 24/24
 35/2
who [27]   3/16 3/16 3/24
 10/2 10/14 13/9 13/10
 15/11 16/5 16/11 18/1
 23/1 23/2 24/1 25/6 26/20
 26/22 27/21 27/24 30/5
 30/7 34/23 35/8 35/23
 43/22 45/2 45/18
who's [2]   3/15 20/12
whom [1]   36/5
whose [3]   36/4 36/17
 40/22
why [12]   3/19 3/22 7/18
 9/12 10/4 12/21 13/13
 17/15 24/4 26/19 28/6
 47/13
wilderness [1]   36/9
will [22]   5/10 6/24 13/5
 13/6 13/10 20/21 21/19
 27/1 27/8 33/8 41/20
 44/21 46/15 46/15 46/20
 46/21 47/2 48/4 48/23
 49/2 49/8 49/9
willing [1]   43/1
wishes [1]   44/1
within [5]   33/13 33/14
 33/15 34/16 48/5
without [3]   9/5 29/4
 42/20
won't [3]   12/3 32/13
 32/22
wonderful [1]   16/1
wondering [1]   47/21
words [1]   26/6
work [16]   5/20 6/2 6/3
 10/15 15/1 20/1 23/22
 29/17 29/25 30/7 31/2
 31/9 33/10 41/16 46/14
 47/5
worked [1]   31/6
works [6]   14/25 25/25
 26/1 26/4 26/18 35/2
would [64]
wow [2]   39/4 47/5
wrong [4]   15/25 26/21
 26/22 36/10

**Y**

yeah [1]   28/15
year [1]   30/6
yes [16]   3/10 3/11 3/15
 3/25 4/2 17/8 18/24 20/18
 32/9 39/5 40/7 45/21 46/6
 46/13 46/21 47/20
yet [5]   25/10 29/5 29/6
 29/7 46/14

**Y**

York [3]   22/10 22/21
 24/10
you [177]
you're [9]   19/18 19/22
 20/17 20/23 20/24 24/24
 29/9 36/11 37/15
you've [2]   27/5 37/20
young [1]   32/21
your [95]

**Z**

zero [4]   6/1 7/7 7/8 7/9